IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GINA RAIMONDO, *in her official capacity as Secretary of Commerce, et al.*,<br><br>Defendants. | Civil Action No. 1:24-cv-00148-GSK<br><br>**MOTION TO EXPEDITE BRIEFING AND CONSIDERATION OF ACTION PURSUANT TO CIT RULE 3(g)** |

Pursuant to United States Court of International Trade ("CIT") Rule 3(g)(5), the plaintiffs Natural Resources Defense Council, Inc. ("NRDC"), Center for Biological Diversity (the "Center"), and Animal Welfare Institute ("AWI") (collectively, the "Plaintiffs") hereby move to expedite consideration of this action consistent with the summary judgment briefing schedule proposed in **Exhibit A**.

## ARGUMENT

This case concerns an issue of profound significance: protection of marine mammals from fisheries bycatch, which is the accidental entanglement or capture of an animal in fishing gear that often leads to the animal's death. Congress acted more than 50 years ago to protect marine mammals beyond U.S. waters from harmful fishing practices when it included import controls as part of the Marine Mammal Protection Act, 16 U.S.C. § 1361 *et seq.* (the "MMPA"). Since 1972, the MMPA Import Provisions have required the Defendants to ban the importation of fish and fish products from foreign commercial fisheries that do not meet U.S.

bycatch standards. 16 U.S.C. § 1371(a)(2). However, these Provisions remain almost entirely unimplemented. Plaintiffs hereby move to expedite consideration of this action according to the proposed briefing schedule in order to begin to address Defendants' failure to act, and to fulfill Congress' "immediate goal that the incidental kill[ing] . . . of marine mammals permitted in the course of commercial fishing operations be reduced to insignificant levels approaching a zero mortality… rate," 16 U.S.C. § 1371(a)(2).

CIT Rule 3(g)(5) provides that a motion to expedite may be granted "for good cause" if the Court determines that an action "warrants expedited treatment." "Good cause" to expedite exists where, *inter alia*, (1) the "public interest in enforcement of the statute is particularly strong" or (2) "failure to expedite would result in mootness or deprive the relief requested." *Ontario Forest Indus. Ass'n v. United States*, 30 C.I.T. 1117, 1127 (2006). This case meets both tests.

**Public Interest**. At issue is the Defendants' failure to ban the importation of fish and fish products from foreign commercial fisheries that do not meet U.S. standards for the protection of marine mammals. 16 U.S.C. § 1371(a)(2); Compl. ¶¶ 130-142. When Congress passed the MMPA more than fifty years ago, it did so in recognition of the public interest in protecting marine mammals from human activities and combatting the threat to those animals from commercial fisheries. 16 U.S.C. § 1361(6) (finding that "marine mammals have proven themselves to be resources of great international significance, esthetic and recreational as well as economic" and that "they should be protected. . .to the greatest extent feasible

commensurate with sound policies of resource management"); *id.* at § 1387(b) (setting a "[z]ero mortality rate goal" for marine mammal bycatch in commercial fisheries).

Expediting consideration of this action is appropriate here because there is a strong public interest in implementing the MMPA and its Import Provisions. *See Ontario Forest*, 30 C.I.T. at 1127.

First, the American public has a strong interest in marine mammal conservation and protection from fisheries bycatch to ensure aesthetic and recreational interests in marine mammals, to preserve the important role that marine mammals play in ecosystems, and to prevent the ecological impacts of population depletion. Congress acknowledged these ecological public interests when it enacted the MMPA. 16 U.S.C. § 1361(2) (recognizing that the MMPA seeks to prevent marine mammal species from "diminish[ing] beyond the point at which they cease to be a significant functioning element in the ecosystem" and, for those species that are already diminished, that "measures should be immediately taken to replenish" them). Numerous courts have also recognized that the public has an "extremely strong" interest in protecting the "survival and flourishing of marine mammals." *Nat. Res. Defense Council v. Evans*, 364 F. Supp. 2d 1083, 1141 (N.D. Cal. 2003); *see also Ocean Mammal Inst. v. Gates*, 546 F. Supp. 2d 960, 985 (D. Haw. 2008) (same).

Numerous marine mammal stocks around the globe are suffering from bycatch in fisheries that export to the U.S. market—fisheries that would likely be

3

banned from U.S. import if the Defendants were faithfully implementing the MMPA Import Provisions. Bycatch is the most significant threat to marine mammals, killing or seriously injuring more than 650,000 individual animals each year.[1] The United States is one of the largest importers of seafood around the globe,[2] importing from 134 nations. *See* 88 Fed. Reg. 80,193, 80,193 (stating NMFS received 134 applications from nations seeking comparability findings for nearly 2500 distinct fisheries). Yet numerous foreign fisheries—particularly gillnet fisheries—that export to the United States overlap with imperiled[3] marine mammal populations and likely cause bycatch. Wang Decl. ¶¶ 17-18, 33-35. Decades have passed while foreign fisheries continue to engage in fishing practices that harm marine mammal populations through unregulated and unmonitored bycatch yet continue to sell the fish they catch to the U.S. market, in violation of the MMPA.

Second, American consumers, and particularly Plaintiffs' members, have a strong interest in ensuring that the seafood they purchase is not caught in a manner that violates U.S. marine mammal bycatch standards. *See, e.g.*, 81 Fed. Reg. 54,390, 54,395 ("NMFS received more than 92,000 comment letters and

---

[1] *See* Expert Declaration of Dr. John Y. Wang in Support of Plaintiffs' Motion to Expedite ("Wang Decl."), ¶¶ 15-17 (attached as **Exhibit B**).

[2] *See* https://www.ers.usda.gov/topics/animal-products/aquaculture/; *see also* U.S. seafood imports and exports, inflation-adjusted, 1995-2023. USDA, Economic Research Service using data from U.S. Department of Commerce, Bureau of the Census, and U.S. Department of Labor, Bureau of Labor Statistics.

[3] These "imperiled" marine mammals include species currently assessed by the International Union for Conservation of Nature ("IUCN") as Critically Endangered, Endangered, or Vulnerable or listed as endangered or threatened under the U.S. Endangered Species Act.

petitions from private citizens through environmental NGOs supporting procedures to implement the MMPA import provisions."). Under the MMPA, American consumers are entitled to assurance that seafood available in the U.S. abides by U.S. standards.

Third, because the Defendants have failed to comply with their obligations under the MMPA, domestic fisheries are subject to stricter bycatch standards than the practices used by many foreign fisheries. Compl. ¶¶ 8, 13; Declaration of Noah Oppenheim in Support of Plaintiffs' Motion for Preliminary Injunction, *Nat. Res. Def. Council v. Ross*, Case No. 18-cv-55, Docket No. 14-6, ¶ 6 (CIT Apr. 16, 2018), attached as **Exhibit C**; *see also Earth Island Inst. v. Mosbacher*, 746 F. Supp. 964, 968 (N.D. Cal. 1990) (MMPA import ban "help[s] to protect United States fishermen and women from unfair competition"); 118 Cong. Rec. 25,270 (1972) (one purpose of including import ban in the MMPA was "to protect the domestic fishing industry from unfair foreign competition which might otherwise result from the passage of this strict bill") (statement of Sen. Tunney).

The Defendants' extraordinary failure to act at issue in this case undermines these public interest factors. In determining whether good cause exists to grant a motion to expedite, the CIT also considers whether a statute mandates agency action within a certain timeframe. *Ontario Forest Indus. Ass'n*, 30 C.I.T. at 1127-28 (assessing whether the statute "incorporate[s] any requirement as to the time when the [United States Trade Representative] must make appointments"). Here, the Plaintiffs seek to enforce the provision of the MMPA that states the Defendants

"*shall* ban the importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill . . . of ocean mammals in excess of United States standards."[4] 16 U.S.C. § 1371(a)(2) (emphasis added); Complaint ¶¶ 137-142. Congress' "immediate goal" in enacting the MMPA in 1972 was "that the incidental kill . . . of marine mammals permitted in the course of commercial fishing operations be reduced to insignificant levels approaching a zero mortality . . . rate." 16 U.S.C. § 1371(a)(2). Defendants' failure to implement the import ban thwarts this "immediate goal."

Through the MMPA, Congress imposed a non-discretionary and immediate duty on Defendants to ban the importation of fish and fish products from foreign commercial fisheries that do not meet such standards. 16 U.S.C. § 1371(a)(2). The Defendants have had more than 50 years to comply with this duty, and marine mammals continue to be killed through bycatch in foreign fisheries that export to the United States, even though those nations have not demonstrated they meet U.S. standards.

The Court should expedite consideration of this action to protect the public interests Congress recognized in the MMPA.

---

[4] With one single exception for dolphins caught in yellowfin tuna purse seine nets in the Eastern Tropical Pacific, the U.S. government has not implemented the MMPA's import ban from the time of the MMPA's passage in 1972 through 2016. *See* Compl. ¶ 48. Since that time, the U.S. government has employed the MMPA to ban imports from only two nations, Mexico and New Zealand, but only following litigation filed to force the government to do so. Compl. ¶ 62; 85 Fed. Reg. 13,626; *Sea Shepherd New Zealand v. Ross*, Case No. 1:20-cv-00112 (CIT).

***Deprivation of Relief Requested.*** For similar reasons, expediting this action is necessary to prevent deprivation of Plaintiffs' requested relief due to Defendants' delays. Defendants are (at present) set to implement the Import Rule as of January 1, 2026. *See* 88 Fed. Reg. at 80,194. During this period, imports from foreign fisheries will continue unchecked, and marine mammals will be bycaught, including at rates that do not maintain their optimal sustainable populations and at levels that cause irreparable associated ecological consequences. Wang Decl. ¶¶ 35-36.

The Defendants have granted themselves repeated extensions to comply with the MMPA and have indicated yet another extension may be granted. In November 2023, the National Marine Fisheries Service ("NMFS") promulgated the most recent extension, which allows fisheries imports to continue unabated until January 2026. But NMFS concurrently suggested that it may "identif[y] a need to further extend the exemption period or otherwise amend the 2016 final rule" during the current exemption period. *See* 88 Fed. Reg. 80,193, 80,194. If NMFS announces another exemption or moves to amend its existing regulation (which would likely result in even further delay), the Plaintiffs would be deprived of their requested relief: compliance with the MMPA by a date certain, ideally before January 1, 2026, Plaintiffs would likely be deprived of some of their requested relief and, more importantly, the benefits contemplated by Congress when enacting the MMPA. *See* Compl. Request for Relief 4. Expediting this action ensures that the Court can rule

on the merits of the Plaintiffs' claims and require compliance with the MMPA in accordance with the relief Plaintiffs request.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court grant its motion to expedite consideration of this action pursuant to CIT Rule 3(g)(5), and adopt the briefing schedule proposed in Exhibit A. The Plaintiffs' proposed briefing schedule would allow Defendants the same amount of time to oppose/cross-move and reply to Plaintiffs' summary judgment motion as is allotted under the CIT's Rules for summary judgment briefing. *See* CIT Local R. 7(d).

Dated:  October 15, 2024

Respectfully submitted,

/s/ Christina S. Marshall
Christina S. Marshall
cmarshall@andersonkreiger.com
Mina S. Makarious
mina@andersonkreiger.com
Sean M. Grammel
sgrammel@andersonkreiger.com
Marissa C. Grenon Gutierrez
mgrenongutierrez@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660

*Counsel for Natural Resources Defense Council, Center for Biological Diversity and Animal Welfare Institute*

/s/ Sarah Uhlemann
Sarah Uhlemann
Center for Biological Diversity
120 State Avenue NE #268
Olympia, WA 98501
(206) 327-2344
suhlemann@biologicaldiversity.org

*Counsel for Center for Biological Diversity and Animal Welfare Institute*

/s/ Zak Smith
Zak Smith
Natural Resources Defense Council
317 East Mendenhall Street
Suites D & E
Bozeman, MT 59715
(406) 556-9300
zsmith@nrdc.org

*Counsel for Natural Resources Defense Council*

9

**Certificate of Service**

I hereby certify under penalty of perjury that on this 15th day of October 2024, a copy of the foregoing document was filed electronically. Service upon Defendants' counsel was thus effected by operation of the Court's CM/ECF system.

/s/ Sean Grammel
Sean M. Grammel