Slip Op. 25-29

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **NATURAL RESOURCES DEFENSE COUNCIL, INC.; CENTER FOR BIOLOGICAL DIVERSITY;** and **ANIMAL WELFARE INSTITUTE,** <br><br> Plaintiffs, <br><br> v. <br><br> **HOWARD LUTNICK,** in his official capacity as Secretary of Commerce; **UNITED STATES DEPARTMENT OF COMMERCE; EMILY MENASHES,** in her official capacity as Acting Assistant Administrator of the National Marine Fisheries Service; **NATIONAL MARINE FISHERIES SERVICE; SCOTT BESSENT,** in his official capacity as Secretary of the Treasury; **UNITED STATES DEPARTMENT OF THE TREASURY; KRISTI NOEM,** in her official capacity as Secretary of Homeland Security; and **UNITED STATES DEPARTMENT OF HOMELAND SECURITY,** <br><br> Defendants. | Before: Judge Gary S. Katzmann <br> Court No. 24-00148 |

### OPINION AND ORDER

[ The parties' Motion to Construe their Joint Submission as a Motion to Correct under USCIT Rule 60(a) is granted. The parties' Stipulation and Proposed Order of Voluntary Dismissal with Prejudice was filed under USCIT Rule 41(a)(1)(A)(ii). The proposed Order is issued, and the case is dismissed. In accordance with the parties' Stipulation, the court retains jurisdiction to oversee compliance with the non-monetary terms of the parties' Stipulated Settlement Agreement and to resolve any motions to modify such terms. ]

Dated: <u>March 25, 2025</u>

Marissa C. Grenon Gutierrez, Anderson & Kreiger LLP, of Boston, MA, for Plaintiffs Natural Resources Defense Council, Inc.; Center for Biological Diversity, and Animal Welfare Institute. With her on the briefs were Christina S. Marshall, Mina S. Makarious, Sean M. Grammel,

Anderson & Kreiger LLP, of Boston, MA; <u>Sarah Uhlemann</u>, Center for Biological Diversity, of Olympia, WA; and <u>Stephen Zak Smith</u>, Natural Resources Defense Council, of Bozeman, MT.

<u>Stephen C. Tosini</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendants Howard Lutnick, in his official capacity as Secretary Of Commerce; United States Department of Commerce; Emily Menashes, in her official capacity as Acting Assistant Administrator of The National Marine Fisheries Service; National Marine Fisheries Service; Scott Bessent, in his official capacity as Secretary of The Treasury; United States Department of The Treasury, Kristi Noem, in her official capacity as Secretary of Homeland Security, and United States Department of Homeland Security.[1]

　　　　Katzmann, Judge:　In 1972, Congress enacted the Marine Mammal Protection Act ("MMPA"), Pub. L. No. 92-522, 86 Stat. 1027 (codified as amended at 16 U.S.C. § 1361 <u>et seq.</u>), to protect marine mammal species that "are, or may be, in danger of extinction or depletion as a result of man's activities" from "diminish[ing] below their optimum sustainable population." <u>Id.</u> § 1361(1)–(2).　In recent years, the MMPA has been the basis for litigation and adjudication in this court for actions involving the vaquita, the world's smallest porpoise on the verge of extinction, <u>see</u> <u>Nat. Res. Def. Council, Inc. v. Ross</u>, 44 CIT __, 456 F. Supp. 3d 1292 (2020) (and opinions noted therein); <u>see also</u> <u>Ctr. for Bio. Diversity v. Haaland</u>, 47 CIT __, 639 F. Supp. 3d 1355, 1363 (2023), and the Māui dolphin, one of the world's smallest dolphins also on the verge of extinction, <u>see</u> <u>Sea Shepherd N. Z. v. United States</u>, 48 CIT __, 723 F. Supp. 3d 1374 (2024) (and opinions noted therein).

　　　　Although invoked in recent litigation, the MMPA's import provisions have yet to be fully implemented since its 1972 enactment.　In response to petitions for the implementation of the MMPA's import provisions, the National Marine Fisheries Service ("NMFS")[2] published a final

---

[1] Per USCIT Rule 25(d), named officials have been substituted to reflect the current officeholders.

[2] The National Marine Fisheries Service is a federal agency housed within the National Oceanic and Atmospheric Administration ("NOAA"), which is in turn a federal agency within the Department of Commerce.　<u>See</u> <u>NOAA Fisheries</u>, https://www.usa.gov/agencies/noaa-fisheries (last visited Mar. 20, 2025).

rule in 2016 aiming to protect marine mammals abroad and level the playing field for U.S. fishermen. See Fish & Fish Prod. Imp. Provisions of the Marine Mammal Prot. Act, 81 Fed. Reg. 54390 (NMFS Aug. 15, 2016) ("Final Import Rule"); 50 C.F.R. § 216.24 (2022). The Final Import Rule included a "one-time only" five-year exemption period that has since been extended an additional four years. See id.; Modification of Deadlines Under the Fish & Fish Prod. Imp. Provisions of the Marine Mammal Prot. Act, 85 Fed. Reg. 69515 (NMFS Nov. 3, 2020) ("First Modification of Deadlines"); Modification of Deadlines Under the Fish & Fish Prod. Imp. Provisions of the Marine Mammal Prot. Act, 87 Fed. Reg. 63955 (NMFS Oct. 21, 2022) ("Second Modification of Deadlines"); Modification of Deadlines Under the Fish and Fish Prod. Imp. Provisions of the Marine Mammal Prot. Act, 88 Fed. Reg. 80193 (Nov. 17, 2023) ("Third Modification of Deadlines").

On August 8, 2024, Natural Resource Defense Council, Inc., Center for Biological Diversity, and Animal Welfare Institute (collectively, "Plaintiffs")[3] alleged in a complaint before this court that the United States government has failed to implement the import provisions of the MMPA. Compl. ¶ 77. Plaintiffs requested that the court require Defendants (designated United States Departments, constituent agency and respective officials) to implement those import provisions and declare that Defendants violated the Administrative Procedure Act ("APA") by failing to provide notice and a period for comment in extending the exemption period. Id. at 52–53.

The parties have since reached a settlement agreement and now seek to dismiss this case.

---

[3] All three Plaintiffs assert that they are not-for-profit organizations whose members have a strong interest in protecting marine mammals and marine life. See Compl. ¶¶ 22–23, 25–26, 28–29, Aug. 8, 2024, ECF No. 1. At this procedural stage, the court is satisfied that these assertions meet the requirements for standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (requiring (1) an injury in fact that is (2) traceable to the challenged action and (3) not merely speculative to establish standing).

They filed a joint Stipulation of Dismissal under USCIT Rule 41(a)(1)(A)(ii) on January 16, 2025. See Stipulation of Dismissal, Jan. 16, 2025, ECF No. 29. On February 7, 2025, the parties jointly moved to correct the clerical omission of a "so-ordered" line for the court's signature from the Stipulation of Dismissal. See Joint Resp. to Ct.'s Req., Feb. 7, 2025, ECF No. 37. The parties' motion to correct is granted and the case is accordingly dismissed by operation of the parties' filings. In accordance with the Stipulation of Dismissal and the intent of the parties, the court retains jurisdiction to oversee compliance with the non-monetary terms of the parties' Stipulated Settlement Agreement and to resolve any motions to modify such terms. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994).

## LEGAL BACKGROUND

### I. The Marine Mammal Protection Act

In response to the growing threat that human activities pose to marine mammals, Congress passed the MMPA to prevent species and populations of marine mammals from diminishing beyond the point at which they can function in their ecosystem. See 16 U.S.C. § 1361(1)–(2). With certain exceptions, the MMPA prohibits the "tak[ing]" of marine mammals, defined as "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill." Id. § 1362(13); see also id. § 1372(a)(1).

To achieve this goal, the MMPA places a general moratorium on taking and importing marine mammals and marine mammal products. Id. § 1371(a). The MMPA empowers the "Secretary"—defined elsewhere as the Secretaries of Commerce and the Interior—to "prescribe such regulations with respect to taking and importing of animals . . . as [they] deem[] necessary and appropriate to insure that such taking will not be to the disadvantage of those species . . . ." Id. §§ 1373(a), 1362(12).

The MMPA also places restrictions on foreign fisheries that export to the United States, providing that "[t]he Secretary of the Treasury shall ban the importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards." Id. § 1371(a)(2). Additionally, no fish or products from which fish have been caught may be imported into the United States "if such fish was caught in a manner . . . proscribed for persons subject to the jurisdiction of the United States . . . ." Id. § 1372(c)(3). To ensure compliance with this mandate, the "Secretary . . . shall insist on reasonable proof from the government" of any importing nation "of the effects on ocean mammals of the commercial fishing technology in use." Id. § 1371(a)(2)(A). In short, the MMPA aims to protect marine mammals by setting forth standards applicable to both domestic commercial fisheries and to foreign fisheries that wish to export their products to the United States. See id. § 1371(a)(2).

## II. *Final Import Rule*

Though the MMPA was enacted in 1972, NMFS did not promulgate a final rule implementing the Act's import provisions until August 2016. See Final Import Rule, 81 Fed. Reg. 54390; 50 C.F.R. § 216.24 (2022). The Final Import Rule "addresses intentional mortality and serious injury in fisheries that export to the United States," and "establish[es] procedures and conditions for evaluating a harvesting nation's regulatory program . . . to determine whether it is comparable in effectiveness to the U.S. regulatory program." 81 Fed. Reg. at 54390–91.

Under the Final Import Rule, NMFS must create and publish a list of foreign fisheries by "identify[ing] harvesting nations with commercial fishing operations that export fish and fish products to the United States and classify[ing] those fisheries based on their frequency of marine mammal interactions . . . ." Id. at 54391. Harvesting nations must apply for and receive "a

comparability finding for its fisheries to export fish and fish products to the United States." Id. at 54391. NMFS must, under the Final Import Rule, identify and prohibit the importation of fish and fish products into the United States from fisheries without comparability findings. Id. at 54394.

"To receive a comparability finding . . . the harvesting nation must demonstrate that it has prohibited the intentional mortality or serious injury of marine mammals in the course of commercial fishing operations in the fishery . . . ." Id. Each harvesting nation must also demonstrate that it has adopted and implemented regulations governing commercial fishing operations that are "comparable in effectiveness to the U.S. regulatory program." Id. NMFS must, according to the Final Import Rule, notify each harvesting nation of any fisheries for which NMFS is denying a comparability finding and publish a corresponding notice in the Federal Register. See id. at 54393.

### III. *Exemption Period and Subsequent Extensions*

Recall that the Final Import Rule initially established a "one-time only" five-year exemption period, through December 31, 2021, before imports would be made subject to any trade restrictions. See id. at 54413. Since then, the Department of Commerce and NMFS have issued three modifications to extend the exemption period, which as a result will end on December 31, 2025. See First Modification of Deadlines, 85 Fed. Reg. 69515; Second Modification of Deadlines, 87 Fed. Reg. 63955; Third Modification of Deadlines, 88 Fed. Reg. 80193.[4] NMFS

---

[4] During this extended exemption period, NMFS has issued only two comparability findings resulting from litigation and settlement agreements under the emergency rulemaking provision of the Final Import Rule. See 81 Fed. Reg. at 54395. Under this provision, NMFS "may consider emergency rulemaking to ban imports of fish and fish products" during the exemption period where a fishery "[has] or is likely to have an immediate and significant adverse impact on a marine mammal stock." Id. Based on a risk of immediate and significant adverse impact, NMFS issued and then revoked a comparability finding for Mexican fisheries affecting the vaquita, see 85 Fed. Reg. 13626 (NMFS Mar. 9, 2020), and in 2024 issued comparability findings for New Zealand fisheries affecting the Māui dolphin, see Sea Shepherd N.Z. v. United States, 723 F. Supp. 3d at 1379–80.

issued each of these extensions without any notice and comment period, citing "the need to provide exporting nations with sufficient advance notice of the additional time to submit their comparability finding applications." First Modification of Deadlines, 85 Fed. Reg. at 69516; see also Second Modification of Deadlines, 87 Fed. Reg. at 63957; 5 U.S.C. § 553(b)(4) (listing exceptions to notice and comment requirement). NMFS also suggested the extension was not subject to the APA's requirement "because it involves a 'foreign affairs function of the United States' under 5 U.S.C. § 553(a)(1)." See Third Modification of Deadlines, 88 Fed. Reg. at 80194; see also 5 U.S.C. § 553(b)(4)(B).

## PROCEDURAL HISTORY

Plaintiffs filed a complaint on August 8, 2024, alleging that "the federal government has failed to ban the importation of fish or fish products from fisheries that are not meeting U.S. bycatch standards since 1972." Compl. ¶ 77.[5] Plaintiffs requested that the court (1) declare that Defendants have unlawfully withheld and unreasonably delayed implementation of the MMPA import provisions, (2) declare that Defendants' failure to provide notice and an opportunity for comment on the Third Modification of Deadlines violates the APA, (3) vacate the Third Modification of Deadlines, (4) order Defendants to implement the Final Import Rule by a certain date, (5) enter an injunction requiring Defendants to ban the importation of fish or fish products that do not meet the requirements of the MMPA, (6) award Plaintiffs costs and attorney's fees, and (7) grant any other relief the court finds proper. See Compl. at 52–53.

On November 29, 2024, the parties filed, and the court granted, a joint motion to stay, anticipating that "they could reach an approved and finalized agreement to resolve the

---

[5] Plaintiffs highlight several countries where marine mammal populations may be at risk from fishing operations, but from which the U.S. government has not banned the importation of fish and fish products, including Canada, Ecuador, France, India, Indonesia, Mexico, South Africa, South Korea, and the United Kingdom. See Compl. ¶¶ 86–129.

dispute . . . in the coming weeks." Joint Mot. to Stay Proceedings, Nov. 29, 2024, ECF No. 25; see also Order, Dec. 4, 2024, ECF No. 26.

### I. *Stipulation of Dismissal and Stipulated Settlement Agreement*

The parties filed a Stipulation of Dismissal and Stipulated Settlement Agreement on January 16, 2025. See Stipulation of Dismissal; Stipulated Settlement Agreement, Jan. 16, 2025, ECF No. 29, Attach. A. Therein, the parties stipulate that the matter "be dismissed with prejudice," and further "stipulate and respectfully request that the [c]ourt retain jurisdiction to oversee compliance with the non-monetary terms of the parties' Stipulated Settlement Agreement and to resolve any motions to modify such terms." Id. at 2 (citing Kokkonen, 511 U.S. 375). Under the terms of the Stipulated Settlement Agreement, the parties agree that the United States will implement the Final Import Rule in four phases. See Stipulated Settlement Agreement ¶ 1.

Under Phase 1, NMFS must issue notifications "to (i) all harvesting nations that did not submit an application for a comparability finding, and (ii) all harvesting nations that the Secretary of Commerce . . . preliminarily determined will be denied a comparability finding for all of their fisheries." Id. ¶ 1(a); see also Final Import Rule, 81 Fed. Reg. 54417; 50 C.F.R. § 216.24(h)(8)(iii)(A)(1). Under Phase 2, NMFS "will issue notifications to all harvesting nations that NMFS has preliminarily determined will be denied a comparability finding for one or more of their fisheries." Stipulated Settlement Agreement ¶ 1(b); see also Final Import Rule, 81 Fed. Reg. at 54417; 50 C.F.R. § 216.23(h)(8)(iii)(A)(1). Additionally, NMFS must provide each harvesting nation "an opportunity to submit reliable information to refute the preliminary denial" in both Phase 1 and Phase 2. Stipulated Settlement Agreement ¶ 1(a), (b); see also Final Import Rule, 81 Fed. Reg. at 54417; 50 C.F.R. § 216.23(h)(8)(iii)(A)(2).

Under Phase 3, "NMFS will issue final comparability findings for all harvesting nations

and submit such findings to the Federal Register for publication." Stipulated Settlement Agreement ¶ 1(c); see also Final Import Rule, 81 Fed. Reg. at 54417; 50 C.F.R. § 216.24(h)(8)(i). Under Phase 4, NMFS "shall identify and prohibit the importation of fish and fish products into the United States from all harvesting nations or fisheries for which NMFS has denied a comparability finding." Stipulated Settlement Agreement ¶ 1(d); see also Final Import Rule, 81 Fed. Reg. at 54418–19; 50 C.F.R. § 216.24(h)(9). Finally, the parties agree that "NMFS will publish on a publicly-available website a copy of its final document(s) reflecting the agency's rationale for its final comparability findings . . . ." Stipulated Settlement Agreement ¶ 1(e).

Under the parties' agreed-upon schedule, Phase 1 and Phase 2 were to be completed before the Stipulated Settlement Agreement was submitted to the court, on December 16, 2024, and January 15, 2025, respectively. See id. ¶ 1(a)–(b). Phase 3 is to be completed on or before September 1, 2025, see id. ¶ 1(c), and Phase 4 is to be completed on or before January 1, 2026, see id. ¶ 1(d). The parties agree that "Defendants will confirm to Plaintiffs NMFS's performance of each of Phase 2 and 3 within five business days of performance by providing an attestation of compliance." Id. ¶ 2.

Plaintiffs agree that, before January 1, 2026, they "will not initiate any litigation challenging an individual comparability finding issued in Phase 3," will not encourage or support any other person pursuing such litigation, and "release, waive, and abandon all claims against" Defendants. Id. ¶ 4. Finally, Defendants agree to "pay Plaintiffs $74,000.000 in full and complete satisfaction of any and all claims, demands, rights, and causes of action for attorney fees and litigation costs . . . ." Id. ¶ 5.

In the case that any disagreement arises in the course of the parties' performance under the Stipulated Settlement Agreement, the parties agree to meet and confer before seeking the court's

enforcement of compliance with any terms. See id. ¶ 8. If the parties do not come to a "mutual agreeable solution . . . within 30 calendar days of a Party's initial request to meet and confer, the parties may seek appropriate relief from the [c]ourt." Id.

The court held a status conference on January 23, 2025, to discuss the content of the agreement and discuss the court's retention of jurisdiction. See Notice from the Ct., Jan. 17, 2025, ECF No. 30; Notice of Status Conf., Jan. 23, 2025, ECF No. 32. The court subsequently requested joint submissions listing the cases cited during the status conference and written answers to several questions. See Letter, Jan. 23, 2024, ECF No. 33; Joint Resp. to Ct.'s Req., Jan. 24, 2025, ECF No. 34; Joint Resp. to Ct.'s Req., Feb. 7, 2025, ECF No. 37.

The parties filed a joint submission on February 7, 2025, specifying that they "intended the Stipulation to be filed under Rule 41(a)(1)(A)(ii) with dismissal conditionally effective only upon the [c]ourt's issuance of an order retaining jurisdiction." Joint Resp. to Ct.'s Request at 1, Feb. 7, 2025, ECF No. 37. The parties consider the court's retention of jurisdiction to be "a material component of their agreement and, absent that retention, the parties will either have to attempt to renegotiate the Agreement or, failing that, proceed to litigation." Id. at 2. Accordingly, the parties requested that the court "construe this filing as a motion pursuant to USCIT Rule 60(a) to correct the clerical omission of a 'so-ordered' line for signature by this [c]ourt." Id. at 1.

## DISCUSSION

### I.    *Voluntary Dismissal and Retention of Jurisdiction*

Under USCIT Rule 41(a)(1)(A)(ii), a plaintiff "may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." A dismissal under this rule allows parties to "dismiss an action without court order." Id.[6] Federal courts are of

---

[6] USCIT Rule 41(a)(1)(A)(ii) is identical to Fed. R. Civ. P. 41(a)(1)(A)(ii).

limited jurisdiction and possess only that power authorized by the Constitution and statute.  See Kokkonen, 511 U.S. at 377; Willy v. Coastal Corp., 503 U.S. 131, 136–37 (1992); Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).  For this reason, under a motion for dismissal filed under USCIT Rule 41(a)(1)(A)(ii), a court's jurisdiction "cannot extend past the filing date absent an express contingency or extension of jurisdiction, and any further actions by the court are superfluous."  SmallBizPros, Inc. v. MacDonald, 618 F.3d 458, 463 (5th Cir. 2010) (internal quotation marks and citation omitted).  Enforcement of a settlement agreement is "more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."  Kokkonen, 511 U.S. at 378.

      Under Kokkonen, a federal court may properly retain jurisdiction to enforce a settlement agreement in two ways: first, by including a provision in a dismissal order that explicitly retains jurisdiction over the settlement agreement, or second, by incorporating the terms of the settlement agreement into a dismissal order.  See Kokkonen, 511 U.S. at 381–82.  In such a case, the dismissal still occurs automatically under USCIT Rule 41(a)(1)(A)(ii), but a dismissal order is necessary for the court to retain jurisdiction.  Given the automatic nature of a voluntary dismissal under USCIT Rule 41(a)(1)(A)(ii), to ensure that the court retains jurisdiction, the parties must meet "all of the requirements for retaining jurisdiction . . . at the time of filing, or [make] the filing's effectiveness [] contingent upon a future act (such as the [] court issuing an order retaining jurisdiction)."  SmallBizPros, 618 F.3d at 463.  Here, the parties included a provision, in the Stipulation for Dismissal and in the attached proposed order of dismissal, "stipulat[ing] and respectfully request[ing] that the [c]ourt retain jurisdiction to oversee compliance with the non-monetary terms of the parties' Stipulated Settlement Agreement and to resolve any motions to modify such terms."  Stipulation of Dismissal; Corrected Stipulation of Dismissal, Feb. 7, 2025, ECF No. 37-1.  Thus,

the parties included a provision in their proposed dismissal order that explicitly retains jurisdiction over the Stipulated Settlement Agreement. The parties also incorporated the terms of the Stipulated Settlement Agreement into the proposed dismissal order by attaching the Stipulated Settlement Agreement. See Stipulation of Dismissal. Further, the parties indicated their "inten[t that] the Stipulation [] be filed under Rule 41(a)(1)(A)(ii) with dismissal conditionally effective only upon the [c]ourt's issuance of an order retaining jurisdiction," and accordingly moved to correct the omission of a "so-ordered" line from the Stipulation of Dismissal. Joint Resp. to Ct.'s Request at 1; see also infra Section II. Accordingly, the court retains jurisdiction to enforce the terms of the Stipulated Settlement Agreement per the parties' Stipulation of Dismissal.[7]

## II. *Correction of a Clerical Mistake or Omission*

Under USCIT Rule 60(a), "the court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or own its own, with or without notice." In considering a motion under USCIT Rule 60(a), the "question before the court" is "whether the alleged error is truly ministerial." Diamond Sawblades Mfrs. Coal. v. United States, 34 CIT 211, 216 (2010). A ministerial error "encompasses only errors mechanical in nature, apparent on the record, and not involving an error of substantive judgment," or includes "mindless and mechanical mistakes [and] shifting of facts." Id. (citing Pfizer Inc. v. Uprichard, 422 F.3d 124, 129–30 (3d Cir. 2005)). Additionally, courts have disallowed ministerial corrections where doing so results in procedural

---

[7] This retention of jurisdiction is limited to overseeing compliance with the non-monetary terms of the Stipulated Settlement Agreement and to resolve any motions to modify such terms. See Stipulation of Dismissal at 2. This jurisdiction is limited to resolving disputes regarding Defendant's compliance with any of the deadlines outlined in the Stipulated Settlement Agreement. See Joint Resp. to Ct.'s Request at 8. Plaintiffs have agreed that they will not challenge the substance of any of Defendants' determinations with respect to comparability findings as part of this case, but instead have agreed to bring any such claims in a separate lawsuit not to be filed before January 1, 2026. See id.; Stipulated Settlement Agreement ¶ 4.

unfairness or prejudice. See id. (citing Util. Solid Waste Activities Grp. v. EPA, 236 F.3d 749 (D.C. Cir. 2001)) (setting aside an EPA Rule amendment on the ground that rule correction, even if ministerial, required proper notice and comment procedure); NTN Corp. v. United States, 32 CIT 1283, 1285–86, 587 F. Supp. 2d 1313, 1316 (2008) (considering the court's "obligations to prevent unfairness to any party and to avoid unnecessary delay or expense.").

As noted above, the parties specified that they "intended the Stipulation to be filed under Rule 41(a)(1)(A)(ii) with dismissal conditionally effective only upon the [c]ourt's issuance of an order retaining jurisdiction." Joint Resp. to Ct.'s Request at 1. Here, the inclusion of a "so-ordered" line reflects this intention that the automatic dismissal be conditional upon the court's issuance of an order. The omission of a signature line is a ministerial error that reflects a "mechanical mistake." Diamond Sawblades, 34 CIT at 216. Additionally, the correction creates no procedural prejudice or delay as all parties jointly requested that the court correct the error. Therefore, the court grants the parties' request to correct the Stipulation of Dismissal to include a "so-ordered" line.

## CONCLUSION

The court **GRANTS** the parties motion to construe their joint submission as a motion to correct the clerical omission of a "so-ordered" line for signature by this court under USCIT Rule 60(a).

A voluntary dismissal by joint stipulation under Rule 41(a)(1)(A)(ii) is effective "automatically." Versata Software, Inc. v. Callidus Software, Inc., 780 F.3d 1134, 1136 (Fed. Cir. 2015) (applying identical Fed. R. Civ. P. 41(a)(1)(A)(ii)). A dismissal order that incorporates the terms of the Stipulated Settlement Agreement will issue accordingly. The court retains jurisdiction to oversee compliance with the non-monetary terms of the parties' Stipulated Settlement

Agreement and to resolve any motions to modify such terms in accordance with <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375 (1994).

<u>/s/   Gary S. Katzmann</u>
Gary S. Katzmann, Judge

Dated: <u>March 25, 2025</u>
       New York, New York