# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., <br><br> CENTER FOR BIOLOGICAL DIVERSITY, <br><br> *and* <br><br> ANIMAL WELFARE INSTITUTE, <br><br> Plaintiffs, <br><br> v. <br><br> HOWARD LUTNICK, *in his official capacity as Secretary of Commerce*, <br><br> UNITED STATES DEPARTMENT OF COMMERCE, <br><br> EUGENIO PIÑEIRO SOLER, *in his official capacity as Assistant Administrator of the National Marine Fisheries Service*, <br><br> NATIONAL MARINE FISHERIES SERVICE, <br><br> SCOTT BESSENT, *in his official capacity as Secretary of the Treasury*, <br><br> UNITED STATES DEPARTMENT OF THE TREASURY, <br><br> KRISTI NOEM, *in her official capacity as Secretary of Homeland Security*, <br><br> *and* <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY. <br><br> Defendants. | Civil Action No. 1:24-cv-00148 <br><br><br> **MOTION TO ENFORCE SETTLEMENT AGREEMENT** |

1

Plaintiffs Natural Resources Defense Council, Inc. ("NRDC"), Center for Biological Diversity (the "Center"), and Animal Welfare Institute ("AWI") (collectively, "Plaintiffs") move that this Court find Defendants Howard Lutnick *et al.* ("Defendants") in violation of the settlement agreement executed by the Parties on January 15, 2025, which this Court retained jurisdiction to enforce.  *See* Opinion and Order, ECF 38 at 13-14.  Plaintiffs further ask the Court to compel Defendants' compliance with Paragraph 1(d) of the settlement agreement by requiring the National Marine Fisheries Service ("NMFS"), in cooperation with the Secretaries of Treasury and Homeland Security, to prohibit the importation of fish and fish products into the United States from *all* harvesting nations or fisheries that do not meet Marine Mammal Protection Act ("MMPA") standards. 16 U.S.C. § 1361 *et seq.*

## INTRODUCTION

The United States government continues to avoid complying with its legal obligation to ban the importation of fish and fish products that do not meet the standards of the MMPA.  For more than 50 years, Defendants have failed to comply with this duty, and marine mammals continue to be killed through bycatch in foreign fisheries that export to the United States, even though these foreign fisheries did not demonstrate they met the necessary standards.

Defendants' decades-long saga of noncompliance appeared to be nearing an end when, after Plaintiffs sued Defendants for their failure to comply with the MMPA, the Parties entered into a stipulated settlement agreement (the "*Lutnick* Agreement" or "Agreement") to memorialize Defendants' commitment to finally

2

implement the MMPA's import provisions. Under the Agreement, the Parties agreed that the United States would implement the Final Import Rule, 50 C.F.R. § 216.24, by, among other things, (1) issuing final comparability findings for all harvesting nations by September 2025, and (2) on January 1, 2026, prohibiting the importation of fish and fish products into the United States from all harvesting nations or fisheries for which NMFS had denied a comparability finding. *Lutnick* Agreement ¶ 1.

Now, by way of a subsequent settlement agreement in a *different* lawsuit with different plaintiffs, *National Fisheries Institute et al. v. United States et al.*, Case No. 1:25-cv-0223-JAL (C.I.T.) ("*NFI*"), Defendants seek to further delay their implementation of the Final Import Rule and renege on their obligations under the *Lutnick* Agreement. The settlement agreement in *NFI* delays the January 1, 2026 implementation date of the import ban for five swimming crab fisheries in Vietnam, the Philippines, Indonesia, and Sri Lanka for which NMFS has denied comparability findings. *National Fisheries Institute et al. v. United States et al.*, ECF 41-1, ¶ 1, Case No. 1:25-cv-0223-JAL (C.I.T.) ("*NFI* Settlement"). Defendants agreed to these terms in clear violation of the *Lutnick* Agreement, which this Court has the power to enforce. *See* Opinion and Order, ECF 39 at 3 ("The non-monetary terms and conditions of the Parties' Stipulated Settlement Agreement are hereby adopted as an enforceable ORDER of this Court"), 38 at 13–14. Plaintiffs respectfully request that the Court exercise this authority and require Defendants to comply with the *Lutnick* Agreement by compelling Defendants to prohibit

3

imports of fish and fish products from the five swimming crab fisheries identified in the *NFI* Settlement on January 1, 2026.[1]

## FACTUAL BACKGROUND

### I.    Procedural History and Settlement Agreement

On August 8, 2024, Plaintiffs filed a Complaint alleging that Defendants had failed for decades to ban fish imports that do not meet U.S. bycatch standards, as required by the MMPA, 16 U.S.C. §§ 1361 *et seq.*, and thus failed to act, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*

On January 15, 2025, the Parties entered into a settlement agreement that memorializes Defendants' commitment to "implement the Final Import Rule," *Lutnick* Agreement ¶ 1, and set deadlines for the Rule's implementation in four phases.  Relevant to this motion, under Phase 3, Defendants agreed to issue final comparability finding decisions for all harvesting nations on or before September 1, 2025, pursuant to its obligations under 50 C.F.R. § 216.24(h)(8)(i).  *Lutnick* Agreement ¶ 1(c).  Under Phase 4, Defendants agreed, "[p]ursuant to 50 C.F.R. § 216.24(h)(9)," to "prohibit the importation of fish and fish products into the United States from all harvesting nations or fisheries for which [NMFS] has denied a comparability finding" on January 1, 2026.  *Lutnick* Agreement ¶ 1(d).

The Parties agreed to two exceptions to Defendants' obligation to implement the Final Import Rule and ban the importation of fish and fish products for

---

[1] Before filing this motion, Plaintiffs complied with the *Lutnick* Agreement's meet and confer requirements; however, Parties were unable to resolve their disagreements without Court intervention. *Lutnick* Agreement ¶ 8.

4

harvesting nations or fisheries without a positive comparability finding.  First, "for avoidance of doubt," Plaintiffs confirmed that Defendants could "reconsider a comparability finding in accordance with 50 C.F.R. § 216.24(h)(8)(vii)."  Second, Defendants could "comply with a court order enjoining the enforcement of a comparability finding, notwithstanding the obligations provided in th[e] Agreement."  *Lutnick* Agreement ¶ 3.

The *Lutnick* Agreement was duly executed by Claudia Burke, Deputy Director in the Civil Division of the Justice Department, as an "authorized representative of the Attorney General."  *Lutnick* Agreement at p. 8.  In executing the Agreement, Defendants represented that the "offer to settle the case pursuant to the terms of this agreement has been accepted on behalf of the Attorney General" and that "[e]ach of the undersigned representatives of the Parties certifies that he or she is fully authorized by the Party to enter into this Agreement and to bind such Party to comply with the terms and conditions herein."  *Lutnick* Agreement ¶ 13.

On March 25, 2025, this Court issued an opinion and order granting the Parties' motion to construe their joint submission as a motion to correct the clerical omission of a "so-ordered" line for signature by this court under USCIT Rule 60(a).  In doing so, this Court held that it "retains jurisdiction to oversee compliance with the non-monetary terms of the parties' Stipulated Settlement Agreement and to resolve any motions to modify such terms in accordance with *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)."  Opinion and Order, ECF 38 at 13–14.  The Court further stated a "dismissal order that incorporates the terms of the

Stipulated Settlement Agreement will issue accordingly," *id.* at 13, and signed the Corrected Stipulation of Dismissal, which states that "[t]he non-monetary terms and conditions of the Parties' Stipulated Settlement Agreement are hereby adopted as an enforceable ORDER of this Court." ECF 39 at 3.

## II. Defendants' Partial Implementation of the *Lutnick* Agreement and the *NFI* Settlement

On September 2, 2025, NMFS published final determinations denying comparability findings for, among others, five swimming crab gillnet fisheries in Vietnam, the Philippines, Indonesia, and Sri Lanka because those fisheries lack a marine mammal bycatch program comparable to that of the United States and risk bycatch of imperiled Irrawaddy dolphins. 90 Fed. Reg. 42,395 (Sept. 2, 2025).[2] Under the *Lutnick* Agreement and the plain language of the MMPA, the federal government's obligation is clear: it must now "prohibit the importation of fish and fish products into the United States" from those fisheries beginning January 1, 2026. *Lutnick* Agreement ¶ 1(d).

On October 30, 2025, the same Defendants from this matter and the *NFI* plaintiffs entered a settlement in a *different* lawsuit to which none of the Plaintiffs in this matter is a party. *National Fisheries Institute et al. v. United States et al.*, Proposed Stipulated Order, ECF 37-1, Case No. 1:25-cv-0223-JAL (C.I.T.). Defendants in *NFI* agreed that the January 1, 2026 import ban for these five swimming crab fisheries will not apply, as the "effective date" is "stay[ed]." *Id.*

---

[2] *See, e.g.*, NMFS, Marine Mammal Protection Act Import Provisions Comparability Finding Application Final Report: Indonesia (undated), at 8. Available at: https://www.fisheries.noaa.gov/s3/2025-08/Indonesia-final-2025-508.pdf.

6

The parties requested that the *NFI* court "retain jurisdiction to oversee compliance with the terms of the Parties' attached stipulated order."  *See* Joint Stipulation of Dismissal, ECF 37, Case No: 1:25-cv-00223-JAL.  The *NFI* parties cited *Kokkonen* for the proposition that, by "embody[ing] the settlement contract in its dismissal order" the *NFI* court could "retain jurisdiction over the settlement contract."  *Id.* at 1.  The joint stipulation of dismissal attached a proposed stipulated order, which set out the terms of the *NFI* parties' settlement.  *See* Proposed Stipulated Order, ECF 37-1, Case No: 1:25-cv-00223-JAL.  The next day, the *NFI* court entered the joint stipulation of dismissal and order.  *See* Joint Stipulation of Dismissal and Order, ECF 41, Case No: 1:25-cv-00223-JAL.

Plaintiffs here made every effort to intervene in the *NFI* case to prevent interference with the *Lutnick* Agreement.  Plaintiffs filed a motion to intervene, and, following *NFI* plaintiffs' motion for a preliminary injunction, Plaintiffs here requested expedited consideration of their intervention motion and filed a proposed opposition to the preliminary injunction.  Motion to Intervene as Defendant-Intervenor, ECF 25, Case No. 1:25-cv-0223-JAL (C.I.T.); Emergency Motion to Expedite, ECF 29; Proposed Opposition, ECF 38.  Defendants opposed Plaintiffs' attempt to intervene and settled the case before Plaintiffs' motion was resolved.  *See* Defendants' Response in Opposition to Motion to Intervene, ECF 32, Case No. 1:25-cv-0223-JAL (C.I.T.).

7

## STANDARD OF REVIEW

In "exercise of its inherent powers," a district court has "the power to summarily enforce settlement agreements." *Haggart v. United States*, 943 F.3d 943, 947 (Fed. Cir. 2019); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 398 (1994) (court may "retain jurisdiction over [a] settlement contract" to oversee compliance in a case dismissed under Rule 41(a)(1)(ii)).

It is well-established that a "settlement agreement is a contract," and the court applies "basic contract principles" in interpreting an agreement's meaning. *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998). "Contract interpretation begins with the plain language of the written agreement," *Langkamp v. United States*, 943 F.3d 1346, 1349 (Fed. Cir. 2019), and courts "give the words of the agreement their ordinary meaning." *Harris*, 142 F.3d at 1467.

## ARGUMENT

The *NFI* Settlement violates Defendants' obligations under the *Lutnick* Agreement. By its plain terms, the *Lutnick* Agreement requires that, once NMFS denies a comparability finding for a harvesting nation or fishery, it is required to prohibit the importation of fish and fish products into the United States starting on January 1, 2026. *See Lutnick* Agreement ¶ 1(d). The recent *NFI* Settlement does the opposite: it allows importation of fish and fish products from these denied fisheries to continue beyond January 1, 2026, by staying the ban's implementation. *NFI* Settlement ¶ 1. Defendants' maneuvers in *NFI* violate the *Lutnick* Agreement,

which provides only two narrow circumstances where Defendants can obtain relief from their obligations under the *Lutnick* Agreement—neither of which applies.

Under Paragraph 3 of the *Lutnick* Agreement, the parties recognized that NMFS may "reconsider" a comparability finding "in accordance with" its regulations. *Lutnick* Agreement ¶ 3. Although the *NFI* Settlement references "reconsideration," presumably as a rationale for claiming that it does not violate the *Lutnick* Agreement, its "reconsideration" is not "in accordance with" NMFS' regulations. The regulations expressly require that, during any reconsideration, an import ban shall "remain in effect" until NMFS is able to make a positive finding; a ban cannot be lifted while NMFS engages in reconsideration. 50 C.F.R. § 216.24(h)(9)(ii)(A), (B); *see also* 50 C.F.R. § 216.24(h)(8)(vii) (establishing process for NMFS to reconsider a *positive* comparability that allows imports).

Paragraph 3 of the *Lutnick* Agreement also recognizes Defendants' ability to comply with a "court order enjoining the enforcement of a comparability finding." The *NFI* Settlement does not qualify. As reflected in the *NFI* dismissal order, the only action requested by the parties and taken by the court was to "retain jurisdiction to oversee compliance with the terms of the Parties' attached stipulated order and to resolve any motions to modify such terms." *See* Joint Stipulation of Dismissal and Order, ECF 41, Case No: 1:25-cv-00223-JAL (requesting that the *NFI* court invoke the procedural mechanism described in *Kokkonen* of "retain[ing] jurisdiction over the *settlement contract*" by "embody[ing] the settlement contract in its dismissal order") (emphasis added). Thus, the dismissal order in *NFI*, like the

9

dismissal order in this case, retains the courts' jurisdiction to enforce the parties' rights under the settlement agreements. *Compare* Corrected Stip. of Dismissal, ECF 39 ("The non-monetary terms and conditions of the Parties' Stipulated Settlement Agreement are hereby adopted as an enforceable ORDER of this Court….").

These identical procedural mechanisms, both intended to retain the courts' jurisdiction to enforce *contractual* compliance, are not "court order[s] enjoining" Defendants. *See, e.g.*, Black's Law Dictionary (12th ed. 2024) (defining "enjoin" to mean "legally prohibit or restrain by *injunction*") (emphasis added). A court's mere embodiment of a settlement contract in its dismissal order does not convert the settling parties' contractual obligations into an injunction. The *NFI* dismissal order does not purport to balance any injunction standards, provide any "reasons" for issuing an injunction, or do anything more than enter the settlement terms agreed to by Defendants and the *NFI* plaintiffs.[3] *See eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391 (2006) (setting test for permanent injunction including irreparable injury, inadequate remedies at law, balance of hardships, and public

---

[3] If the *NFI* court had engaged in assessing whether the "extraordinary remedy" of injunction was appropriate as part of its retention of jurisdiction, it would have considered, inter alia, whether the requested remedy violates the *Lutnick* Agreement, *as well as* the statute and the regulations, which both require an import ban, unless a nation demonstrates it meets U.S. standards. 16 U.S.C. § 1371(a)(1); 50 C.F.R. § 216.24(h)(9)(ii)(A), (B). In weighing the equities, the court would also have balanced fairness, as the remedy gives preferential treatment to these five high-bycatch-risk fisheries, allowing the fisheries to skirt the rules, while banning imports from the 235 other fisheries receiving negative comparability findings.

interest); Rules of the CIT 65(d) ("Every order granting an injunction . . . must . . . state the reasons why it issued.").

In sum, Defendants are bound by the *Lutnick* Agreement to prohibit on January 1, 2026 the importation of fish and fish products into the United States from all harvesting nations or fisheries for which NMFS has denied a comparability finding. The *NFI* Settlement's provision for delays in implementing such bans violates Defendants' legal obligations under both the *Lutnick* Agreement and the Final Import Rule, and there is no exception pursuant to the *Lutnick* Agreement that authorizes those delays.

## CONCLUSION

Because NMFS published final determinations denying comparability findings for five swimming crab fisheries in Vietnam, the Philippines, Indonesia, and Sri Lanka, and because Defendants are bound by the *Lutnick* Agreement to "prohibit the importation of fish and fish products into the United States" from those fisheries on January 1, 2026, Plaintiffs request that this Court declare Defendants to be in violation of the *Lutnick* Agreement and enter an order compelling Defendants to comply with the Agreement. Because the January 1 date is rapidly approaching, and given the imperiled status of the marine mammals bycaught in these fisheries, Plaintiffs respectfully request that the Court expedite its consideration of this motion.

## REQUEST FOR ORAL ARGUMENT

Pursuant to CIT Rule 7(c), Plaintiffs respectfully request oral argument on this motion.

## REQUEST FOR REPLY

Pursuant to CIT Rule 7(d), Plaintiffs respectfully request the right to serve a reply within 21 days after service of the Defendants' response to this motion.

Dated: December 12, 2025

Respectfully submitted,

/s/ Christina S. Marshall
Christina S. Marshall
cmarshall@andersonkreiger.com
Mina S. Makarious
mina@andersonkreiger.com
Sean M. Grammel
sgrammel@andersonkreiger.com
Marissa C. Grenon Gutierrez
mgrenongutierrez@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660

*Counsel for Natural Resources Defense Council, Center for Biological Diversity and Animal Welfare Institute*

/s/ Sarah Uhlemann
Sarah Uhlemann
Center for Biological Diversity
120 State Avenue NE #268
Olympia, WA 98501
(206) 327-2344

suhlemann@biologicaldiversity.org

*Counsel for Center for Biological Diversity and Animal Welfare Institute*

/s/ Stephen Zak Smith
Stephen Zak Smith
Natural Resources Defense Council
544 East Main Street Unit B
Bozeman, MT 59715
(406) 556-9300
zsmith@nrdc.org

*Counsel for Natural Resources Defense Council*

**Certificate of Service**

I hereby certify under penalty of perjury that on this 12th day of December 2025, a copy of the foregoing document was filed electronically. Service upon Defendants' counsel was thus effected by operation of the Court's CM/ECF system.

/s/ Christina S. Marshall
Christina S. Marshall

13