**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| NATURAL RESOURCES DEFENSE COUNSEL, et al., ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Court No. 1:24-cv-00148 |
| HOWARD LUTNICK, et al., ) ) | |
| Defendants. ) ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

BRETT A. SHUMATE
Assistant Attorney General

OF COUNSEL:

MARK HODOR
Office of General Counsel
National Oceanic & Atmospheric Admin.
Civil Division

DANIEL PAISLEY
Office of General Counsel
U.S. Department of the Treasury

ZACHARY SIMMONS
Office of the Chief Counsel
U.S. Customs & Border Protection

BRENNA E. JENNY
Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

AGATHA KOPROWSKI
Trial Attorney
U.S. Department of Justice
Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 507-6081
Email: agatha.koprowski@usdoj.gov

January 2, 2026                              *Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

SUMMARY OF THE ARGUMENT .................................................................................. 6

ARGUMENT ..................................................................................................................... 7

I.      Standard of Review ................................................................................................. 7

II.     Plaintiffs Have Not Identified A Waiver of Sovereign Immunity ....................... 8

III.    The NFI Order Is Permitted Under the Plain Language of the Settlement
        Agreement ............................................................................................................. 11

CONCLUSION ................................................................................................................ 18

## TABLE OF AUTHORITIES

<u>Cases</u>

*All. to End Repression v. City of Chicago,*
    742 F.2d 1007 (7th Cir. 1984) ................................................................................. 16

*Block v. North Dakota,*
    461 U.S. 273 (1983) ................................................................................................ 10

*Blueport Co. v. United States,*
    533 F.3d 1374 (Fed. Cir. 2008) ................................................................................. 7

*Brown v. United States,*
    105 F.3d 621 (Fed. Cir. 1997) ................................................................................... 9

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988) ................................................................................................ 10

*D. Patrick, Inc. v. Ford Motor Co.,*
    8 F.3d 455 (7th Cir. 1993) ....................................................................................... 14

*Fed. Aviation Admin. v. Cooper,*
    566 U.S. 284 (2012) .................................................................................................. 7

*Fed. Crop Ins. Corp. v. Merrill,*
    332 U.S. 380 (1947) ........................................................................................... 16, 17

*Franklin-Mason v. Mabus,*
    742 F.3d 1051 (D.C. Cir. 2014) ............................................................................... 11

*Glidden Co. v. Zdonak,*
    370 U.S. 530 (1962) .................................................................................................. 9

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers,*
    415 U.S. 423 (1974) ................................................................................................ 14

*Harbert/Lummus Agrifuels Projects v. United States,*
    142 F.3d 1429 (Fed. Cir. 1998) ............................................................................... 17

*Harris v. Dep't of Veterans Affs.,*
    142 F.3d 1463 (Fed. Cir. 1998) ................................................................................. 8

*Hercules v. United States,*
    292 F.3d 1378 (Fed. Cir. 2002) ................................................................................. 8

*Humane Soc'y of U.S. v. Clinton,*
    236 F.3d 1320 (Fed. Cir. 2001) ................................................................................. 9

*Japan Line, Ltd. v. Los Angeles Cnty.*,
   441 U.S. 434, 456 (1979)………………………………………………………………...15

*Kanemoto v. Reno*,
   41 F.3d 641 (Fed. Cir. 1994)........................................................................................ 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)..................................................................................................... 11

*Livingston v. Derwinski*,
   959 F.2d 224 (Fed. Cir. 1992)..................................................................................... 10

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
   848 F.3d 1358 (Fed. Cir. 2017)................................................................................... 14

*Midwest Sports Med. & Orthopedic Surgery, Inc. v. United States*,
   73 F. Supp. 2d 870 (S.D. Ohio 1999) ........................................................................ 18

*Nat'l Ass'n of Realtors v. United States*,
   97 F.4th 951 (D.C. Cir. 2024) ..................................................................................... 16

*Nat'l Presto Indus., Inc. v. Dazey Corp.*,
   107 F.3d 1576 (Fed. Cir. 1997).................................................................................... 13

*Pacrim Pizza Co. v. Pirie*,
   304 F.3d 1291 (Fed. Cir. 2002).................................................................................... 10

*Presidential Gardens Assocs. v. United States ex rel. Sec'y of Hous. & Urb. Dev.*,
   175 F.3d 132 (2d Cir. 1999)......................................................................................... 11

*RHI Holdings, Inc. v. United States*,
   142 F.3d 1459 (Fed. Cir. 1998).................................................................................. 8, 9

*Trauma Serv. Grp. v. United States*,
   104 F.3d 1321 (Fed. Cir. 1997)............................................................................. passim

*United States v. Cherokee Nation of Okla.*,
   480 U.S. 700 (1987)..................................................................................................... 16

*United States v. Mitchell*,
   463 U.S. 206 (1983)............................................................................................. 7, 8, 10

*United States v. Sherwood*,
   312 U.S. 584 (1941)....................................................................................................... 9

*United States v. Testan*,
   424 U.S. 392 (1976)..................................................................................................... 10

*United States v. Winstar Corp.*,
  518 U.S. 839 (1996)......................................................................................... 16

*VanDesande v. United States*,
  673 F.3d 1342 (Fed. Cir. 2012)......................................................................... 8

*Worley v. Vilsack*,
  No. 01-cv-00082-GKF-SH, 2024 WL 2962903 (N.D. Okla. Mar. 5, 2024) ......................... 11

Statutes

U.S. Const. art. I, § 8, cl. 3 ........................................................................... 15

16 U.S.C. §§ 1361-1423h ............................................................................... 1

28 U.S.C. § 1581............................................................................................. 9, 10

Regulations & Rules

28 C.F.R. § 0.160 ........................................................................................... 16, 17, 18

28 C.F.R. § 0.161 ........................................................................................... 17

28 C.F.R. § 0.168 ........................................................................................... 17

50 C.F.R. § 216.24........................................................................................... 11, 12

USCIT R. 65 ................................................................................................... 14

Other Authorities

*Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Act – Notification of Comparability Findings and Implementation of Import Restrictions*,
  90 Fed. Reg. 42,395 (Dep't Commerce Sept. 2, 2025)................................... 1, 3, 4

NOAA Fisheries, *2025 Marine Mammal Protection Act Comparability Finding Determinations for Harvesting Nations*, https://www.fisheries.noaa.gov/international-affairs/2025-marine-mammal-protection-act-comparability-finding-determinations .................. 2

Department of Justice Directive No. 1-15 ....................................................... 17

Black's Law Dictionary (12th ed. 2024)........................................................ 13

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |  |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNSEL, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Court No. 1:24-cv-00148 |
| HOWARD LUTNICK, et al., | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

**INTRODUCTION**

Earlier this year, the Government settled plaintiffs' claims that the Government had failed to properly implement the Marine Mammal Protection Act (MMPA), 16 U.S.C. §§ 1361-1423h, by making comparability findings and then banning certain seafood imports.  The agencies have devoted this year to the enormous task of faithfully complying with the settlement agreement: Since January 2025, the Department of Commerce, acting through the National Marine Fisheries Service (NMFS), has issued determinations of comparability for *all* harvesting nations and fisheries that seek to export fish and fish products to the United States—approximately 2,500 fisheries across 135 nations.  *Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Act – Notification of Comparability Findings and Implementation of Import Restrictions*, 90 Fed. Reg. 42,395, 42,396 (Dep't Commerce Sept. 2, 2025) (Comparability Findings).  Because of that work, 235 commercial fisheries from 46 harvesting nations will be prohibited from importing fish and fish products into the United States beginning

on January 1, 2026.[1]  Plaintiffs' motion concerns a six-month, court-ordered delay of the effective date of the import ban for just five fisheries in four countries.  Motion to Enforce Settlement Agreement, ECF No. 40 (Motion)

Plaintiffs have not and cannot establish that Congress has waived the Government's sovereign immunity for this Court to order the relief requested in a contract dispute. Accordingly, this Court lacks subject matter jurisdiction and plaintiffs' motion should be denied.

Even if the Court had jurisdiction, plaintiffs' motion to enforce the settlement agreement rests on the implausible premise that the Government entered a settlement agreement that binds it to disobey future court orders, such as the NFI Order entered by Judge Laroski regarding the five subject fisheries, and restrain its sovereign power.  The Government would not, and did not, enter such a settlement agreement, so the Government does not violate the settlement agreement by complying with Judge Laroski's order.  And plaintiffs' motion seeks an inappropriate remedy: Plaintiffs ask the Court to order the Government to *disobey* the NFI Order by putting into effect the very import bans Judge Laroski barred the Government from enforcing.  Plaintiffs' extraordinary request depends on a misreading of the parties' agreement in this case.  The Court should deny the motion and decline to subject the Government to conflicting orders regarding the five fisheries at issue.

## BACKGROUND

**This litigation.**  In 2024, plaintiffs filed this lawsuit alleging that the government had failed for decades to adequately implement the MMPA by issuing country-by-country and

---

[1] NOAA Fisheries, *2025 Marine Mammal Protection Act Comparability Finding Determinations for Harvesting Nations*, https://www.fisheries.noaa.gov/international-affairs/2025-marine-mammal-protection-act-comparability-finding-determinations.

fishery-by-fishery findings regarding the adequacy of marine mammal bycatch protections. Complaint (Aug. 8, 2024), ECF No. 1.

On January 15, 2025, the parties entered a settlement agreement.  Settlement Agreement (Jan. 16, 2025), ECF No. 29.  The Settlement Agreement provides that NMFS will "issue final comparability findings for all harvesting nations and submit such findings to the Federal Register for publication," to take effect "on January 1, 2026." *Id.* ¶¶ 1(c)-(d).  It also provides that the Government "may comply with a court order enjoining the enforcement of a comparability finding, notwithstanding the obligations provided in this Agreement." *Id.* ¶ 3.  Giving the agencies breathing room after making those findings, plaintiffs agreed not to sue over, or encourage or support any litigation challenging, any findings prior to January 1, 2026. *Id.* ¶ 4. The Settlement Agreement also provides that "this agreement shall not bind the Parties in any proceedings, whether judicial or administrative in nature, in which the Parties or counsel for the Parties have or may acquire an interest, except as is necessary to effect the terms of this agreement." *Id.* ¶ 11.  Claudia Burke, Deputy Director of the National Courts section of the Department of Justice's Civil Division, signed the agreement for the government. *Id.* at 8.  The Court incorporated the agreement into its order dismissing this action.  Corrected Stipulation of Dismissal (Mar. 3, 2025), ECF No. 39 (Stipulated Order).

**The government's compliance with the Settlement Agreement.**  The Government fully complied with these contract terms.  Following significant engagement with harvesting nations and reviewing all relevant materials in its possession, NMFS issued, for the first time, determinations of comparability for approximately 2,500 commercial fisheries in 135 countries. Settlement Agreement ¶ 1(a)-(c); Comparability Findings, 90 Fed. Reg. at 42,395.  On September 2, 2025, these determinations were published in the Federal Register.

Settlement Agreement ¶ 1(c); Comparability Findings, 90 Fed. Reg. at 42,395.  All imports of fish and fish products harvested in foreign fisheries that were denied a favorable comparability finding—240 in total—were to be banned from importation into the United States effective January 1, 2026.  Settlement Agreement ¶ 1(d); Comparability Findings, 90 Fed. Reg. at 42,397-98.

*NFI* **litigation.**  In October 2025, the National Fisheries Institute, Restaurant Law Center, and other trade associations representing seafood importers and processors sued the Government arguing that the approximately 2,500 Comparability Findings were based on a flawed methodology and were inconsistent with the agency's statutory obligations and, specifically, that all of the negative comparability findings for 240 fisheries from 46 countries "lacked reasoned explanation or fishery-specific evidence" and failed to consider reliance interests.  *See generally* Complaint, *Nat'l Fisheries Inst. v. United States*, No. 1:25-cv-223 (Ct. Int'l Trade Oct. 9, 2025) (NFI Complaint), ECF No. 1.  The NFI Complaint further alleged that the Comparability Findings were already causing "devastating domestic and international economic consequences." For example, they alleged that the determinations "will prohibit the lawful importation of the only commercially viable sources of BSC [blue swimming crab] meat."  *Id.* ¶ 3.  As a remedy, the NFI action sought vacatur and an injunction against enforcement of the September 2, 2025 Comparability Findings "in their entirety."  *Id.* at 46 (Prayer for Relief).  The NFI plaintiffs also sought a preliminary injunction to bar the Government from enforcing any of the import prohibitions during the NFI litigation.  Plaintiffs' Motion For Preliminary Injunction, *Nat'l Fisheries Inst. v. United States*, No. 1:25-cv-223 (Ct. Int'l Trade Oct. 14, 2025), ECF No. 17 (PI Motion).  Plaintiffs in this action sought to intervene.  *See, e.g.*, Motion at 7.  The Government opposed, pressing its longstanding position that they lack standing.  Motion to Intervene, *Nat'l*

*Fisheries Inst. v. United States*, No. 1:25-cv-223 (Ct. Int'l Trade Oct. 22, 2025), ECF No. 25;

Defendants' Opposition to Motion to Intervene, *Nat'l Fisheries Inst. v. United States*, No. 1:25-

cv-223 (Ct. Int'l Trade Oct. 29, 2025), ECF No. 32.

Ultimately, the NFI plaintiffs and the Government settled the case for significantly

narrower relief than the NFI plaintiffs had originally sought: a temporary postponement of the

January 1, 2026, effective date of the import bans for five specific blue swimming crab fisheries

located in Vietnam, the Philippines, Indonesia, and Sri Lanka, requiring the government to

determine comparability in new findings following renewed analysis.  NFI Order at 1, 4.  During

that time, NMFS agreed to consult with those four countries and permit them to provide

additional information.  NMFS then agreed to reconsider its determinations with respect to those

five fisheries based on the preexisting record and new information submitted by interested

parties, and to issue comparability findings by the later of 180 days after the Court entered an

order adopting the terms of the settlement agreement or appropriations were restored to the

relevant government agency undertaking the review.  *Id.* at 5.  Judge Laroski issued the NFI

Order, incorporating the terms of the settlement agreement and prohibiting the Government from

implementing an import ban for the five fisheries until the completion of its reconsideration of

the determinations of comparability at issue.  *Id.* at 4 ("[T]he Court orders … [t]he January 1,

2026 effective date of the import ban for the [identified] swimming crab fisheries … is stayed

pending NMFS's reconsideration determination on the comparability findings for these

fisheries.").

**This motion.** On December 12, 2025, plaintiffs filed the Motion, arguing that the

Government breached its obligations under the Settlement Agreement.  They seek a declaration

that "Defendants' settlement in [NFI]" and compliance with the NFI Order violated the

Settlement Agreement.  ECF No. 40-1 (proposed order).  But on its face, the NFI Order is "a court order enjoining the enforcement of a comparability finding," and thus the Government may comply with the NFI Order while abiding by its obligations under the Settlement Agreement.  In arguing otherwise, the Motion rests on an untenably narrow interpretation of the phrase "a court order enjoining the enforcement of a comparability finding," which would require this Court to conclude the Government contractually agreed to ignore certain court orders and implicitly agreed to restrain future exercises of its sovereign power.  The Court should reject this position.

## SUMMARY OF THE ARGUMENT

The Court should deny the Motion for at least three reasons.

First, there is no Congressional waiver of sovereign immunity that would permit the Court to order specific performance or a declaratory judgment against the Government in a contract action.  Absent an explicit waiver of sovereign immunity, this Court lacks jurisdiction to provide the requested relief.  And no prior action of the parties or of this Court can expand the Court's jurisdiction beyond what Congress has specifically allowed.

Second, even if the Court could grant the relief requested, the NFI Order qualifies under the Settlement Agreement as "a court order enjoining the enforcement of a comparability finding" and therefore does not violate the Government's obligations under the Settlement Agreement.  The Settlement Agreement specifically contemplated that third parties might challenge the Comparability Findings and seek court orders that would prevent the Government from taking the actions outlined elsewhere in the Settlement Agreement.  Thus, the Settlement Agreement memorialized what is common sense: if another judge in this Court orders relief barring enforcement of one or more of the Government's previously issued Comparability Findings, the Government may comply with such an order.  An action expressly authorized in the Settlement Agreement cannot constitute a breach.

In asserting otherwise, plaintiffs' position requires this Court to conclude that the Settlement Agreement incorporated significant restrictions on the Government's ability to settle an industry challenge to a negative comparability finding, while only allowing the Government freely to settle lawsuits seeking to dismantle favorable comparability findings. The Government did not do so, and certainly did not do so in the unmistakably clear manner required by courts to determine that the government restricted future acts of sovereign power, such as controlling imports.

Finally, even if plaintiffs' extraordinary interpretation of the Settlement Agreement were correct, the Government officials who entered into the Settlement Agreement had no authority to enter a settlement agreement that precluded compliance with certain court orders or forbade future settlements in possible litigation going forward. It is established beyond dispute that the Government is not bound by the actions of officials outside their actual authority.

Accordingly, the Motion should be denied.

## ARGUMENT

### I.    Standard of Review

To bring a cause of action against the United States, a plaintiff must identify a waiver of sovereign immunity demonstrating that the United States has consented to be sued before a court with subject matter jurisdiction over the claim. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). Courts may enforce the contractual obligations of the United States only if the person seeking enforcement of the contract provisions identifies an unequivocal waiver of its sovereign immunity. *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012); *Blueport Co. v. United States*, 533 F.3d 1374, 1382-83 (Fed. Cir. 2008).

In the absence of a Congressional waiver of sovereign immunity allowing for an order of specific performance or declaratory relief on a contract claim, this Court lacks subject matter

jurisdiction, and therefore the motion should be denied pursuant to Rules 12(b)(1) and 12(h)(3) of the Rules of this Court.

Assuming that plaintiffs could establish that this Court has subject matter jurisdiction, a settlement agreement is a contract.  *VanDesande v. United States*, 673 F.3d 1342, 1351 (Fed. Cir. 2012); *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).  To prevail on a contract claim against the United States, a plaintiff must, among other things, establish that the Government failed to perform a contractual duty when it is due.  *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).  Contract interpretation begins with the plain language of the written agreement, but a "contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract."  *Hercules v. United States*, 292 F.3d 1378, 1380-81 (Fed. Cir. 2002).  "A contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States."  *Trauma Serv.*, 104 F.3d at 1325.

## II.    Plaintiffs Have Not Identified A Waiver of Sovereign Immunity

This Court does not have jurisdiction to enforce the terms of the Settlement Agreement because plaintiffs have not identified a waiver of sovereign immunity and the parties cannot create one by contract.  Accordingly, the Court should deny the motion.

"All federal courts are courts of limited jurisdiction, and it is the duty of a federal court to examine its jurisdiction over every claim before it assumes jurisdiction over the claim."  *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998).  To obtain a remedy against the United States, a plaintiff must identify a waiver of sovereign immunity permitting the action and the remedy the plaintiff seeks.  *See, e.g.*, *Mitchell*, 463 U.S. at 212 ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction); *Kanemoto v. Reno*, 41 F.3d 641, 644-45 (Fed. Cir. 1994) ("Thus,

8

because the range of relief available in the Court of Federal Claims is limited, the waiver of sovereign immunity provided under the Tucker Act will not always provide an adequate remedy in a suit against the United States."). Whether the United States has consented to be sued through a valid waiver of sovereign immunity is a threshold jurisdictional issue. *RHI*, 142 F.3d at 1461; *see also United States v. Sherwood*, 312 U.S. 584, 586-87 (1941). A waiver of sovereign immunity by the United States must be explicit and must be strictly construed in favor of the Government. *RHI*, 142 F.3d at 1461.

Plaintiffs ask the Court to order that the Government "comply with" the Settlement Agreement by disregarding the provisions of the NFI Order issued by Judge Laroski. *See* Proposed Order, ECF No. 40-1. But no waiver of sovereign immunity permits this Court to entertain plaintiffs' request for specific performance and a declaratory judgment against the United States based on a claimed breach of contract. *Glidden Co. v. Zdonak*, 370 U.S. 530, 557 (1962) ("From the beginning [the Court of Federal Claims] has been given jurisdiction only to award damages, not specific relief.") (Harlan, J., announcing judgment of the Court); *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) (holding that the Court of Federal Claims lacked jurisdiction to order declaratory or other equitable relief under the Tucker Act).

The waiver of sovereign immunity that initially permitted plaintiffs to file this action is contained at 28 U.S.C. § 1581. *See Humane Soc'y of the U.S. v. Clinton*, 236 F.3d 1320, 1333 (Fed. Cir. 2001) ("[T]he grant of jurisdiction to the Court of International Trade under § 1581 carries with it a co-extensive waiver of sovereign immunity."). But § 1581 does not explicitly waive the sovereign immunity of the United States for a breach of contract claim. As relevant here, § 1581(i) provides the Court with jurisdiction to adjudicate a claim against the United States "that arises out of any law of the United States providing for . . . embargoes or other

9

quantitative restrictions of the importation of merchandise . . . or . . . the administration and enforcement" thereof.  28 U.S.C. § 1581(i)(C)-(D).  But plaintiffs' Motion does not press a claim "aris[ing] out of any law of the United States"; instead, again, they now seek to enforce a contract right.  *See, e.g.*, Motion at 8 (urging the Court to apply "basic contract principles"); *id.* at 11 (requesting that the Court "compel[] Defendants to comply with the Agreement").  Section 1581 does not provide jurisdiction to this Court to enforce contractual terms, and plaintiffs nowhere identify a waiver of sovereign immunity that could encompass their claim.

It changes nothing that this Court incorporated the terms of the Settlement Agreement into the Stipulated Order at the parties' request.  Only Congress may waive the sovereign immunity of the United States.  *Block v. North Dakota*, 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress.").  Neither contract nor litigation conduct can enlarge a waiver of sovereign immunity.  *See Mitchell*, 463 U.S. at 215-16 ("[N]o contracting officer or other official is empowered to consent to suit against the United States."); *United States v. Testan*, 424 U.S. 392, 399 (1976) (federal sovereign immunity persists "except as Congress has consented to" a waiver); *Pacrim Pizza Co. v. Pirie*, 304 F.3d 1291, 1294 (Fed. Cir. 2002) (no waiver of sovereign immunity despite contract language purportedly agreeing to jurisdiction under the Contract Disputes Act).  Nor can this Court act to expand its jurisdiction beyond its specific Congressional mandate.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988); *Livingston v. Derwinski*, 959 F.2d 224, 225 (Fed. Cir. 1992). That is precisely why the D.C. Circuit has held that, even when "a federal district court retains jurisdiction to enforce a settlement agreement" by "incorporat[ing] the settlement agreement into the dismissal order or specifically includ[ing] a clause in the dismissal order retaining jurisdiction," that does not

suffice to overcome the absence of a waiver of sovereign immunity. *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1055 (D.C. Cir. 2014). Other courts agree. *See, e.g.*, *Presidential Gardens Assocs. v. United States ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 140 (2d Cir. 1999); *Worley v. Vilsack*, No. 01-cv-00082-GKF-SH, 2024 WL 2962903, at *5 (N.D. Okla. Mar. 5, 2024). And the inherent power of district courts to enforce settlement terms against private parties under their ancillary jurisdiction, *see* Motion at 8 (citing, among other things, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 398 [*sic*] (1994)), are equally irrelevant to whether there is a waiver of sovereign immunity: "[w]hether ancillary jurisdiction exists . . . has no impact whatsoever on the issue of sovereign immunity or its waiver." *Presidential Gardens*, 175 F.3d at 140.

In the absence of a Congressional waiver of sovereign immunity allowing for an order of specific performance or declaratory judgment in a contract claim, this Court lacks subject matter jurisdiction over the Motion. Accordingly, the Motion should be denied.

## III.    The NFI Order Is Permitted Under the Plain Language of the Settlement Agreement

Plaintiffs argue that settling the NFI lawsuit and complying with the terms of the NFI Order constitutes a breach of the Settlement Agreement. Motion at 11. But nothing in the Settlement Agreement bars the United States from abiding by future court orders enjoining the enforcement of comparability findings, including through settlement of litigation. Indeed, the Settlement Agreement provides that, "[f]or avoidance of doubt, NMFS may reconsider a comparability finding in accordance with 50 C.F.R. § 216.24(h)(8)(vii), or comply with a court order enjoining the enforcement of a comparability finding, notwithstanding the obligations

provided in this Agreement." *Id.* ¶ 3.[2]  Plaintiffs' objections are founded on the implausible and

incorrect premise that the Government *agreed to disobey* some court orders—in plaintiffs' view,

all court orders other than formal injunctions against the enforcement of a comparability finding.

Of course, the Government could not consent to ignore *any* future court orders, regardless of

their content or form.  Plaintiffs also read this reservation of rights extraordinarily narrowly to

argue that the United States agreed—implicitly—to sweeping restrictions on its future discretion

to settle claims in the context of an important sovereign power, control over trade and imports.

The Government simply did not do so.

To start, the NFI Order is a court order.  As the parties jointly argued in the Rule 60(a)

motion before this Court, "incorporating the terms of the settlement agreement into a dismissal

order . . . incorporates the Settlement Agreement into an order of the court."  Joint Submission

Pursuant to Jan. 23, 2025, Order and Rule 60(a) Motion for Clerical Correction at 4-5 (Feb. 7,

2025), ECF No. 37.  The NFI Order resulted from the same process.  In each instance, the Court

dismissed the action by signing a "so-ordered" line incorporating the terms negotiated by the

parties.  NFI Order at 6; Stipulated Order at 3.  The NFI Order even goes further than merely

signing the parties' stipulations, explicitly stating that "[t]he Court orders . . . [t]he January 1,

2026 effective date of the import ban . . . is stayed pending NMFS's reconsideration

determination on the comparability findings for [certain] fisheries."  NFI Order at 4.

Plaintiffs seem to agree the NFI Order is an "order" within the meaning of Settlement

Agreement ¶ 3 but argue that the NFI Order is not one "enjoining the enforcement of a

---

[2] Plaintiffs' arguments, Motion at 9, that the NFI Order is not a reconsideration of a comparability determination under ¶ 3 of the Settlement Agreement are irrelevant.  The Government does not take the position that the obligations arising from the NFI Order constitute reconsideration of a comparability determination under either 50 C.F.R. § 216.24(h)(8)(vii) or (h)(9)(ii).

comparability finding," apparently because Judge Laroski did not formally describe the order as a permanent or preliminary injunction. Motion at 10. But the function of the NFI Order is to "enjoin[] the enforcement of a comparability finding," and therefore Plaintiffs' hypertechnical reading fails. We agree with plaintiffs, Motion at 10, that the plain meaning of enjoin is to "legally prohibit or restrain by injunction." Enjoin, Black's Law Dictionary (12th ed. 2024). Injunction (which plaintiffs do not define), in turn, refers to a "court order commanding or preventing an action." Injunction, Black's Law Dictionary (12th ed. 2024). That definition fits the NFI Order comfortably. The NFI Order "prevent[s] an action," *id.*, because it legally prohibits the government from effectuating or enforcing the import ban for five fisheries for a fixed period of time while the government reconsiders those fisheries' negative comparability findings. NFI Order at 4. It also "command[s] . . . an action" because it "orders" the Government to "make a public determination on whether to issue a comparability finding" allowing importation from the five fisheries within the specified time period. NFI Order at 4-5. It thus is undoubtedly an order "enjoining the enforcement of a comparability finding," because it prevents the Government from enforcing through an import ban its published findings regarding the five fisheries until it completes a court-ordered, time-limited redetermination. Settlement Agreement ¶ 3.

Plaintiffs' contrary position requires a strained, overly narrow interpretation of the term "enjoin" that is not supported by the dictionary cited by the dictionary cited by Plaintiffs and is inconsistent with precedent construing orders issued under the process outlined in *Kokkonen* (to the extent this Court concludes it has jurisdiction over the Motion pursuant to the *Kokkonen* process, although it does not). *See, e.g.*, *Nat'l Presto Indus., Inc. v. Dazey Corp.*, 107 F.3d 1576, 1583 (Fed. Cir. 1997) (explaining that a settlement agreement must be incorporated into a court

order for the federal court to retain jurisdiction to enforce its terms, because, "'[s]tanding alone, a settlement agreement is nothing more than a contract; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt.'" (quoting *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993))).

Plaintiffs are also wrong that the "only action…taken by the [NFI] court was to 'retain jurisdiction to oversee compliance with the terms of the Parties' attached stipulated order and to resolve any motions to modify such terms.'"  Motion at 9 (quoting Joint Stipulation of Dismissal and Order, ECF 41, Case No: 1:25-cv-00223-JAL).  The NFI Order states: "the Court orders, as follows… The January 1, 2026 effective date of the import ban for the swimming crab fisheries located in Vietnam, Philippines, Indonesia, and Sri Lanka (the "Harvesting Nations")…—is stayed pending NMFS's reconsideration determination on the comparability findings for these fisheries."  NFI Order at 4.  The NFI court also directed the Government to take specified actions on a specified timeframe.  *Id.* at 5-6.  If the Government were to immediately enforce import bans for the five fisheries at issue in the NFI Order, the Government would clearly be violating the NFI Order—a sure sign that the NFI Order is an order "enjoining the enforcement of a comparability finding."

Plaintiffs' suggestion that the NFI Order violates USCIT R. 65(d)(1)(A) is also misguided.  Motion at 10-11.  The Rule requires that "every order granting an injunction" must, among other things, "state the reasons why it issued."  The NFI Order does state the basis for issuing the injunction: "The Parties mutually agree."  NFI Order at 4.  The NFI Order also "state[s] its terms specifically" and "describe[s] in reasonable detail…the act or acts restrained or required."  USCIT R. 65(d)(1)(B)-(C).  The purpose of USCIT R. 65(d)(1) is to avoid "vague or overly broad injunctions" so as to give parties fair notice "of what the injunction actually

14

prohibits." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017) (second quotation quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 444 (1974)). The NFI Order accomplished this purpose, by clearly prohibiting the Government from implementing import bans for the five fisheries during the pendency of its court-mandated time-limited reconsideration period. In all events, even if plaintiffs were correct that the NFI Order does not fully comply with USCIT R. 65(d)(1), that does not equate to a violation of the Settlement Agreement—and the proper forum for that complaint lies in the NFI court, not this Court.

To the extent plaintiffs' motion springs from the position that the NFI Order is not a "court order enjoining the enforcement of a comparability finding" because the order arose from a settlement agreement and the Government was not permitted to settle the NFI litigation, that is baseless. Nothing in the Settlement Agreement restricted the Government from settling any future litigation. There is no language that could have created such an obligation for the government; tellingly, plaintiffs do not point to any term to support their suggestion that the Government could not have settled the NFI action or any other challenge to the Comparability Findings.

Plaintiffs are seeking to interpret the Settlement Agreement so as to bind the Government's discretion to resolve unknown future claims affecting permissible imports into the United States, and as such, they must point to express, clear language supporting such a restriction. They cannot do so. Plaintiffs read the Settlement Agreement to assert a broad restriction on the Government's exercise of a sovereign power. *See* U.S. Const. art. I, § 8, cl. 3 (authorizing Congress "[t]o regulate Commerce with foreign Nations"); *Japan Line, Ltd. v. Los Angeles Cnty.*, 441 U.S. 434, 456 (1979). "[C]ases extending back into the 19th century" hold

that a contract can "surrender[] a sovereign power" only when it does so "in unmistakable terms." *United States v. Winstar Corp.*, 518 U.S. 839, 872, 878 (1996).  Pursuant to this so-called unmistakability doctrine, courts have declined to interpret contracts with the government as surrendering a sovereign power where the language falls short of doing so in clear and unmistakable terms.  *See, e.g.*, *Nat'l Ass'n of Realtors v. United States*, 97 F.4th 951, 958 (D.C. Cir. 2024) (applying the unmistakability doctrine as a canon of construction for interpreting a settlement agreement); *All. to End Repression v. City of Chicago*, 742 F.2d 1007, 1014-15 (7th Cir. 1984) (en banc) (same, for a consent decree); *United States v. Cherokee Nation of Okla.*, 480 U.S. 700, 707 (1987) (same, for a treaty).  There is no question that the Settlement Agreement lacks the sort of express, unmistakable language necessary to constrain the Government's authority in the manner claimed by plaintiffs, even assuming that the Government had ever possessed the novel intent that plaintiffs ascribe to it in this case.

Moreover, terms restricting the Government's discretion as to whether and how to litigate and settle in future cases are highly unusual in Government settlement agreements—so unusual that Department of Justice regulations require such settlements to be approved by "the Deputy Attorney General or the Associate Attorney General."  28 C.F.R. § 0.160(d).  Even if the Settlement Agreement could be interpreted to restrict the Government's settlement authority in an area of sovereign power, the agreement could not have bound the Government not to settle future litigation that had yet to accrue.  Like any other contract with the United States, settlement agreements must be entered by an official with actual authority to bind the United States to the terms of the agreement.  *Trauma Serv.*, 104 F.3d at 1325.  The burden to "accurately ascertain that he who purports to act for the Government stays within the bounds of his authority" rests on the nongovernment party.  *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); *accord*

*Trauma Serv.*, 104 F.3d at 1325.  Plaintiffs have not even tried to argue that an official with the requisite authority pursuant to 28 C.F.R. § 0.160(d) authorized the Settlement Agreement.

Certain career Department of Justice employees have authority to approve and enter many ordinary settlement agreements.  *See* 28 C.F.R. § 0.168.  As relevant here, the Branch Director of National Courts may "[a]ccept offers in compromise of . . . claims against the United States in all cases in which the principal amount of the proposed settlement does not exceed $1,000,000."  Department of Justice Directive No. 1-15, § 1(b)(2).  The delegation of authority may "not be exercised" when "[f]or any reason, the proposed action, as a practical matter, will control or adversely influence the disposition of other claims totaling more than" the amount designated in § 1(b)(2) and when "[b]ecause a novel question of law or a question of policy is presented, or for any other reason, the proposed action should. . . receive the personal attention of the Assistant Attorney General."  Directive No. 1-15, § 1(e)(i)-(ii).

The officials with actual authority to bind the United States to an agreement that would "control or adversely influence the disposition of other claims" that are unknown future claims of indeterminable value, or limit the discretion of a department to make policy decisions, are the Deputy Attorney General and the Associate Attorney General.  28 C.F.R. § 0.160(d); *see also id.* § 0.161 (directing the relevant Assistant Attorney General to transmit a recommendation in such instances to the Deputy or Associate Attorney General, and authorizing the Deputy or Associate Attorney General to settle such claims).  Any settlement agreement that would, as a practical matter, impede the Government's ability to settle future, unknown, and unaccrued claims necessarily must be referred to the appropriate political official for authorization.  Absent approval by an official with the requisite actual authority to bind the Government to this term, the Government is not so bound.  *See, e.g.*, *Fed. Crop Ins. Corp.*, 332 U.S. at 384;

*Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1432 (Fed. Cir. 1998) ("It is well established that the government is not bound by the acts of its agents beyond the scope of their actual authority."); *Trauma Serv.*, 104 F.3d at 1325; *Midwest Sports Med. & Orthopedic Surgery, Inc. v. United States*, 73 F. Supp. 2d 870, 879-82 (S.D. Ohio 1999) (denying motion to enforce settlement agreement when there was no evidence that an official with actual authority under 28 C.F.R. § 0.160 had exercised that authority, even when attorney "act[ed] under the apparent authority" of the proper official). Even if the Settlement Agreement could be read to restrict settlement of future litigation or compliance with certain court orders, no official was authorized to agree to such an offer, and the Government is not bound by those terms.

The NFI litigation threatened to indefinitely delay and undo *all* of the determinations the agencies reached and published in compliance with the Settlement Agreement in this case. That is because the NFI plaintiffs challenged all of the Comparability Findings, including the negative comparability findings for all 240 fisheries across 46 countries, and sought preliminary and permanent relief from all of the anticipated import bans. *See generally* NFI Complaint; PI Motion. Yet the government settled the litigation in a way that protected the bulk of the agencies' work. Retaining the discretion to assess litigation risk, balance competing interests, and act in a manner that best protects the government's prerogatives reinforces why the Government included the reservation of rights in ¶ 3.

In sum, the Government did not breach the Settlement Agreement, either by complying with the NFI Order issued by Judge Laroski by undertaking and refraining from specified actions or by entering the NFI settlement agreement.

## CONCLUSION

For these reasons, we respectfully request that the Court deny the Motion.

18

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General

OF COUNSEL:

MARK HODOR
Office of General Counsel
National Oceanic & Atmospheric Admin.
Civil Division

DANIEL PAISLEY
Office of General Counsel
U.S. Department of the Treasury

ZACHARY SIMMONS
Office of the Chief Counsel
U.S. Customs & Border Protection

/s/ Brenna E. Jenny
BRENNA E. JENNY
Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

AGATHA KOPROWSKI
Trial Attorney
U.S. Department of Justice
Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 507-6081
Email: agatha.koprowski@usdoj.gov

January 2, 2026

*Attorneys for Defendants*

19

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this Response in Opposition to Plaintiffs' Motion to Enforce Settlement Agreement contains 5427 words, excluding any materials excluded from those Procedures' requirements, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Claudia Burke

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this Jan.2, 2026, a copy of the foregoing brief was filed electronically. Service upon plaintiffs' counsel was thus effected by operation of the court's CM/ECF function.