## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., <br><br> CENTER FOR BIOLOGICAL DIVERSITY, <br><br> *and* <br><br> ANIMAL WELFARE INSTITUTE, <br><br>           Plaintiffs, <br><br>    v. <br><br> HOWARD LUTNICK, *in his official capacity as Secretary of Commerce*, et al., <br><br>           Defendants, <br><br> *and* <br><br> NATIONAL FISHERIES INSTITUTE, INC., et al., <br><br>         Intervenor-Defendants. | Civil Action No. 1:24-cv-00148 |

## REPLY IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiffs seek to enforce the terms of a settlement agreement (the "*Lutnick* Agreement") under which Defendants agreed to implement import bans for foreign commercial fisheries that do not meet U.S. standards. This Court adopted the "non-monetary terms" of the Agreement as "an enforceable [o]rder." Op. & Order, Dkt. No. 39 at 3; *see* Dkt. No. 38 at 13-14. The scattershot assertions from the Defendants Howard Lutnick *et al.* ("Defendants") and Intervenor-Defendants National Fisheries Institute *et al.* ("NFI"), *see* Defs.' Opp'n to Mot. to Enforce, Dkt.

No. 47 ("NMFS Br."); Nat'l Fisheries Inst. Opp'n to Mot. to Enforce, Dkt. No. 48 ("NFI Br.") do not alter the plain terms of the Agreement or this Court's retention of ancillary jurisdiction to enforce those terms. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994).

## ARGUMENT

## I.    THIS COURT HAS ANCILLARY JURISDICTION TO ENFORCE THE *LUTNICK* AGREEMENT

Defendants start with a head-scratching argument: that this Court lacks subject matter jurisdiction to enforce the *Lutnick* Agreement. NMFS Br. at 9-11. But 28 U.S.C. § 1581 grants jurisdiction and waives sovereign immunity for Plaintiffs' underlying claims against the United States, and the terms of the *Lutnick* Agreement were adopted as an enforceable order of this Court. Plaintiffs need not identify an additional waiver of sovereign immunity, because, under settled law, this Court has ancillary jurisdiction to enforce the *Lutnick* Agreement.

Defendants concede that "this Court incorporated the terms" of the *Lutnick* Agreement "into the Stipulated Order at the parties' request." NMFS Br. at 10. Because the Court's dismissal shows an intent to "retain jurisdiction" and "incorporate[s] the settlement agreement," *Kokkonen*, 511 U.S. at 381-82, and Plaintiffs do not seek to "expand" the terms of the Agreement, *contra* NFI Br. at 13, the Court can vindicate its authority without Plaintiffs showing another "independent basis" for federal jurisdiction. *Kokkonen*, 511 U.S. at 382.

Defendants incorrectly argue that, because the United States is a party, this Court must have subject matter jurisdiction over the motion to enforce the *Lutnick*

Agreement as if this were a new, independent action for breach of contract. NMFS Br. at 10-11. In making this assertion, Defendants principally rely on *Franklin-Mason*, in which the plaintiff sought more than $10,000 in damages in a motion to enforce a Title VII employment discrimination settlement. *Franklin-Mason v. Mabus*, 742 F.3d 1051 (D.C. Cir. 2014). There, the court rejected an overbroad reading of *Kokkonen* that would have expanded the district court's jurisdiction in contravention of the Tucker Act, which vests the Court of Federal Claims with exclusive jurisdiction for such money claims. *See Franklin-Mason*, 742 F.3d at 1054-55. By contrast, Plaintiffs do not seek money damages or other relief that a statute assigns to the exclusive jurisdiction of another court. *Franklin-Mason* and the other cases Defendants cite[1] are consistent with *Kokkonen*: where a federal court had subject matter jurisdiction to decide the underlying claim, and where the court explicitly incorporated a settlement agreement into its dismissal order, the court retains jurisdiction to enforce compliance through injunctive relief.

All parties agree this Court had subject matter jurisdiction to hear the underlying claims that resulted in the *Lutnick* Agreement, as Congress waived

---

[1] None of the other cases cited by the Defendants stand for the proposition that the court can enforce a settlement agreement incorporated into the court's order only if there is a separate statutory waiver of sovereign immunity. *See, e.g.*, *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 140 (2d Cir. 1999) (holding there is no "implied waiver" of sovereign immunity; court must have subject matter jurisdiction over underlying claim); *Worley v. Vilsack*, Case No. 01-cv-00082-GKF-SH, 2024 WL 2962903, at *5 (N.D. Okla. Mar. 5, 2024) (holding Title VII waiver of sovereign immunity "does not expressly extend to monetary claims [or claims for specific performance] against the government for breach of a settlement agreement that resolves a Title VII dispute") (citation omitted).

sovereign immunity for the Plaintiffs' central claim in this case (that the Defendants failed to act in complying with the Marine Mammal Protection Act's embargo mandate).[2] *See* Compl., Dkt. No. 1 at 47-49. The Court of International Trade's jurisdictional provision, 28 U.S.C. § 1581(i)(1)(C) and (D), grants this Court exclusive jurisdiction over civil suits against the United States that arise out of U.S. laws providing for "embargoes or other quantitative restrictions on the importation of merchandise," and the administration and enforcement of such embargoes. And as Defendants admit, § 1581 acts as both a grant of jurisdiction *and* a waiver of sovereign immunity for those actions. NMFS Br. at 9-10 (citing *Humane Soc'y of the U.S. v. Clinton*, 236 F.3d 1320, 1333 (Fed. Cir. 2001) ("§ 1581 not only states the jurisdictional grant to the Court of International Trade, but also provides a waiver of sovereign immunity over the specified classes of cases"). The statute does not limit the remedies available under that jurisdiction. *See* 28 U.S.C. § 1585 ("The Court . . . shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States."). The waiver is complete, no

---

[2] Plaintiffs do not raise a "breach of contract claim" in this case as Defendants allege, *see* NMFS Br. at 9, because Plaintiffs' complaint alleged only a statutory violation and sought only declaratory and injunctive relief based on that violation. Compl., Dkt. No. 1 at 47-53. In considering sovereign immunity, courts look to the "complaint . . . to determine" whether an action against the United States "is at its essence a contract claim." *Crowley Gov't Servs. v. GSA*, 38 F.4th 1099, 1108 (D.C. Cir. 2022); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (1982) ("the mere fact that a court may have to rule on a contract issue [during a case] does not, by triggering some mystical metamorphosis, automatically transform an action based on [another claim] into one on [a] contract and deprive the court of jurisdiction it might otherwise have").

other court has exclusive jurisdiction, and this Court has subject matter jurisdiction to address all aspects of the case.

There is good reason for this rule. If plaintiffs had to identify an additional waiver of sovereign immunity to have an enforceable settlement with the United States, that would have deep implications for litigants and the court system. That novel and incorrect reading of the law would undermine parties' ability to enforce many settlement agreements entered into by the U.S. government. Such complications, in turn, could reduce the incentives for parties to settle cases against the government and potentially increase the strain on federal courts.

The basic premise of Defendants' argument—that the Court *lacks authority to enforce its own orders*—cannot stand. *Kokkonen*, 511 U.S. at 380 ("We have recognized inherent authority to . . . prosecute violation of a court's order"); *Young v. United* States, 481 787, 796 (1987) ("[T]here could be no more important duty" than for a court to issue orders that "serve to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience[.]"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose . . . submission to their lawful mandates."). This argument also contradicts what Defendants already told this Court. In February 2025, the parties submitted a joint response to this Court's question about what "the parties envision would be the remedy or remedies sought in a hypothetical motion to enforce the terms of the Stipulated Settlement Agreement." The parties all agreed that, should a

5

disagreement arise regarding Defendants' compliance, "Plaintiffs would then be able to seek appropriate relief from this Court to enforce compliance, for example by requesting that the Court order Defendants to meet their settlement agreement commitments by a date certain." Joint Submission, Dkt. No. 37 at 8. Defendants cannot switch positions before the Court when it suits them.

## II.    THE NFI SETTLEMENT VIOLATES THE *LUTNICK* AGREEMENT

Defendants argue that the NFI Settlement qualifies under Paragraph 3 of the *Lutnick* Agreement as "a court order enjoining the enforcement of a comparability finding" and therefore does not violate their obligations. NMFS Br. at 11. Yet Defendants do not dispute that the only action requested of the NFI Court was to "retain jurisdiction to oversee compliance with the terms of the Parties' attached stipulated order and to resolve any motions to modify such terms." *See* Joint Stipulation of Dismissal & Order, Dkt. No. 41, *Nat'l Fisheries Inst. v. United States*, No. 1:25-cv-00223-JAL (Ct. Int'l Trade Oct. 31, 2025) (requesting that the *NFI* court invoke the procedural mechanism described in *Kokkonen* of "retain[ing] jurisdiction over the settlement contract" by "embody[ing] the settlement contract in its dismissal order"). The mere embodiment of the NFI Settlement in a dismissal order does not convert the settling parties' commitments into a "court order enjoining the enforcement of a comparability finding," as required by Paragraph 3 of the *Lutnick* Agreement.

Defendants' focus on the "function of the NFI Order," NMFS Br. at 18, misses the mark. It is not sufficient, as Defendants argue, that a court's dismissal order is

Case 1:24-cv-00148-GSK    Document 50    Filed 01/20/26    Page 7 of 17

*functionally* equivalent to a preliminary injunction under Rule 65 simply because the parties stipulated not to take specified actions. NMFS agreed in its settlement with NFI not to enforce the comparability findings; this is not a "court order enjoining" NMFS. Defendants do not, and cannot, argue that NMFS is enjoined because *the court* determined NMFS's enforcement was illegal, or that *the court* determined NFI had a high likelihood of proving NMFS's enforcement was illegal. *See* NFI Mot. for Prelim. Inj., Dkt. No. 17, *Nat'l Fisheries Inst. v. United States*, No. 1:25-cv-00223-JAL (Ct. Int'l Trade Oct. 14, 2025).

"A preliminary injunction is an extraordinary remedy never awarded as of right" and requires that a court exercise its "sound discretion" and make findings on each prong of the injunction standard. *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quotation omitted). Defendants acknowledge that no such findings were made, and the only reason the NFI Order entered was that "the Parties mutually agree." NMFS Br. at 14. If a court had entered a preliminary or permanent injunction after making the necessary findings under Rule 65, Plaintiffs would not be seeking enforcement of their settlement. But that is not what happened here.[3]

---

[3] For these reasons, Defendants' reliance on cases "construing orders issued under the process outlined in *Kokkonen*" is misplaced. Both *Nat'l Presto Indus., Inc. v. Dazey Corp.*, 107 F.3d 1576, 1583 (Fed. Cir. 1997) and *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993) concern settlement agreements incorporated by reference and whether the courts had jurisdiction to enforce those agreements. The NFI Court, like this Court, retained jurisdiction to enforce the relevant settlement agreement, but that does not resolve the ultimate issue of whether the NFI Order qualifies under the *Lutnick* Agreement as a court order enjoining the enforcement of a comparability finding.

7

This Court should not allow Defendants to renege on the *Lutnick* Agreement by choosing to enter a conflicting settlement in a different case. Interpreting Paragraph 3 of the *Lutnick* Agreement as creating a loophole through which NMFS can stipulate to being enjoined would defeat the purpose of the Agreement, which requires NMFS to implement the import bans required by the MMPA. *See, e.g., Lutnick* Agreement at 2-3 (recognizing that the parties entered the *Lutnick* Agreement because, among other reasons, "the MMPA requires the Defendants to ban the importation of fish and fish products from foreign commercial fisheries that do not meet U.S. standards"). Paragraph 3 does not create a loophole through which NMFS can avoid complying with the *Lutnick* Agreement via capitulation in other litigation. Defendants cannot agree to enjoin themselves, through settlement, from enforcing the import ban.

Paragraph 3 of the *Lutnick* Agreement must also be read in the context of the MMPA and NMFS's Imports Rule, both of which comport with the Plaintiffs' interpretation of the Agreement. The MMPA requires the Government to ban the importation of fish products from fisheries that incidentally kill marine mammals "in excess of United States standards," with the burden placed on exporting nations to demonstrate conformance. 16 U.S.C. § 1371(a)(2). The Imports Rule clarifies that the fish products to be banned are those "harvested" in a "fishery for which a valid comparability finding is not in effect." 50 C.F.R. § 216.24(h)(1)(i). The Imports Rule further requires that, during any reconsideration of a fishery that has received a negative comparability finding, an import ban shall "remain in effect" until NMFS

is able to make a positive finding; a ban cannot be lifted while NMFS engages in reconsideration. *Id.* § 216.24(h)(9)(ii)(A), (B). The fisheries at issue in the NFI case received a negative comparability finding and so the MMPA and the Imports Rule require the Government to ban the importation of those fish and fish products, unless and until NMFS later issues a positive comparability finding. The stay of import bans in the NFI Agreement and Order in fact violates the MMPA and the Imports Rule. NFI Br. at 22.

Defendant-Intervenors are wrong that enforcement of the *Lutnick* Agreement would force NMFS to "contract away" the agency's discretion in implementing the MMPA. *See* NFI Br. at 18. Rather, the Agreement confirms that NMFS retains its ability to reconsider comparability findings in accordance with the statute and its implementing regulations. *See Lutnick* Agreement ¶ 3.

The Defendants' implicit acknowledgment that the *NFI* Settlement violates the *Lutnick* Agreement can be seen in the Defendants' treatment of the second provision of Paragraph 3, which states, "for the avoidance of doubt," that NMFS may reconsider a comparability finding in compliance with its regulations. The *NFI* Settlement references that language by suggesting that NMFS is "reconsider[ing]" the comparability findings and "following the procedures in 50 C.F.R. § 216.24(h)(8)(vii)." But the *NFI* Settlement's procedures do not align with the regulation's reconsideration provisions. After Plaintiffs pointed this out in their opening brief, Defendants stated in their Response that they do not assert that the NFI Settlement represents a "reconsideration of a comparability determination."

NMFS Br. at 12 n.2. It appears that Defendants used the reconsideration language in the *NFI* Settlement to avoid their obligations under the *Lutnick* Agreement, and once their erroneous reading of the regulations was pointed out, Defendants disclaimed the language in the *NFI* Settlement altogether.

Defendants continue to offer inapplicable case law when they argue that the unmistakability doctrine prevents the Plaintiffs' interpretation of the *Lutnick* Agreement. The *Lutnick* Agreement's limitations on the Government are unambiguous and unmistakable: NMFS must comply with 16 U.S.C. § 1371(a)(1) and 50 C.F.R. § 216.24(h)(9), which require an import ban of fish products into the United States from foreign fisheries for which NMFS has denied a comparability finding. Defendants contend that the Agreement did not surrender sovereign power of the Government in unambiguous terms, and thus cannot bind the Government's discretion to resolve unknown future claims affecting permissible imports into the United States. But the *Lutnick* Agreement does not "incidentally disable" NMFS from undertaking any "sovereign acts, needful for public good." *See United States v. Winstar Corp.*, 518 U.S. 839, 921 (1996). Without such a showing, the unmistakability doctrine does not apply. *See id*. at 878 n.22 (sovereign power is that which "could otherwise affect the Government's obligation under the contract").

### III.    THE GOVERNMENT CANNOT RETROACTIVELY DISCLAIM THE VALIDITY AND SCOPE OF THE *LUTNICK* AGREEMENT

Defendants end their Response by arguing that the *Lutnick* Agreement could not "restrict[] the Government's discretion as to whether and how to litigate and settle in future cases." NMFS Br. at 21 (citing to 28 C.F.R. § 0.160(d)). However, the settlement constraints outlined in this regulatory provision do not apply to the *Lutnick* Agreement. Even if they did, the *Lutnick* Agreement, on its face, contains the necessary approvals under 28 C.F.R. § 0.160(d)(1). Defendants' interpretation of these regulations would upend the whole concept of entering settlements with the Government.

28 C.F.R. § 0.160 – titled "Offers that may be accepted by Assistant Attorneys General" – contains a caveat in section (d)(1) that any "proposed settlement, regardless of amount or circumstances, must be referred to the Deputy Attorney General or the Associate Attorney General" when, "for any reason, the compromise of a particular claim would, as a practical matter, control or adversely influence the disposition of other claims *and* the compromise of all the claims together would exceed the authority delegated by paragraph (a) of this section." (emphasis added). In turn, paragraph (a) of that section permits Assistant Attorneys General to accept offers in compromise of certain claims involving monetary demands and to accept "offers in compromise in all nonmonetary cases." *See* 28 C.F.R. § 0.160(a)(1)-(3).

Defendants provide no legal support for their claim that 28 C.F.R. § 0.160(d)(1) requires special approval of all agreements that would constrain settlements of "future litigation that had yet to accrue." NMFS Br. at 16. Under this

interpretation, *all* settlements entered into by the Government would fall under 28 C.F.R. § 0.160(d)(1), because there is always a possibility of "future litigation" over disputed matters. Nor do Defendants acknowledge that the restriction applies only to settling one of several *financial* claims, in order to ensure that an individual settlement does not exceed the total authority when aggregated. The Department of Justice Manual (Title 4: Civil, 4-3.000 - Compromising And Closing) sets this out clearly in its summary of the applicable requirements:

> The authority described in paragraph 2 shall not be exercised (and the matter submitted to the Assistant Attorney General, Civil Division), when the proposed action, as a practical matter, will control or adversely influence the disposition of other cases totaling more than the respective amounts designated above, when a novel question of law or policy is presented, when the United States Attorney involved requests that the matter be submitted to the Assistant Attorney General, when the case is on appeal (except as determined by the Director of the Appellate Staff) or when the agency or agencies involved are opposed to the proposed action.[4]

Litigation under the MMPA or the Administrative Procedure Act would not exceed the settlement authority provided under 28 C.F.R. § 0.160(a), because private monetary damages are not cognizable under those statutes. To that point, the NFI plaintiffs did not seek monetary damages, none were agreed to in the NFI Settlement, and the same was true in this case. Whether as a hypothetical matter or grounded in the NFI action itself, the Defendants cannot hide behind 28 C.F.R. § 0.160(d)(1) and claim that this provision negates the *Lutnick* Agreement.

---

[4] https://www.justice.gov/jm/jm-4-3000-compromising-and-closing#4-3.110. None of the other settlement constraints outlined above are applicable here.

Furthermore, even if this provision did apply, 28 C.F.R. § 0.160 does not require approval or a signature by the Deputy or Associate Attorney General. It only requires that certain proposed settlements be "referred" to them for consideration. The *Lutnick* Agreement bears the signature of the person serving in the role of Assistant Attorney General of the Civil Division[5] (Brian Boynton), who reported to the Associate Attorney General, and the signature of the Deputy Director, Claudia Burke (described under her signature on the settlement agreement as "authorized representative of the Attorney General"). These signatures and representations imply at least the knowledge and tacit approval of the Attorney General and Associate Attorney General, if not their formal written approval (which is *not* required by the regulations). Defendants do not argue that the Associate Attorney General and Attorney General were not in fact apprised of the NFI settlement.

To the extent that the Defendants now claim that they can avoid their obligations because, unbeknownst to Plaintiffs, they did not appropriately follow their own internal approval procedures, such a position would undermine all future settlements with the federal government. Attorneys for the United States would be free to negotiate settlements with private parties, choose not to seek approval of proposals that require higher level review, and later seek to invalidate the settlement. *See Reed By & Through Reed v. United States,* 717 F. Supp. 1511, 1518

---

[5] Plaintiffs' understanding is that there was no confirmed AAG at the time, so the Principal Deputy Assistant Attorney General for the Civil Division was fulfilling that function.

(S.D. Fla. 1988), *aff'd,* 891 F.2d 878 (11th Cir. 1990) ("The government, more than any other party, must be held to honor its commitments. When the government fails, United States Courts must be prepared to enforce these commitments."). If the other party already complied with its obligations under the agreement, as is the case here, it may be too late to provide meaningful redress to the innocent (and compliant) private party.

Even assuming that 28 C.F.R. § 0.160(d) applied to the *Lutnick* Agreement, and that the regulations required a signature by the Deputy or Associate Attorney General, the *Lutnick* Agreement nonetheless complies. Deputy Director Burke executed the agreement as an "authorized representative of the Attorney General." *Lutnick* Agreement at 8. *See Schwartzman, Inc. v. ACF Indus., Inc.,* 167 F.R.D. 694, 698 (D.N.M. 1996) (explaining that, while the Department of Justice has promulgated an "exquisitely complicated network of regulations delegating the Attorney General's settlement authority," Congress has stated "quite simply that '[t]he Attorney General <u>or his designee</u> may arbitrate, compromise, or settle any claim' within the original jurisdiction of the federal courts." (citing 28 U.S.C. § 2677) (emphasis added)).

## CONCLUSION

Defendants admit, in their Opposition to Plaintiffs' Motion to Enforce the Settlement Agreement, that "this Court incorporated the terms of the Settlement Agreement into the Stipulated Order at the parties' request." NMFS Br., Dkt. No. 47 at 15. They therefore admit that they are bound by the terms of the *Lutnick* Agreement in an enforceable court order. The Court should order them to comply.

Dated: January 20, 2026                    Respectfully submitted,


/s/ Christina S. Marshall
Christina S. Marshall
cmarshall@andersonkreiger.com
Mina S. Makarious
mina@andersonkreiger.com
Sean M. Grammel
sgrammel@andersonkreiger.com
Marissa C. Grenon Gutierrez
mgrenongutierrez@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660

*Counsel for Natural Resources Defense
Council, Center for Biological Diversity and
Animal Welfare Institute*

/s/ Sarah Uhlemann
Sarah Uhlemann
Center for Biological Diversity
120 State Avenue NE #268
Olympia, WA 98501
(206) 327-2344
suhlemann@biologicaldiversity.org

*Counsel for Center for Biological Diversity
and Animal Welfare Institute*

/s/ Stephen Zak Smith
Stephen Zak Smith
Natural Resources Defense Council
544 East Main Street Unit B
Bozeman, MT 59715
(406) 556-9300
zsmith@nrdc.org

*Counsel for Natural Resources Defense
Council*

**Certificate of Service**

I hereby certify under penalty of perjury that on this 20th day of January 2026, a copy of the foregoing document was filed electronically. Service upon Defendants' counsel was thus effected by operation of the Court's CM/ECF system.

/s/ Christina S. Marshall
Christina S. Marshall

**Certificate of Service**

I, Christina S. Marshall, hereby certify that this brief complies with the word count limitation as provided for in the Court's January 8th, 2026, Order because it contains 3,639 words, excluding the parts of the brief exempted by Standard Chambers Procedures 2(B)(1)(c).

/s/ Christina S. Marshall
Christina S. Marshall