United States Court of International Trade  
One Federal Plaza  
New York, New York 10278

CHAMBERS OF  
Gary S. Katzmann  
JUDGE

January 30, 2026

Christina S. Marshall  
Anderson & Kreiger LLP  
50 Milk Street, 21st Floor  
Boston, MA 02109

Ashley Akers  
Holland & Knight, LLP  
1650 Tysons Boulevard, Ste. 1700  
Tysons, VA 22102

Agatha Koprowski  
U.S. Department of Justice  
Commercial Litigation Branch - Civil Div.  
P.O. Box 480  
Ben Franklin Station  
Washington, D.C. 20044

Re:   Questions in <u>Natural Resources Defense Council, Inc. v. Howard Lutnick</u>  
　　　Court No.: 24-00148

Dear Counselors:

　　　The court has reviewed Plaintiffs Natural Resource Defense Council, Inc., the Center for Biological Diversity, and Animal Welfare Institute's Mot. to Enforce Settlement Agreement, Dec. 12, 2025, ECF No. 40 ("Pls.' Mot."), Defendants' Resp. in Opp'n to Pls.' Mot. to Enforce Settlement Agreement, Jan 2, 2026, ECF No. 47 ("Gov't Br."), Defendant-Intervenors National Fisheries Institute, et al.'s Resp. in Opp'n to Pls.' Mot. to Enforce Settlement Agreement, Jan. 2, 2026, ECF No. 48 ("Def.-Inters.' Br."), and Plaintiffs' Reply in Supp. of Mot. to Enforce Settlement Agreement, Jan. 20, 2026, ECF No. 50 ("Pls.' Reply").  The court would like the parties to submit written answers to the questions set forth below.  These questions should not be construed as suggesting that the court has made any conclusive determinations.  The parties will file submissions of no more than 3,000 words no later than February 13, 2026.

　　　The court may decide to hold oral argument upon review of these submissions. Accordingly, the court would like each party to indicate in an addendum to its submission:

　　　(a)   Whether counsel would be available to appear for oral argument in New York City on any of February 25, March 3, or March 4.

　　　(b)   Whether oral argument would aid the court's resolution of this case.

**I.     Questions for Plaintiffs Natural Resource Defense Council, Inc., Center for Biological Diversity, and Animal Welfare Institute (collectively, "Plaintiffs")**

1. What is the court's basis of jurisdiction over your motion to enforce the settlement agreement here?  See Stipulation of Dismissal at Attach. A, Jan. 16, 2025, ECF No. 29 ("NRDC Agreement").

2. Though "the existence of consent is a prerequisite for jurisdiction," United States v. Mitchell, 463 U.S. 206, 212 (1983), "the issues of subject-matter jurisdiction and sovereign immunity are . . . 'wholly distinct.' " Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urb. Dev., 175 F.3d 132, 139 (2d Cir. 1999) (quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 786 n.4 (1991)).  Where is the Congressional waiver of sovereign immunity for the purpose of your motion to enforce the settlement agreement?

3. You cite to Crowley Gov't Servs., Inc. v. Gen. Servs. Admin. to argue that "[i]n considering sovereign immunity, courts look to the 'complaint . . . to determine' whether an action against the United States 'is at its essence a contract claim.' " Pls.' Reply at 4 n.2 (quoting Crowley Gov't Servs., Inc. v. Gen. Servs. Admin., 38 F.4th 1099, 1108 (D.C. Cir. 2022)).  In that case, the D.C. Circuit considered whether an action "is at its essence a contract claim" to determine whether the claim fell "within the exclusive jurisdiction of the Claims Court pursuant to the Tucker Act."  Crowley, 38 F.4th at 1106 (emphasis omitted) (quoting Megapulse, Inc. v. Lewis, 672 F.2d 959, 967 (D.C. Cir. 1982)).  Why should we use the same test to determine whether the Government has waived sovereign immunity in this case?

4. You argue that, for the purposes of jurisdiction and waiver of sovereign immunity, "Plaintiffs do not raise a 'breach of contract claim.' " Pls.' Reply at 4 n.2.  How does this argument reconcile with your request "that this [c]ourt find Defendants . . . in violation of the settlement agreement executed by the Parties on January 15, 2025"?  Pls.' Mot. at 2.

5. Defendant-Intervenors argue that the NRDC Agreement's "terms obligated [National Marine Fisheries Service ("NMFS")] to undertake the prescribed regulatory process—collecting information, applying the statutory and regulatory criteria, and issuing decisions consistent with 50 C.F.R. Part 216—but did not require NMFS to reach any predetermined substantive outcome."  Def.-Inters.' Br. at 8.  Did the NRDC Agreement require anything more than compliance with the prescribed regulatory process?

    a. Did NMFS fail to meet the requirements of that regulatory process?

6. You argue that "[t]he stay of import bans in the [NFI] Agreement and Order . . . violates the MMPA and the Imports Rule" because "[t]he Imports Rule . . . requires that, during any reconsideration of a fishery that has received a negative comparability finding, an import ban shall 'remain in effect' until NMFS

   is able to make a positive finding; a ban cannot be lifted while NMFS engages in reconsideration." Pls.' Reply at 8–9 (quoting 50 C.F.R. § 216.24(h)(9)(ii)(A)); see also Joint Stipulation of Dismissal at App'x A, Nat. Fisheries Inst., Inc. v. United States, Court No. 25-00223 (Ct. Int'l Trade filed Oct. 9, 2025), Oct. 30, 2025, ECF No. 37 ("NFI Agreement"); Order of Dismissal, Nat. Fisheries Inst., Court No. 25-00223, Oct. 31, 2025, ECF No. 41 ("NFI Order"). How does a stay of the January 1, 2026 deadline to implement an import ban—such that no import ban was put into place—violate the requirement that an existing ban cannot be lifted?

7. Would an order compelling the Government's compliance with Paragraph 1(d) of the NRDC Agreement bind NMFS to a substantive outcome that Congress committed to the agency's discretion? See Def.-Inters.' Br. at 8–9; Gov't Br. at 15.

8. You ask that "the [c]ourt compel Defendants' compliance with Paragraph 1(d) of the [NRDC Agreement] by requiring [NMFS] . . . to prohibit the importation of fish and fish products into the United States from all harvesting nations or fisheries that do not meet [MMPA] standards." Pls.' Mot. at 2 (emphasis in original). Would the Government's compliance with a hypothetical court order enforcing compliance with the NRDC Agreement result in a breach of the NFI Agreement? Can the court order compliance with one agreement when that compliance would result in the breach of another agreement?

9. What authorities best support your overall argument?

10. Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?

II. **Questions for Defendants (designated United States Departments and constituent agency and respective officials) ("the Government")**

1. Does this court have ancillary jurisdiction to enforce the NRDC Agreement based on the court's jurisdiction over Plaintiffs' underlying claims under 28 U.S.C. § 1581(i) and the court's retention of jurisdiction under Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994)? See Nat. Res. Def. Council, Inc. v. Lutnick, 49 CIT __, __, 774 F. Supp. 3d 1348, 1356–57 (2025).

2. You argue that "there is no Congressional waiver of sovereign immunity that would permit the [c]ourt to order specific performance or a declaratory judgment against the Government in a contract action." Gov't Br. at 6. Plaintiffs counter that they "do not raise a 'breach of contract claim.'" Pls.' Reply at 4 n.2. Plaintiffs suggest that "[i]n considering sovereign immunity, courts look to the 'complaint . . . to determine' whether an action against the United States 'is at its essence a contract claim.'" Id. (quoting Crowley, 38 F.4th at 1108). Why do 28 U.S.C. § 1581(i)(1)(C) and (D) not provide a waiver of sovereign immunity here?

    a. You argue that "[P]laintiffs' Motion does not press a claim 'aris[ing] out of any law of the United States.'" Gov't Resp. at 10. Under the NRDC Agreement, the parties agreed that the Government would comply with the MMPA's requirement that the Government ban the importation of fish and fish products from foreign commercial fisheries that do not meet U.S. standards. See NRDC Agreement ¶ 1. Does a claim seeking enforcement of an agreement to comply with the MMPA "arise[] out of" the MMPA? 28 U.S.C. § 1581(i)(1).

3. The Parties stipulation of dismissal indicates that "the Parties hereby stipulate and respectfully request that the [c]ourt retain jurisdiction to oversee compliance with the non-monetary terms of the Parties' Stipulated Settlement Agreement and to resolve any motions to modify such terms." Stipulation of Dismissal at 2, Jan. 16, 2025, ECF No. 29. The Parties further explained that "[s]hould a disagreement arise regarding Defendants' compliance with any of these deadlines, and the Parties are unable to resolve an disputes via a meet and confer process, Plaintiffs would then be able to seek appropriate relief from this [c]ourt to enforce compliance, for example by requesting that the [c]ourt order Defendants to meet their settlement agreement commitments by a date certain." Joint Submission at 8, Feb. 7, 2025, ECF No. 37 (citing TNT Mktg., Inc. v. Agresti, 796 F.2d 276, 278 (9th Cir. 1986) (noting that district court's enforcement power includes awarding non-breaching party specific performance of settlement obligations)). Is your position now consistent with this prior explanation?

4. You argue that "the [NRDC] Agreement memorialized what is common sense: if another judge in this [c]ourt orders relief barring enforcement of one or more of the Government's previously issued Comparability Findings, the Government may comply with such an order." Gov't Resp. at 6. What "relief" did the court provide in the NFI Order that was not already provided by the terms of the NFI Agreement to which the parties had already agreed?

    a. You argue that the NFI Agreement is permitted under the NRDC Agreement because "the function of the [NFI] Order is to 'enjoin[] the enforcement of a comparability finding.'" Gov't Br. at 13 (quoting NRDC Agreement ¶ 3). The NFI Order issued by the court is an exact replica of the NFI Agreement contained in the Parties' Joint Stipulation of Dismissal, Nat. Fisheries Inst., Court No. 25-00223, Oct. 30, 2025, ECF No. 37. Compare NFI Order with NFI Agreement. The NFI Agreement specifically notes that the Parties "stipulate that the above-captioned matter be dismissed without prejudice" "[p]ursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)." NFI Agreement at 1. That rule states that an action can be voluntarily dismissed "without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A); see also USCIT R. 41(a)(1)(A). Given that a stipulation signed by all parties was filed on October 30, 2025, did the court's subsequent filing replicating the joint stipulation on October 31, 2025 have any effect at all? Which document do you argue had the effect of "enjoining the enforcement of a comparability finding"? NMFS Agreement ¶ 3.

5.  The relevant regulations state that "[w]ith respect to a harvesting nation for which the Assistant Administrator has denied . . . a comparability finding for a fishery, the Assistant Administrator . . . shall identify and prohibit the importation of fish and fish products into the United States from the harvesting nation caught or harvested in that fishery." 50 C.F.R. § 216.24(h)(9)(i). The regulations further state that "[a]ny import prohibition imposed . . . with respect to a fishery shall remain in effect until the Assistant Administrator issues a comparability finding for the fishery." Id. § 216.24(h)(9)(ii)(A). Please respond to Plaintiffs' argument that "[t]he stay of import bans in the NFI Agreement and Order . . . violates the MMPA and the Imports Rule." Pls.' Reply at 9.

6.  Defendant-Intervenors argue that the NRDC Agreement's "terms obligated NMFS to undertake the prescribed regulatory process—collecting information, applying the statutory and regulatory criteria, and issuing decisions consistent with 50 C.F.R. Part 216—but did not require NMFS to reach any predetermined substantive outcome." Def.-Inters.' Br. at 8. Is part of that required regulatory process the implementation of import bans for all countries for which comparability findings were denied by January 1, 2026? Did NMFS comply with this requirement?

7.  Plaintiffs ask that "the [c]ourt compel Defendants' compliance with Paragraph 1(d) of the [NRDC Agreement] by requiring the [NMFS] . . . to prohibit the importation of fish and fish products into the United States from all harvesting nations or fisheries that do not meet [MMPA] standards." Pls.' Mot. at 2 (emphasis in original). Would the Government's compliance with a hypothetical court order enforcing compliance with the NRDC Agreement result in a breach of the NFI Agreement? Can the court order compliance with one agreement when that compliance would result in breach of another agreement?

8.  What authorities best support your overall argument?

9.  Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?

III.  **Questions for Defendant-Intervenor National Fisheries Institute, Inc. ("NFI")**

1.  You argue that "[w]hile agencies may agree to procedural steps, timeliness, or reconsideration, they many not contract away their obligation to exercise reasoned judgment in accordance with statute." Def.-Inters.' Br. at 9. NMFS agreed to implement the import ban requirements of the MMPA by a January 1, 2026 deadline. See NRDC Agreement ¶ 1(d). How does an agreement to this deadline "contract away" the agency's "reasoned judgment in accordance with" the MMPA or "lock in regulatory results?" Def.-Inters.' Br. at 9.

2.  You argue that both the NRDC and the NFI Agreements "require NMFS to comply fully with the MMPA and its implementing regulations when issuing [comparability findings] and determining whether import restrictions are

warranted." Def.-Inters.' Br. at 11. Where does the MMPA allow for postponement of an import ban for a fishery for which NMFS denied a comparability finding while NMFS reconsiders that determination?

    a. The relevant regulations state that "[w]ith respect to a harvesting nation for which the Assistant Administrator has denied . . . a comparability finding for a fishery, the Assistant Administrator . . . shall identify and prohibit the importation of fish and fish products into the United States from the harvesting nation caught or harvested in that fishery." 50 C.F.R. § 216.24(h)(9)(i). The regulation further states that "[a]ny import prohibition imposed . . . with respect to a fishery shall remain in effect until the Assistant Administrator issues a comparability finding for the fishery." Id. § 216.24(h)(9)(ii)(A). Please respond to Plaintiff's argument that "[t]he stay of import bans in the NFI Agreement and Order . . . violates the MMPA and the Imports Rule." Pls.' Reply at 9.

    b. How would the imposition of an import ban that remains in effect while NMFS reconsiders it's denial of comparability findings for the relevant fisheries "treat[] the [comparability finding] determinations as insulated from review?" Def.-Inters.' Br. at 14.

3. What authorities best support your overall argument?

4. Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?

                                                                           Sincerely,

                                                                           */s/ Gary S. Katzmann*
                                                                        Gary S. Katzmann
                                                                          Judge