IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |  |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNSEL, et al., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | | |
| v. | | Court No. 1:24-cv-00148 |
| HOWARD LUTNICK, et al., | | |
| Defendants, | | |
| NATIONAL FISHERIES INSTITUTE, INC., et al. | | |
| Defendant-Intervenors | | |

### DEFENDANTS' RESPONSES TO LETTER ORDER DATED JANUARY 30, 2026

Defendants respectfully file the following responses to the questions posed in the Court's letter order dated January 30, 2026. Counsel is available for argument during any of the dates proposed by the Court. The Government believes oral argument would aid the Court's resolution of this case.

**1. Does this court have ancillary jurisdiction to enforce the <u>NRDC</u> Agreement based on the court's jurisdiction over Plaintiffs' underlying claims under 28 U.S.C. § 1581(i) and the court's retention of jurisdiction under *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)? *See Nat. Res. Def. Council, Inc. v. Lutnick*, 49 CIT \_\_, \_\_, 774 F. Supp. 3d 1348, 1356–57 (2025).**

Yes. But here, where a party seeks contractual enforcement against the Government, ancillary jurisdiction is necessary but not sufficient to provide the relief plaintiffs seek. That is because it does not amount to a Congressional waiver of sovereign immunity for any particular remedy or excuse the absence of such a waiver. *See, e.g., Pres. Gardens v. United States*, 175

F.3d 132, 140 (2d Cir. 1999) ("Whether ancillary jurisdiction exists… has no impact whatsoever on the issue of sovereign immunity or its waiver.").

**2. You argue that "there is no Congressional waiver of sovereign immunity that would permit the [c]ourt to order specific performance or a declaratory judgment against the Government in a contract action." Gov't Br. at 6. Plaintiffs counter that they "do not raise a 'breach of contract claim.' " Pls.' Reply at 4 n.2. Plaintiffs suggest that "[i]n considering sovereign immunity, courts look to the 'complaint . . . to determine' whether an action against the United States 'is at its essence a contract claim.'" *Id.* (quoting *Crowley*, 38 F.4th at 1108). Why do 28 U.S.C. § 1581(i)(1)(C) and (D) not provide a waiver of sovereign immunity here?**

Section 1581(i)(1)(C) and (D) do not provide a waiver of sovereign immunity here because plaintiffs openly "seek to enforce the terms of a settlement agreement," Pls.' Reply at 1, and Section 1581(i) (C)–(D) does not waive sovereign immunity for enforcement of settlement agreements, nor does its waiver of sovereign immunity for actions under the Administrative Procedure Act (APA) extend to enforcement of settlement agreements.

Section 1581(i)(1)(C)–(D) waives sovereign immunity for claims arising out of certain federal laws, like the MMPA, that provide for embargoes or other quantitative restrictions on imports, or the administration and enforcement thereof. Defs' Response at 9-10. This waiver is specific both to substance and to process, including the form of relief. Just as the Tucker Act waives sovereign immunity for contract claims, but only to the extent that a party seeks monetary damages, § 1581(i) waives sovereign immunity to enforce the laws described therein, but only to the extent provided by the APA, 5 U.S.C. §§ 701–06. That waiver does not cover the plaintiffs' motion, because the motion seeks to enforce a contractual agreement, and not a legal obligation external to the contract. A waiver of sovereign immunity from the underlying action does not automatically extend to permit a remedy against the government based on a settlement agreement resolving that action. That is precisely the argument persuasively rejected in *Franklin-*

2

*Mason v. Mabus*, 742 F.3d 1051, 1055-56 (D.C. Cir. 2014), and *Presidential Gardens v. United States*, 175 F.3d 132, 140 (2d Cir. 1999).

Nor does the language in (i)(1)(D) authorizing jurisdiction in this court for suits "aris[ing] out of any law of the United States providing for…administration and enforcement with respect to" the "embargoes or other quantitative restrictions" referenced in (i)(1)(C) waive sovereign immunity over this motion to enforce. As the Federal Circuit has made clear, Section 1581(i)'s waiver of sovereign immunity in currently-enumerated (i)(1)(D) "as it relates to [currently-enumerated (i)(1)(C)] provides the Court of International Trade with jurisdiction over cases that arise out of any law providing for the administration and enforcement of an embargo." *Sakar Int'l, Inc. v. United States*, 516 F.3d 1340, 1346 (Fed. Cir. 2008). Because plaintiffs are seeking to enforce a contract, and not a law providing for the administration or enforcement of an embargo or quantitative restriction, (i)(1)(D) does not apply. *See also S. Cross Seafoods, LLC v. United States*, 668 F. Supp. 3d 1324, 1347–48 (Ct. Int'l Trade 2023) (explaining that because "Plaintiff has failed to establish jurisdiction under 28 U.S.C. § 1581(i)(1)(C) . . . . the Court does not have jurisdiction under § 1581(i)(1)(D) over the 'administration and enforcement' of any such embargo or quantitative restriction.").

*Crowley* is instructive as to why plaintiffs' current claim—the right to enforce the NRDC Agreement—is not covered by the scope of the waiver at § 1581(i). 38 F.4th 1099 (D.C. Cir. 2022). In *Crowley*, the plaintiff, Crowley Government Services, Inc. (Crowley) sued the General Services Administration (GSA) to halt its alleged practice of interfering with certain payments under the terms of a contract with the United States Transportation Command (TRANSCOM). 38 F.4th at 1102. Crowley brought its claim under the APA, arguing that the alleged interference violated the Contract Disputes Act and the Transportation Act. *Id.* To determine whether

Crowley's claim was essentially contractual in nature (and thus within the exclusive jurisdiction of the United States Court of Federal Claims), the D.C. Circuit Court of Appeals considered both the *source* of the claim and the *relief* sought. It concluded that the source of Crowley's claim was not contractual because the source of Crowley's asserted right was the Contract Disputes Act and the Transportation Act, and not its contract with TRANSCOM. *Id.* at 1108. The court next determined that the relief sought was not contractual because "Crowley seeks neither the 'prototypical contract remedy' of damages nor 'the classic contractual remedy of specific performance[.]'" *Id.* at 1110 (internal citations omitted). Instead, Crowley sought declaratory and injunctive relief under the APA. *Id.* at 1110, 1113. Accordingly, the court held that the claims fell within the scope of the APA's waiver of sovereign immunity. *Id.* at 1113. In contrast, the source of plaintiffs' asserted claim—the legal right they assert—is the NRDC Agreement, a contract. And the relief they seek, specific performance, is contractual in nature. *See* Proposed Order ¶ 3-4, ECF No. 40-1 (stating that the NFI Agreement violates the NRDC Agreement and ordering compliance with the NRDC Agreement).

Plaintiffs state in passing that the actions undertaken pursuant to the NFI Agreement conflict with the Government's regulatory and statutory obligations. Motion to Enforce at 7. Plaintiffs are free to bring a claim arising under the MMPA pursuant to Section 1581(i), which would be reviewed by the Court pursuant to the procedures outlined in the APA (and the Government expressly reserves the right to raise any or all defenses were plaintiffs to bring such a claim). *See, e.g.*, *Hill v. United States Dep't of Interior*, 151 F.4th 420, 428 (D.C. Cir. 2025) (concluding that challenged portion of a government settlement agreement "is a final agency action amenable to judicial review under the APA"). But plaintiffs did not bring such a suit, which is reinforced by their failure to articulate why they would suffer any injury from continued

importation of the products harvested by the particular fisheries affected by the settlement of the NFI litigation. *See, e.g.*, *Bond v. United States*, 564 U.S. 211, 225 (2011) ("Individuals have 'no standing to complain simply that their Government is violating the law.'") (quoting *Allen v. Wright,* 468 U.S. 737, 755 (1984)). Instead, their chosen vehicle, a motion to enforce the NRDC Agreement, is a contract claim seeking specific performance, and there has been no waiver of sovereign immunity for this claim.

> **a. You argue that "[P]laintiffs' Motion does not press a claim 'aris[ing] out of any law of the United States.' " Gov't Resp. at 10. Under the NRDC Agreement, the parties agreed that the Government would comply with the MMPA's requirement that the Government ban the importation of fish and fish products from foreign commercial fisheries that do not meet U.S. standards. *See* NRDC Agreement ¶ 1. Does a claim seeking enforcement of an agreement to comply with the MMPA "arise[] out of" the MMPA? 28 U.S.C. § 1581(i)(1).**

No, a claim seeking enforcement of an agreement to comply with the MMPA does not "arise[] out of" the MMPA, for the reasons set forth in the prior response.[1] Such a claim is still a contract claim seeking specific performance and therefore there has been no applicable waiver of sovereign immunity.

> **3. The Parties stipulation of dismissal indicates that "the Parties hereby stipulate and respectfully request that the [c]ourt retain jurisdiction to oversee compliance with the non-monetary terms of the Parties' Stipulated Settlement Agreement and to resolve any motions to modify such terms." Stipulation of Dismissal at 2, Jan. 16, 2025, ECF No. 29. The Parties further explained that "[s]hould a disagreement arise regarding Defendants' compliance with any of these deadlines, and the Parties are unable to resolve an disputes via a meet and confer process, Plaintiffs would then be able to seek appropriate relief from this [c]ourt to enforce compliance, for example by requesting that the [c]ourt order Defendants to meet their settlement agreement commitments by a date certain." Joint Submission at 8, Feb. 7, 2025, ECF No. 37 (citing *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) (noting that district court's enforcement power includes awarding non-**

---

[1] We respectfully disagree in part with the premise of the Court's question. In ¶ 1 of the NRDC Agreement, the Government agreed to take the specific actions identified in each of the sub-paragraphs. To the extent that the MMPA allegedly requires other actions not explicitly enumerated, such obligations are not incorporated into the contract.

5

**breaching party specific performance of settlement obligations)). Is your position now consistent with this prior explanation?**

Yes, despite the superficial tension between our prior explanation and our current position, the Government believes they are not inconsistent. The Government attempted to anticipate any contingencies and possible defenses to a potential motion for enforcement at the time the Joint Submission was filed. However, the Government did not anticipate all defenses at that time and subsequently identified sovereign immunity as a viable defense. The foreseeable possibility of a distinct, unanticipated defense is why the Government expressly reserved its right to raise any and all defenses immediately following the language quoted by the Court. And in any event, even putting aside the sovereign immunity bar, the plain terms of the agreement did not include the right plaintiffs now assert—it included only a right to process.

**4. You argue that "the [NRDC] Agreement memorialized what is common sense: if another judge in this [c]ourt orders relief barring enforcement of one or more of the Government's previously issued Comparability Findings, the Government may comply with such an order." Gov't Resp. at 6. What "relief" did the court provide in the NFI Order that was not already provided by the terms of the NFI Agreement to which the parties had already agreed?**

The relief in the NFI Order is substantively no broader or narrower than what the parties had agreed to in the NFI Agreement, but the adoption in a judicial order of the terms of a settlement agreement can carry distinct consequences for the parties as compared to privately entering into a settlement agreement without adoption via court order.[2] *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). Here, the adoption in the NFI Order of the terms of the NFI Agreement did carry distinct consequences, because the order on its face is a

---

[2] Indeed, the Government sometimes requires a judicial order, including as part of a negotiated settlement, in order to have authority to take certain actions. For example, as noted in the Joint Submission at 2, the Court's order in this action was required to release agency funds to pay the fees negotiated under the NRDC Agreement. In addition, the Government routinely settles litigation, including by requesting a court-ordered remand or other judicial relief following a determination that an agency action did not meet statutory or regulatory requirements.

"court order enjoining the enforcement of a comparability finding," and thus the Government is permitted to comply with it while also complying with the NRDC Agreement.

Furthermore, a conclusion that an order's enforceability depends on whether it resulted from the culmination of contested litigation or a negotiated resolution would imperil the Government's ability to settle even cases that are indefensible on the merits, and litigating such cases to completion would in turn risk imposition of money judgments pursuant to the Equal Access to Justice Act as litigation lacking substantial justification.

> **a. You argue that the NFI Agreement is permitted under the NRDC Agreement because "the function of the [NFI] Order is to 'enjoin[] the enforcement of a comparability finding.'" Gov't Br. at 13 (quoting NRDC Agreement ¶ 3). The NFI Order issued by the court is an exact replica of the NFI Agreement contained in the Parties' Joint Stipulation of Dismissal, Nat. Fisheries Inst., Court No. 25-00223, Oct. 30, 2025, ECF No. 37. Compare NFI Order with NFI Agreement. The NFI Agreement specifically notes that the Parties "stipulate that the above-captioned matter be dismissed without prejudice" "[p]ursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)." NFI Agreement at 1. That rule states that an action can be voluntarily dismissed "without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A); see also USCIT R. 41(a)(1)(A). Given that a stipulation signed by all parties was filed on October 30, 2025, did the court's subsequent filing replicating the joint stipulation on October 31, 2025 have any effect at all? Which document do you argue had the effect of "enjoining the enforcement of a comparability finding"? NMFS Agreement ¶ 3.**

The NFI Order had the effect of enjoining the enforcement of a comparability finding. The Government could not be "enjoined" solely by an agreement between the parties to the NFI litigation. Gov't Br. at 13 (referring to the definitions of "enjoin" and "injunction"). The Court's subsequent filing replicating the joint stipulation thus had the effect of converting the settlement agreement into a *judicial order*.

The judge in the NFI litigation decided to enter the NFI Order, and he did so against the backdrop of a motion to intervene filed by NRDC nine days earlier, which expressly raised the possibility that the Government "may not vigorously defend the comparability findings," Motion

7

to Intervene, *National Fisheries Inst. v. United States*, No. 1:25-cv-223 (Ct. Int'l Trade Oct. 22, 2025), ECF No. 25 at 24, and an opposition filed by the Government arguing the court could, consistent with the NRDC Agreement, "order relief enjoining the enforcement of one or more of the Government's previously-issued comparability findings." Defendants' Opposition to Motion to Intervene, *National Fisheries Inst. v. United States*, No. 1:25-cv-223 (Ct. Int'l Trade Oct. 29, 2025), ECF No. 32, at 8 The NFI court chose to respond by issuing the NFI Order enjoining the enforcement of a small subset of previously-issued comparability findings.[3]

**5. The relevant regulations state that "[w]ith respect to a harvesting nation for which the Assistant Administrator has denied . . . a comparability finding for a fishery, the Assistant Administrator . . . shall identify and prohibit the importation of fish and fish products into the United States from the harvesting nation caught or harvested in that fishery." 50 C.F.R. § 216.24(h)(9)(i). The regulations further state that "[a]ny import prohibition imposed . . . with respect to a fishery shall remain in effect until the Assistant Administrator issues a comparability finding for the fishery." Id. § 216.24(h)(9)(ii)(A). Please respond to Plaintiffs' argument that "[t]he stay of import bans in the NFI Agreement and Order . . . violates the MMPA and the Imports Rule." Pls.' Reply at 9.**

This assertion depends on the premise that NRDC's litigating position—that the import bans challenged in the NFI action are lawful—is correct, and NFI's litigation position—said import bans are unlawful—is incorrect. That is a contested question, and neither the MMPA nor the Imports Rule requires the Government to litigate that question to a court-ordered conclusion, or violate a court order enjoining enforcement of an import ban.

Although the Government has not conceded error, the MMPA does not preclude the Government from taking action pursuant to a court order that is allegedly inconsistent with a regulatory scheme to avoid litigation risk associated with a broader challenge to a larger set of

---

[3] The NFI Order also implicitly denied plaintiffs' then-pending motion for intervention in the NFI action. *See, e.g.*, *Negotiated Data Sol'ns, LLC v. Dell, Inc.*, 473 F. App'x 898, 898 (Fed. Cir. 2012) (holding that appellants' "motion to intervene is deemed denied on the date the district court dismissed the case" but dismissing the appeal as untimely). Reserving all defenses and arguments the Government might raise, plaintiffs seemingly could have appealed the NFI Order as impliedly denying that motion. *Mikkelson Graphic Eng'g, Inc. v. Zund Am., Inc.*, 541 F. App'x 964, 970 n.2 (Fed. Cir. 2013) (pending Rule 60(b) motion was implicitly denied by order of preliminary injunction, establishing standing for the movant to appeal the injunction).

agency actions. To the extent the NFI Order conflicts with or violates the statute—a point we dispute—that would not permit a collateral attack on the order via plaintiffs' enforcement action here. Instead, it would be an argument that should be raised before the court that issued the supposedly unlawful order.

**6. Defendant-Intervenors argue that the NRDC Agreement's "terms obligated NMFS to undertake the prescribed regulatory process—collecting information, applying the statutory and regulatory criteria, and issuing decisions consistent with 50 C.F.R. Part 216—but did not require NMFS to reach any predetermined substantive outcome." Def.-Inters.' Br. at 8. Is part of that required regulatory process the implementation of import bans for all countries for which comparability findings were denied by January 1, 2026? Did NMFS comply with this requirement?**

Yes, the Government complied with the requirement by implementing[4] import bans for all countries for which comparability findings were denied by January 1, 2026, except to the extent necessary to comply with the NFI Order barring implementation of such bans for the five fisheries identified therein.

This Court ordered, and the Government agreed in the NRDC Agreement, to implement import bans for all countries for which comparability findings were denied by January 1, 2026, but only to the extent that a court had not made a contrary order based on a substantive challenge to a denial of a comparability finding. This is explicitly memorialized in ¶ 3 of the NRDC Agreement. Regardless, even if the contract did not include this provision, no Government official has authority to agree by contract to ignore the orders of an Article III court, nor could this Court preemptively prohibit the Government from complying with future judicial orders, and the NRDC Agreement should not be read to imply such an obligation.

**7. Plaintiffs ask that "the [c]ourt compel Defendants' compliance with Paragraph 1(d) of the [NRDC Agreement] by requiring the [NMFS] . . . to prohibit the importation of fish and fish products into the United States from all harvesting nations or fisheries that do not meet [MMPA] standards." Pls.' Mot. at 2 (emphasis in original). Would the Government's**

---

[4] To clarify, NMFS has no role in the implementation of such import bans, which is primarily undertaken by Customs and Border Protection.

**compliance with a hypothetical court order enforcing compliance with the <u>NRDC</u> Agreement result in a breach of the <u>NFI</u> Agreement? Can the court order compliance with one agreement when that compliance would result in breach of another agreement?**

As to the Court's first question, compliance with the order the plaintiffs request would result in a breach of the <u>NFI</u> Agreement (as well as a violation of the <u>NFI</u> Order). As to the Court's second question, a court has the judicial power to order compliance with one agreement even when that compliance would result in breach of another agreement ordered by a court. However, such an order would risk placing the government in an impossible position in which urgent appellate relief would likely be necessary to avoid contempt before one judge or another.

Fortunately, this matter does not implicate those unusual and weighty issues. The Government has complied with both the <u>NRDC</u> Agreement and the <u>NFI</u> Agreement for the reasons explained in its opposition to the plaintiffs' motion.

**8. What authorities best support your overall argument?**

<u>Plaintiffs Must Identify a Statutory Waiver of Sovereign Immunity for Each Form of Relief</u>

- *Block v. North Dakota*, 461 U.S. 273, 287 (1983)
- *Pacrim Pizza Co. v. Pirie*, 304 F.3d 1291 (Fed. Cir. 2002)
- *RHI Holdings, Inc. v. United States*, 142 F.3d 1459 (Fed. Cir. 1998)
- *Franklin-Mason v. Mabus*, 724 F.3d 1051, 1055-56 (D.C. Cir. 2014)
- *Pres. Gardens v. United States*, 175 F.3d 132 (2d Cir. 1999)

<u>Plaintiffs' Current Claim is Contractual in Nature</u>

- *Crowley Gov't Servs. v. Gen. Servs. Admin.*, 38 F.4th 1099 (D.C. Cir. 2022)

<u>Government is Not Bound by Agents Acting Outside of Their Actual Authority</u>

- *United States v. Mitchell*, 463 U.S. 206, 212 (1983)
- *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)
- *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997)

**9. Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?**

    The undersigned counsel is not aware of any such cases at this time.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | BRETT A. SHUMATE<br>Assistant Attorney General |
|  | s/ Brenna E. Jenny<br>BRENNA E. JENNY<br>Deputy Assistant Attorney General |
|  | PATRICIA M. MCCARTHY<br>Director |
| OF COUNSEL:<br>MARK HODOR<br>Office of General Counsel<br>National Oceanic & Atmospheric Admin.<br>Civil Division | AGATHA KOPROWSKI<br>Trial Attorney |
|  | United States Department of Justice<br>950 Pennsylvania Avenue Floor 3<br>Washington, DC 20530<br>Tel: (202) 307-0231<br>Email: brenna.jenny@usdoj.gov |
| DANIEL PAISLEY<br>Office of General Counsel<br>U.S. Department of the Treasury |  |
| ZACHARY SIMMONS<br>Office of the Chief Counsel<br>U.S. Customs & Border Protection |  |
| February 13, 2026 | *Attorneys for Defendants* |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's Order in that it contains 2552 words, excluding the text of the Court's questions, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Brenna E. Jenny
BRENNA E. JENNY