UNITED STATES COURT OF INTERNATIONAL TRADE

JUDGE: THE HONORABLE JUDGE GARY S. KATZMANN

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., <br><br> CENTER FOR BIOLOGICAL DIVERSITY, <br><br> and <br><br> ANIMAL WELFARE INSTITUTE, <br><br> Plaintiffs, <br><br> v. <br><br> HOWARD LUTNICK, *in his official capacity as Secretary of Commerce*, <br><br> UNITED STATES DEPARTMENT OF COMMERCE, <br><br> EUGENIO PIÑEIRO SOLER, *in his official capacity as Assistant Administrator of the National Marine Fisheries Service*, <br><br> NATIONAL MARINE FISHERIES SERVICE, <br><br> SCOTT BESSENT, *in his official capacity as Secretary of the Treasury*, <br><br> UNITED STATES DEPARTMENT OF THE TREASURY, <br><br> KRISTI NOEM, *in her official capacity as Secretary of Homeland Security*, | Case No. 1:24-cv-00148 <br><br> Before: Judge Gary S. Katzmann |

| | |
|---|---|
| *and* <br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY. <br><br> Defendants. | |

# NATIONAL FISHERIES INSTITUTE, ET AL.'s
## RESPONSE TO THE LETTER ORDER DATED JANUARY 30, 2026

The National Fisheries Institute; Restaurant Law Center; Phillips Foods, Inc.; Heron Point Seafood, LLC; Newport International of Tierra Verde, Inc.; 3Fish, Inc.; Handy Seafood Inc.; Shaw's Southern Belle Frozen Foods, Inc.; Supreme Crab & Seafood, Inc.; Cebu Pacific LLC; Byrd International Inc.; and Crustacea Seafood Company, Inc. (collectively, "Intervenor-Defendants") respectfully submit these answers to the Court's January 30, 2026 Questions directed to Defendant-Intervenor National Fisheries Institute, Inc. ("NFI").

**Question (a): Whether counsel would be available to appear for oral argument in New York City on any of February 25, March 3, or March 4.**

**Answer:** Counsel for Defendant-Intervenors are available to appear for oral argument in New York City on March 3 or March 4.

**Question (b): Whether oral argument would aid the court's resolution of this case**

**Answer:** Yes, Intervenor-Defendants believe oral argument would aid the Court's resolution of this case.

**Question (1):** You argue that "[w]hile agencies may agree to procedural steps, timelines, or reconsideration, they ma[]y not contract away their obligation to exercise reasoned judgment in accordance with statute." Def.-Inters.' Br. at 9. NMFS agreed to implement the import ban requirements of the MMPA by a January 1, 2026 deadline. See NRDC Agreement ¶ 1(d). How does an agreement to this deadline "contract away" the agency's "reasoned judgment in accordance with" the MMPA or "lock in regulatory results?" Def.-Inters.' Br. at 9.

**Answer:**

The issue is not the *Lutnick* Agreement's January 1, 2026 deadline in the abstract. Agencies may agree to implementation schedules. The problem is how NMFS implemented that deadline—by using it to override an express regulatory entitlement that preserves the agency's ongoing discretion.

The governing regulation provides that harvesting nations may "re-apply for a comparability finding *at any time*." 50 C.F.R. § 216.24(h)(9)(ii)(B) (emphasis added). Yet in its September 2, 2025, Notification of Comparability Findings, NMFS announced that nations denied comparability findings could not reapply for affected fisheries until *after* January 1, 2026. 90 Fed. Reg. 42,395, 42,398 (Sept. 2, 2025). That restriction categorically foreclosed reconsideration during the interim period and directly contradicted the regulation's guarantee of reconsideration "at any time." By allowing a settlement deadline to justify suspending reconsideration that the regulation expressly preserves, NMFS permitted the agreement to function as a substantive constraint on its decision making.

At its core, the Plaintiffs' motion seeks to prevent NMFS from reconsidering the challenged comparability findings and to lock in the import prohibition. When a settlement deadline is implemented in a manner that forecloses reconsideration expressly permitted by regulation, the agency is no longer merely agreeing to a procedural timetable. It is contracting away the very discretion the statute and regulations require it to exercise. It is that interaction—between the January 1, 2026, deadline and the unlawful prohibition on reapplication before that date—that impermissibly locks in regulatory results and violates the principle that agencies must retain independent, reasoned judgment under the MMPA.

**Question (2)(a):** You argue that both the NRDC and the NFI Agreements "require NMFS to comply fully with the MMPA and its implementing regulations when issuing [comparability findings] and determining whether import restrictions are warranted." Def.-Inters.' Br. at 11. Where does the MMPA allow for postponement of an import ban for a fishery for which NMFS denied a comparability finding while NMFS reconsiders that determination?

- **The relevant regulations state that "[w]ith respect to a harvesting nation for which the Assistant Administrator has denied . . . a comparability finding for a fishery, the Assistant Administrator . . . shall identify and prohibit the importation of fish and fish products into the United States from the harvesting nation caught or harvested in that fishery." 50 C.F.R. §**

3

> 216.24(h)(9)(i). The regulation further states that "[a]ny import prohibition imposed . . . with respect to a fishery shall remain in effect until the Assistant Administrator issues a comparability finding for the fishery." Id. § 216.24(h)(9)(ii)(A). Please respond to Plaintiff's argument that "[t]he stay of import bans in the NFI Agreement and Order . . . violates the MMPA and the Imports Rule." Pls.' Reply at 9.

**Answer:**

Neither the MMPA nor its implementing regulations require an import prohibition to take effect automatically or immediately upon the denial of a comparability finding. Although § 216.24(h)(9)(i) uses mandatory language providing that the Assistant Administrator "shall identify and prohibit" imports with respect to a fishery for which a comparability finding is denied, the regulations do not specify that such a prohibition must commence immediately upon denial.

Subpart H establishes a two-step regulatory structure. First, NMFS issues comparability finding determinations under § 216.24(h)(8). Second, NMFS implements an import prohibition under § 216.24(h)(9) as a separate, subsequent regulatory action. That sequencing reflects that the denial of a comparability finding and the implementation of an import ban are distinct steps, not a single automatic event.

Section 216.24(h)(9)(ii)(A), in turn, addresses only the duration of an import prohibition once it has been imposed, providing that the prohibition "shall remain in effect until" a new comparability finding is issued. The regulation does not preclude the agency from reconsidering a denial before implementing a prohibition.

That reading is reinforced by Subpart H's structure, which treats comparability findings and import prohibitions as distinct regulatory actions under §§ 216.24(h)(8) and (h)(9). If denial automatically and immediately triggered a prohibition, the regulatory separation between those provisions would be superfluous. Instead, the rule's design contemplates that NMFS will "identify" where an import prohibition is warranted as a subsequent step, informed by the status of the agency's analysis, including whether reconsideration is underway.

When NMFS entered the *NFI* settlement, no import prohibitions were yet in effect for the relevant fisheries, as the previously announced January 1, 2026, effective date had not arrived. Postponing the effective date therefore did not suspend or revoke any existing ban; it simply deferred the second step of the regulatory process while NMFS reconsidered its initial determinations.

**Question (2)(b): How would the imposition of an import ban that remains in effect while NMFS reconsiders it's denial of comparability findings for the relevant fisheries "treat[] the [comparability finding] determinations as insulated from review?" Def.-Inters.' Br. at 14.**

**Answer:**

Courts may review federal agency actions to ensure that they are lawful and within the scope of delegated authority. Agencies, in turn, retain inherent authority to reconsider, revise, or withdraw their actions during litigation to correct errors, address new information, or modify policy. The comparability findings are no different from any other agency action subject to review and reconsideration.

NFI challenged the comparability findings for certain crab fisheries, alleging that they were based on a flawed methodology and inconsistent with statutory requirements. NFI demonstrated substantial harm from the impending ban. Judge Laroski exercised jurisdiction over NFI's APA challenge and ordered NMFS to reconsider the comparability findings. Pending that reconsideration, the court stayed the import bans. Plaintiffs now effectively challenge the court's authority to grant that relief.

Requiring the import ban to remain in effect throughout reconsideration would treat the initial comparability determinations as insulated from meaningful review because § 216.24(h)(9)(ii)(A) provides that the ban "shall remain in effect until" NMFS issues a new comparability finding. That regulatory command locks in the full consequences of the original denial for the duration of reconsideration.

NFI does not contend that NMFS would be barred from formally reconsidering its determinations. The problem is practical, not theoretical. If the mandatory import ban must remain in place during reconsideration, the agency's revised reasoning cannot alter the regulatory consequences of the original decision until a new finding is formally issued. The challenged determinations therefore continue to operate with full legal effect while their validity is under active reconsideration.

Under Plaintiffs' framework, reconsideration occurs against a backdrop in which the complete regulatory consequences of the initial denial persist and may be lifted only prospectively. That lock-in materially diminishes the significance of reconsideration and deprives affected parties of meaningful interim relief. In practical terms, it renders reconsideration largely academic during the period in which it occurs and substantially undercuts the effectiveness of the court's order.

Thus, maintaining an import ban throughout reconsideration would "treat[] the [comparability finding] determinations as insulated from review." The regulatory structure would cause the initial determinations to function as fixed in their consequences while reconsideration is pending, limiting the real-world impact of both judicial review and agency reconsideration.

By contrast, permitting NMFS to reexamine its determinations without an automatic, continuing ban preserves both meaningful reconsideration and meaningful review. The agency remains free to correct error, and any reaffirmed or revised determination remains subject to judicial scrutiny under the APA's standards of reasoned decision-making. This reading harmonizes the MMPA and its implementing regulations with the APA and avoids transforming reconsideration into a purely formal exercise.

**Question (3): What authorities best support your overall argument?**

- Agencies remain bound by the statutes they administer, and courts retain an independent obligation to ensure that agency action complies with those statutes.
    - *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

- Courts have long recognized that agencies may not use settlement agreements to bind themselves to substantive outcomes that Congress has committed to their discretion.
    - *Decatur v. Paulding*, 39 U.S. 497, 506–07 (1840) (explaining that when Congress imposes discretionary duties, an executive official must exercise independent judgment and cannot be compelled to reach a predetermined outcome).
    - *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947) (holding that duly published regulations bind the Government and override contrary representations by agents).

- The APA requires agencies to account for serious reliance interests when altering or enforcing regulatory determinations.
    - *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

- There is a strong interpretive presumption that federal statutes coexist harmoniously.
    - *Dep't. of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024) (citing *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 510 (2018)).

**Question (4): Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?**

**Answer:** Undersigned counsel is not aware of any such cases at this time.

Respectfully submitted,

Dated: February 13, 2026

/s/ Ashley Akers
Ashley Akers
Rafe Petersen
Maggie Pahl
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, D.C. 20006

Tele: 202-441-5870
Ashley.Akers@hklaw.com
Rafe.Petersen@hklaw.com
Maggie.Pahl@hklaw.com

*Attorneys for Applicant-Intervenor-Defendants*

**CERTIFICATE OF SERVICE**

I, Ashley Akers, one of the attorneys for Plaintiffs, certify that the foregoing document was filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system on February 13, 2026. The Court and/or Clerk of the Court may serve and give notice to counsel by CM/ECF electronic transmission.

/s/ Ashley Akers
  Ashley Akers

*Attorney for Applicant-Intervenor-Defendants*