IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., et al. <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL MARINE FISHERIES SERVICE, et al. <br><br> Defendants. | Civil Action No. 1:24-cv-00148-GSK <br><br><br> **PLAINTIFFS' SUBMISSION PURSUANT TO JANUARY 30, 2026 ORDER** |

Plaintiffs Natural Resources Defense Council, Inc., et al. ("Plaintiffs") submit the following responses to the Court's Order dated January 30, 2026 (Dkt. 51). Plaintiffs are available for oral argument on March 3 or 4, and believe it would aid in the Court's decision.

1. What is the court's basis of jurisdiction over your motion to enforce the settlement agreement here? *See* Stipulation of Dismissal at Attach. A, Jan. 16, 2025, ECF No. 29 ("*NRDC* Agreement").

The Court's jurisdiction over Plaintiffs' motion to enforce stems from three sources.

First, the Court has subject matter jurisdiction under 28 U.S.C. § 1581(i)(1)(C) and (D). This provision grants the Court of International Trade "exclusive jurisdiction of any civil action commenced against the United States . . . that arises out of any law of the United States providing for . . . (C) embargoes or other quantitative restrictions on . . . importation" or "administration and enforcement" of those matters. Section 1581(i) provides jurisdiction over Plaintiffs' "action," which had one central claim:

1

that Defendants failed to comply with the Marine Mammal Protection Act's ("MMPA") embargo mandate, thereby violating the Administrative Procedure Act ("APA"). Compl., Dkt. 1 at 47-49.

Second, under *Kokkonen*, the Court has "ancillary jurisdiction to enforce" the non-monetary terms of the *NRDC* Agreement because "the terms of the settlement agreement [are] made part of the order of dismissal." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). Here, the Court "incorporate[d] the settlement terms" both with "a provision 'retaining jurisdiction' over the settlement" and "by incorporating the terms of the settlement agreement in the order." *Id.*; *see* Op. & Order, Dkt. 38 at 13-14; Dkt. 39 at 3.

Third, as a bedrock legal principle, the Court has "inherent authority to . . . prosecute violation[s] of [its] order." *Kokkonen*, 511 U.S. at 380. This power stems not from statute but from "the control necessarily vested in courts . . . to achieve the orderly and expeditious disposition of cases," which includes "the inherent authority . . . to enforce [a court's] orders by whatever means." *Cahill v. Insider Inc.*, 131 F.4th 933, 938 (9th Cir. 2025) (citing *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose . . . submission to their lawful mandates"). Because the Court retained jurisdiction and incorporated the terms of the Parties' settlement in its order, the settlement is enforceable like any other court order e.

2

2. Though "the existence of consent is a prerequisite for jurisdiction," *United States v. Mitchell*, 463 U.S. 206, 212 (1983), "the issues of subject-matter jurisdiction and sovereign immunity are . . . 'wholly distinct.'" *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 139 (2d Cir. 1999) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 786 n.4 (1991)). Where is the Congressional waiver of sovereign immunity for the purpose of your motion to enforce the settlement agreement?

Congress waived sovereign immunity for the purpose of Plaintiffs' motion to enforce in 28 U.S.C. § 1581(i)(1)(C) and (D). This statute both grants jurisdiction and "provides a waiver of sovereign immunity over the specified classes of cases." *Humane Soc'y of United States v. Clinton*, 236 F.3d 1320, 1328 (Fed. Cir. 2001); *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 413 F. Supp. 3d 1334, 1344 n.13 (Ct. Int'l Trade 2019) ("Section 1581 waives sovereign immunity for the types of cases specified therein").

Contrary to Defendants' argument, Plaintiffs need not identify a separate waiver of sovereign immunity for the Court to grant Plaintiffs' motion to enforce, beyond the waiver required to initiate this action. Once sovereign immunity has been waived for a plaintiff's action, the Court has inherent authority to enforce its own orders issued within that action. Several cases support this proposition.

Most directly, in *Hendrickson v. United States*, the plaintiff moved to enforce a settlement agreement in which the U.S. government agreed to make certain payments. No. 82-CV-621T, 2014 WL 2112575, at *1 (W.D.N.Y. May 20, 2014), *overruled on other grounds*, 791 F.3d 354 (2d Cir. 2015). The defendant argued the plaintiffs' motion was "essentially a breach of contract action" and that the U.S. government had not waived sovereign immunity for the district court to hear the claim. *Id.* at *3.

The court disagreed and held that "the waiver of sovereign immunity that allowed this Court to issue the Order approving the settlement" initially "permits this Court to enforce that Order." *Id.* at *4. The court further emphasized that if the "Court is required to find an independent basis of jurisdiction to enforce its own lawfully issued Orders" that "would eviscerate the jurisdiction of the court, and would render meaningless the waiver of immunity created by [the underlying statute]. . . . Such a position is untenable." *Id.*

An analogous body of caselaw holds that state sovereign immunity is not implicated when a federal court enforces a consent decree concerning federal law. In *Frew v. Hawkins*, the plaintiffs moved to enforce a federal consent decree they had entered with state officials. 540 U.S. 431, 435 (2004). The state defendants argued that sovereign immunity "rendered the decree unenforceable even if they were in noncompliance" because the Eleventh Amendment bars actions against states unless predicated on federal law and the plaintiffs' motion did not allege a federal law violation, only violation of the consent decree. *Id.* at 435-36.

The Court rejected the claim of sovereign immunity, finding "the decree is a federal-court order that springs from a federal dispute and furthers the objectives of federal law" and creates "a mandatory, enforceable obligation." *Id.* at 438. The Court admonished that "federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced." *Id.* at 440. The Court further noted that a party's concerns with compliance with a decree should be addressed through the court's equitable powers and Rule 60(b), not arguments for

4

sovereign immunity. *Id.* at 441; *see also United States v. Virgin Islands*, 363 F.3d 276, 288 (3d Cir. 2004) (finding state sovereign immunity did not bar motion to enforce consent decree because decree remedied "violations of . . . a federal statute" and the court's enforcement order "was a reasonable exercise of the Court's equitable powers to enforce a federal decree to which [the state] had consented"). Similarly, this Court has equitable power to enforce Plaintiffs' court-ordered settlement agreement, which resolved a federal law claim over which the Court had clear jurisdiction, and sovereign immunity need not be reconsidered.

> 3. You cite to *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.* to argue that "[i]n considering sovereign immunity, courts look to the 'complaint . . . to determine' whether an action against the United States 'is at its essence a contract claim.'" Pls.' Reply at 4 n.2 (quoting *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1108 (D.C. Cir. 2022)). In that case, the D.C. Circuit considered whether an action "is at its essence a contract claim" to determine whether the claim fell "within the exclusive jurisdiction of the Claims Court pursuant to the Tucker Act." *Crowley*, 38 F.4th at 1106 (emphasis omitted) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)). Why should we use the same test to determine whether the Government has waived sovereign immunity in this case?

In *Crowley*, the Court assessed the plaintiff's complaint to determine whether the case fell under the APA's "limited waiver of sovereign immunity" or the Tucker Act, which grants the Court of Federal Claims exclusive jurisdiction over certain "contract claims." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105-06 (D.C. Cir. 2022). The court held that while "contract issues may arise" in the case, the "action itself [wa]s not founded on a contract," and the court had jurisdiction to hear the case under the APA. *Id.* at 1109.

The same analysis should apply here: because the claims for relief in Plaintiffs' complaint fall under the statutory waiver of sovereign immunity, *see* 28 U.S.C. §

1581(i)(1)(C) and (D), sovereign immunity is waived, even when a contract issue later arises within that action. Concluding otherwise would invite the government to violate court-ordered settlements with impunity.

> 4. You argue that, for the purposes of jurisdiction and waiver of sovereign immunity, "Plaintiffs do not raise a 'breach of contract claim.'" Pls.' Reply at 4 n.2. How does this argument reconcile with your request "that this [c]ourt find Defendants. . . in violation of the settlement agreement executed by the Parties on January 15, 2025"? Pls.' Mot. at 2.

Plaintiffs' complaint alleges that Defendants violated the MMPA and the APA by failing to ban certain seafood imports. Compl., Dkt. 1 at 130-159. Plaintiffs did not allege a breach of contract.

Plaintiffs now seek enforcement of their court-ordered settlement agreement with Defendants. That contract interpretation may be required to effectuate that court order does not deprive this Court of its inherent, constitutionally based authority to enforce its own order. *See Hensley v. Alcon Lab'ys, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002) ("Although resolution of a motion to enforce a settlement agreement draws on standard contract principles, it may be accomplished within the context of the underlying litigation without the need for a new complaint. To this extent, district courts have inherent authority, deriving from their equity power, to enforce settlement agreements."); *see also Roberts v. United States*, 242 F.3d 1065, 1068-69 (Fed. Cir. 2001) ("The answer to the sovereign immunity and jurisdiction questions depends not simply on whether a case involves contract issues, but on whether, *despite the presence of a contract*, plaintiffs' claims are founded *only* on a contract, or whether they stem from a statute or the Constitution."); *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) ("the mere fact that a court may have to

rule on a contract issue [during a case] does not, by triggering some mystical metamorphosis, automatically transform an action based on [another claim] into one on [a] contract and deprive the court of jurisdiction it might otherwise have").

This Court has jurisdiction and the government waived sovereign immunity over Plaintiffs' cause of action. The Court can, and should, declare Defendants in violation of the *NRDC* Agreement and compel compliance with that court-ordered agreement. Failure to do so would, in effect, undermine parties' ability to enforce court orders that mandate compliance with settlement agreements. That result would contravene *Kokkonen*, flout principles of judicial authority to effectuate decrees, undermine the authority of this Court, and deter plaintiffs from entering into settlement agreements with the government.

5. Defendant-Intervenors argue that the *NRDC* Agreement's "terms obligated [National Marine Fisheries Service ("NMFS")] to undertake the prescribed regulatory process—collecting information, applying the statutory and regulatory criteria, and issuing decisions consistent with 50 C.F.R. Part 216—but did not require NMFS to reach any predetermined substantive outcome." Def.-Inters.' Br. at 8. Did the *NRDC* Agreement require anything more than compliance with the prescribed regulatory process?

No. Other than setting deadlines for compliance and a method for making NMFS's decisions publicly available, the *NRDC* Agreement required compliance with the prescribed regulatory process by a date certain, including interim milestones and a firm date for the ban on imports starting January 1, 2026. *NRDC* Agreement ¶¶ 1-2. Plaintiffs negotiated these deadlines to prevent NMFS from granting itself another extension on banning imports—as it previously did three times. *See* Compl. ¶¶ 15, 56-60, 153; 85 Fed. Reg. 69,515 (Nov. 3, 2020); 87 Fed. Reg. 63,955 (Oct. 21, 2022); 88

7

Fed. Reg. 80,193, 80,194 (Nov. 17, 2023) (stating NMFS may find "a need to further extend the exemption period or otherwise amend the 2016 final rule").

        a. Did NMFS fail to meet the requirements of that regulatory process?

As of January 1, 2026, NMFS failed to meet the requirements of its own regulatory process, as well as the *NRDC* Agreement. Under NMFS's most recent amendment to the Imports Rule deadlines, the agency was required to ban imports by January 1, 2026. 88 Fed. Reg. 80,193, 80,194 ("exemption period" expired December 31, 2025). Thus, "[e]ffective January 1, 2026, fish and fish products . . . may only be imported into the United States if the harvesting nation has applied for and received a comparability finding from NMFS." 90 Fed. Reg. 42,395, 42,397 (Sept. 2, 2025).

On September 2, 2025, NMFS published its denial of comparability findings for five swimming crab fisheries in Vietnam, Philippines, Indonesia, and Sri Lanka (collectively, the "Swimming Crab Fisheries"). *See* 90 Fed. Reg. at 42,397. The Imports Rule and the *NRDC* Agreement both require an import ban on January 1, 2026, and the MMPA and Imports Rule requires that the ban remain in effect until NMFS can make a positive finding. *See* 16 U.S.C. § 1371(a)(2)(A); 50 C.F.R. § 216.24(h)(9)(ii)(A), (B). The *NFI* Agreement violates these requirements by allowing imports from these fisheries to continue while NMFS reconsiders its denial. As of January 1, 2026, permitting such imports to continue contravenes the *NRDC* Agreement, the Imports Rule, and the MMPA.

    6. You argue that "[t]he stay of import bans in the [*NFI*] Agreement and Order. . . violates the MMPA and the Imports Rule" because "[t]he Imports Rule. . . requires that, during any reconsideration of a fishery

8

that has received a negative comparability finding, an import ban shall 'remain in effect' until NMFS is able to make a positive finding; a ban cannot be lifted while NMFS engages in reconsideration." Pls.' Reply at 8–9 (quoting 50 C.F.R. § 216.24(h)(9)(ii)(A)); *see also* Joint Stipulation of Dismissal at App'x A, *Nat. Fisheries Inst., Inc. v. United States*, Court No. 25-00223 (Ct. Int'l Trade filed Oct. 9, 2025), Oct. 30, 2025, ECF No. 37 ("*NFI* Agreement"); Order of Dismissal, *Nat. Fisheries Inst.*, Court No. 25-00223, Oct. 31, 2025, ECF No. 41 ("*NFI* Order"). How does a stay of the January 1, 2026 deadline to implement an import ban—such that no import ban was put into place—violate the requirement that an existing ban cannot be lifted?

A "stay" of an import ban violates the Imports Rule. Under the Imports Rule, NMFS "shall . . . prohibit" fish products from any fishery for which NMFS has "denied . . . a comparability finding." 50 C.F.R. § 216.24(h)(9)(i). Because NMFS denied a comparability finding for the Swimming Crab Fisheries, both the Imports Rule and the *NRDC* Agreement required an import ban on those Fisheries starting on January 1, 2026. NMFS did not, as part of the *NFI* Agreement, revoke its denial of comparability findings. A ban is required.[1]

While the Imports Rule allows NMFS to reconsider a denial, *id.* § 216.24(h)(9)(ii)(B), the Rule requires that an import prohibition "shall remain in effect" until NMFS issues the fishery a positive comparability finding following reconsideration. *Id.* § 216.24(h)(9)(ii)(A). The *NFI* Agreement flouts this provision of the Imports Rule.

NMFS may not purport to "stay" the ban before it came into place. Read together, Sections 216.24(h)(9)(i) and (h)(9)(ii)(A) plainly call for a ban on any fishery

---

[1] Even if NMFS had revoked its decision, because it did not issue a positive finding, imports from these fisheries are prohibited. 50 C.F.R. § 216.24(h)(1) (prohibiting imports without "a valid comparability finding").

that has not received a positive finding. Because the Swimming Crab Fisheries lack a positive finding, imports must be banned now, even while NMFS reconsiders its denial.

7. Would an order compelling the Government's compliance with Paragraph 1(d) of the *NRDC* Agreement bind NMFS to a substantive outcome that Congress committed to the agency's discretion? *See* Def.-Inters.' Br. at 8–9; Gov't Br. at 15.

An order compelling the Government's compliance with Paragraph 1(d) of the *NRDC* Agreement would not deprive the agency of its Congressionally delegated discretion. The agency exercised its discretion, subject-matter expertise, and substantive decision-making authority when it made its comparability findings. The *NRDC* Agreement did not constrain the outcome of NMFS's comparability findings for the Swimming Crab Fisheries or any other fishery.

An order requiring NMFS to comply with Paragraph 1(d) of the *NRDC* Agreement is process-based, not substantive; it requires NMFS to prohibit the importation of fish and fish products from fisheries for which NMFS has *already* denied a comparability finding. In other words, the order would simply require NMFS to comply with the MMPA and its own regulations.

8. You ask that "the [c]ourt compel Defendants' compliance with Paragraph 1(d) of the [*NRDC* Agreement] by requiring [NMFS] . . . to prohibit the importation of fish and fish products into the United States from *all* harvesting nations or fisheries that do not meet [MMPA] standards." Pls.' Mot. at 2 (emphasis in original). Would the Government's compliance with a hypothetical court order enforcing compliance with the *NRDC* Agreement result in a breach of the *NFI* Agreement?

The Government's compliance with a court order enforcing the *NRDC* Agreement would not result in a breach of any lawful term in the *NFI* Agreement.

10

Neither the MMPA nor its implementing regulations accord the Government the discretion to stay enforcement of import bans while NMFS reconsiders its denial of comparability findings. *See* Reply Supp. Mot. to Enforce, Dkt. 50, at 8-10; *see also* [Prop.] Int.-Defs.' Opp. to Pls.' Mot. Preliminary Inj. 18-20, 41 (Dkt. 38), *NFI v. United States*, No. 25-cv-223-JAL (Ct. Int'l Trade Oct. 30, 2025). The term of the *NFI* Agreement staying import bans is contrary to federal statute, and a settlement term that is void and in excess of an agency's statutory authority should not be enforced. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 833 (1985) (noting that "Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers"); *In re Smith*, 926 F.2d 1027, 1029 (11th Cir. 1991) ("Settlements are void against public policy . . . if they directly contravene a . . . federal statute or policy.") (citing, inter alia, *Yockey v. Horn*, 880 F.2d 945, 950 (7th Cir.1989); *Jackson Purchase Rural Elec. Cooperative Ass'n v. Local Union 816*, 646 F.2d 264, 267 (6th Cir.1981); *United States v. City of Miami*, 614 F.2d 1322, 1333 (5th Cir. 1980)).

    a. Can the court order compliance with one agreement when that compliance would result in the breach of another agreement?

In some circumstances, like here, yes. This Court can fashion equitable relief in response to a settlement agreement that is void as against public policy, as the *NFI* Agreement is. *See Brown v. Plata*, 563 U.S. 493, 538 (2011). The Court of International Trade is a court of equity. 28 U.S.C. § 1585; *see Rhone Poulenc, Inc. v. United States*, 880 F. 2d 401, 402 (Fed. Cir. 1989).

The Government entered the *NFI* Agreement knowing that its terms conflict with the prior *NRDC* Agreement (or at minimum, that there is a cogent claim of a

11

direct conflict). Having "orchestrat[ed] the current 'impossibility,'" Defendants cannot now hide behind that defense. *See, e.g.*, *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 816 F. Supp. 864, 874 (S.D.N.Y. 1992), *aff'd*, 986 F.2d 15 (2d Cir. 1993); *Health–Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) (A party who "makes no claim that it took virtually every action within its power to perform its duties under the contract . . . cannot assert the defense of impossibility"); *Mass. Bay Transp. Auth. v. United States,* 54 F.3d 1367, 1373 (Fed. Cir. 2001) ("[T]he party asserting impossibility…has the burden to prove that it explored and exhausted alternatives….") (citation modified).

The Government cannot complain about conflicting obligations particularly when, as here, Plaintiffs sought to intervene in the *NFI* case. Defendants opposed intervention and the *NFI* court entered the stipulation of voluntary dismissal without ruling on NRDC's motion. Thus, not only did the Government disregard its obligations under the *NRDC* Agreement, it stymied Plaintiffs' attempt to seek relief from the *NFI* court. This Court should not excuse Defendants' violation of the *NRDC* Agreement on the grounds that an order to enforce would conflict with the *NFI* Agreement when Defendants thwarted Plaintiffs' efforts to prevent the conflict in the first place.

In any case, the Court could order compliance with the *NRDC* Agreement in a way that would not breach the *NFI* Agreement. This Court could direct the *NFI* parties to seek to modify the *NFI* Agreement to conform with the MMPA and Imports Rule, and could even stay the effective date of its order of compliance for a short

12

period of time to allow the *NFI* parties to effectuate any modifications. *See, e.g., Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 646-47 (1961) (affirming that the "power of the District Court to modify [a] decree is not drawn in question," including in response to "changes in law or facts"); *Env't Def. Fund, Inc. v. Costle*, 636 F.2d 1229, 1240 (D.C. Cir. 1980) (similar). The *NFI* Agreement specified that the court would retain jurisdiction "to resolve any motions to modify such terms." Proposed Stip. Order (Dkt. 37-1), *NFI v. United States*, No. 25-cv-223-JAL (Ct. Int'l Trade Oct. 30, 2025). Thus, to the extent Plaintiffs' Motion to Enforce affects Defendants' compliance with the terms of the *NFI* Agreement, the *NFI* court could "resolve any motions to modify such terms." Joint Stip. of Dismissal & Order (Dkt. 41), *NFI v. United States*, No. 25-cv-223-JAL (Ct. Int'l Trade October 31, 2025).

9. What authorities best support your overall argument?

On this Court's jurisdiction to enforce its order in this action: *Kokkonen*, 511 U.S. 375 (1994). On waiver of sovereign immunity for the motion to enforce: 28 U.S.C. § 1581(i); *Humane Soc'y*, 236 F.3d 1320 (Fed. Cir. 2001); and *Hendrickson*, 2014 WL 2112575 (W.D.N.Y. May 20, 2014).

10. Are there any recent or pending Federal Circuit or USCIT cases that may affect the court's analysis?

No.

Respectfully submitted,

*/s/ Christina S. Marshall*
Christina S. Marshall
cmarshall@andersonkreiger.com
Mina S. Makarious
mina@andersonkreiger.com
Sean M. Grammel
sgrammel@andersonkreiger.com
Marissa C. Grenon Gutierrez
mgrenongutierrez@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660

*Counsel for Natural Resources Defense Council, Center for Biological Diversity and Animal Welfare Institute*

*/s/ Sarah Uhlemann*
Sarah Uhlemann
Center for Biological Diversity
120 State Avenue NE #268
Olympia, WA 98501
(206) 327-2344
suhlemann@biologicaldiversity.org

*Counsel for Center for Biological Diversity and Animal Welfare Institute*

*/s/ Zak Smith*
Stephen Zak Smith
Natural Resources Defense Council
544 East Main Street Unit B
Bozeman, MT 59715
(406) 556-9300
zsmith@nrdc.org

*Counsel for Natural Resources Defense Council*

14

**Certificate of Compliance with Word Limit**

I certify that the above document contains 2,913 words, not including certificates of counsel, counsel's signature block, or the restatement of the questions posed in the Court's January 30, 2026 Order.

*/s/ Christina S. Marshall*

**Certificate of Service**

I hereby certify under penalty of perjury that on this day of February 13, 2026, a copy of the foregoing document was filed electronically. Service upon Defendants' counsel was thus effected by operation of the Court's CM/ECF system.

*/s/ Christina S. Marshall*