**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., et al.<br><br>                    Plaintiffs,<br><br>     v.<br><br>NATIONAL MARINE FISHERIES SERVICE, et al.<br><br>                    Defendants,<br><br>NATIONAL FISHERIES INSTITUTE, INC., et al.<br>                    Defendant-Intervenors | Civil Action No. 1:24-cv-00148-GSK<br><br><br>**PLAINTIFFS' POST-ARGUMENT STATEMENT** |

Plaintiffs Natural Resources Defense Council, Inc., et al. ("Plaintiffs") submit the following Post-Argument Statement pursuant to the Court's Order authorizing the parties to "file post-argument submissions of no more than 2,000 words by March 20, 2026." Dkt. 58.

**1. Under *Kokkonen*, the Court has jurisdiction to enforce the NRDC Agreement adopted via a Court order.**

Plaintiffs' motion to enforce, Dkt. 40, requests that the Court compel Defendants' compliance with Paragraph 1(d) of the NRDC Agreement, which the Court adopted as "an enforceable [o]rder." Op. & Order, Dkt. 39 at 3; *see* Dkt. 38 at 13-14. Under *Kokkonen*, the Court has "ancillary jurisdiction to enforce" the non-monetary terms of the NRDC Agreement because "the terms of the settlement agreement [are] made part of the order of dismissal." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

1

Contrary to Defendants' argument at the hearing on March 4, 2026, Plaintiffs' motion does not seek enforcement of a standard contract but instead seeks enforcement of a settlement agreement *that has been adopted as an order of this Court.* Defendants' argument amounts to nothing more than a hyper-technical emphasis on form over substance. Plaintiffs seek enforcement of the NRDC Agreement adopted via a Court order because the Court "incorporate[d] the settlement terms" of the NRDC Agreement both with "a provision 'retaining jurisdiction' over the settlement" and "by incorporating the terms of the settlement agreement in the order." Dkt. 39 at 3; *see* Op. & Order, Dkt. 38 at 13-14; Dkt. 39 at 3. Plaintiffs' submissions to the Court have made clear that the motion seeks enforcement of the NRDC Agreement as an enforceable Court order. *See, e.g.*, Plaintiffs' Submission Pursuant to this Court's January 30, 2026 Order (Dkt. 54) ("Plaintiffs' Submission") at 2 ("Because the Court retained jurisdiction and incorporated the terms of the Parties' settlement in its order" the NRDC Agreement "is enforceable *like any other court order*.") (emphasis added); *see also* Plaintiffs' Reply (Dkt. 50) ("Pls. Rep") at 5 ("The basic premise of Defendants' argument—that the Court lacks authority to enforce its own orders—cannot stand.")

Defendants' argument also contradicts the parties' joint response in 2025 regarding settlement enforcement. This Court questioned what "the parties envision would be the remedy or remedies sought in a hypothetical *motion to enforce the terms of the Stipulated Settlement Agreement*." Joint Submission, Dkt. 37 at 8 (emphasis added). Defendants agreed that should a disagreement arise regarding compliance

with the NRDC Agreement, "Plaintiffs would then be able to seek appropriate relief from this Court to enforce compliance, for example by requesting that the Court order Defendants to meet their settlement agreement commitments by a date certain." *Id.*

### 2. Current imports from the five Swimming Blue Crab fisheries at issue are illegal.

Defendants' allowance of continued imports from the Swimming Blue Crab fisheries listed in the NFI Agreement not only violates the NRDC Agreement—it also violates the law. Unless and until a foreign nation's fishery receives a positive comparability finding, imports of fish and fish products from that fishery are illegal under the MMPA and the Imports Rule. *See* Pls. Rep. (Dkt. 50) at 8-9; Plaintiffs' Submission (Dkt. 54) at 9-10. The NRDC Agreement simply requires Defendants to follow the law, whereas the NFI Agreement purportedly permits NMFS to violate it.

Plaintiffs also wish to address two points raised by NFI on rebuttal. Contrary to NFI's assertions, the Imports Rule *does* require imposition of an import ban within a certain amount of time after denial of a comparability finding. The Imports Rule also distinguishes between reconsideration and reapplication. The Imports Rule states:

> As provided in section 101(a)(2) and 102(c)(3) of the MMPA, the importation of commercial fish or fish products which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of U.S. standards or caught in a manner which the Secretary has proscribed for persons subject to the jurisdiction of the United States are[*sic*] prohibited. For purposes of paragraph (h) of this section, a fish or fish product caught with commercial fishing technology which results in the incidental mortality or incidental serious injury of marine mammals in excess of U.S. standards is any fish or fish product harvested in an exempt or export fishery <u>for which a valid comparability finding is not in effect</u>.

50 C.F.R. § 216.24(h)(1)(i) (citing 16 U.S.C. §§ 1371(a)(2), 1372(c)(3)) (emphasis added). The Imports Rule further provides:

> [I]t is <u>unlawful for any person to import</u>, or attempt to import, into the United States for commercial purposes any fish or fish product if such fish or fish product: [w]as caught or harvested in a <u>fishery that does not have a valid comparability finding in effect at the time of import</u>.

*Id.* § 216.24(h)(1)(ii)(A) (emphasis added). NMFS is required to make comparability finding determinations and publish notice of these determinations:

> No later than November 30th of the year when the exemption period or comparability finding is to expire, [National Marine Fisheries Service] shall publish in the Federal Register . . . a notice of the harvesting nations and fisheries for which it has issued or denied a comparability finding and the specific fish and fish products <u>that as a result are subject to import prohibitions under paragraphs (h)(1) and (9)</u> of [the Imports Rule].

*Id.* § 216.24(h)(8)(i) (emphasis added). Defendants are then required to identify and prohibit imports of fish and fish products from fisheries "for which [NMFS] has denied or terminated a comparability finding," and "<u>such import prohibition shall become effective 30 days after the publication of the Federal Register notice referenced in paragraph (h)(8)(i)</u>," *i.e.*, 30 days after November 30. *Id.* § 216.24(h)(9)(i) (emphasis added).

That the NRDC Agreement required earlier notice in the Federal Register of which fisheries had been denied a comparability finding (September 1st, rather than November 30th) does not change the fact that Defendants have a non-discretionary obligation under the MMPA and Imports Rule to ban imports from fisheries that lack comparability findings—like the five Swimming Blue Crab fisheries. And that ban

"shall remain in effect until the Assistant Administrator [of NMFS] issues a comparability finding for the fishery." *Id.* § 216.24(h)(9)(ii)(A).

NFI's claim—that this provision does not apply to the five Swimming Blue Crab fisheries because it uses the word "remain" and a ban never went into effect for the crab fisheries—is misguided. The Imports Rule uses the word "remain" because the regulation mandates a ban to be automatically imposed within 30 days of the denial or termination of a comparability finding, *id.* § 216.24(h)(9)(i), and the only recourse under the Imports Rule for a fishery "with a comparability finding that expired, was denied or terminated" is to reapply. *Id.* § 216.24(h)(9)(ii)(B). The regulation allows NMFS 90 days to decide on any reapplication. *Id.* § 216.24(h)(9)(ii)(C). Thus, the regulation contemplates that the import ban will already be in place before the agency's determination on a reapplication is issued.[1] Use of the word "remain" simply reflects a logical inference regarding time periods under the Imports Rule relative to when a comparability finding is denied, not an exemption to what is explicitly stated repeatedly: fisheries require a comparability finding to be lawfully imported.

---

[1] Unlike Indonesia and the other southeast Asian nations denied comparability for Blue Swimming Crab, New Caledonia, Grenada, and Ireland, for whom NMFS denied comparability findings, adhered to the regulatory process in conformance with the Imports Rule. They re-applied with supporting information, and NMFS granted comparability findings earlier this month after determining that those fisheries had "addressed the issues for which they were denied comparability findings[.]" *Notification of Comparability Findings for New Caledonia, Grenada, and Ireland Under the Import Provisions of the Marine Mammal Protection Act*, 91 Fed. Reg. 12,510 (Mar. 16, 2026).

Finally, while reconsideration and reapplication may each happen "at any time," they are fundamentally different processes initiated by different actors. *Compare* 50 C.F.R. § 216.24(h)(8)(vii) (reconsideration) *with* § 216.24(h)(9)(ii)(B) (reapplication). <u>Reconsideration</u> applies when NMFS has issued a comparability finding but an organization, or person, including NMFS itself, has information that indicates that the fishery "no longer meets the applicable conditions in paragraph (h)(6)(iii)"—in other words, where it is no longer eligible for a comparability finding. *See id.* § 216.24(h)(8)(vii). In contrast, <u>reapplication</u> is a distinct process where a nation for which NMFS has denied a comparability finding, or whose comparability finding has expired or been terminated, may provide evidence that the fishery does in fact meet the conditions in subsection (h)(6)(iii) of the Imports Rule. *Id.* § 216.24(h)(9)(ii)(B). Reapplication is the proper process for the harvesting nations at issue in the NFI case to have followed.

**3. There is a sufficient waiver of Sovereign Immunity in this case.**

Plaintiffs' suit against Defendants was properly brought before this court pursuant to 28 U.S.C. § 1581(i)(1)(C) and (D). As explained in Plaintiffs' Submission, courts have determined that this statutory provision provides a congressional waiver of sovereign immunity over the specified types of cases. *See* Pls. Submission at 3. No further waiver of sovereign immunity is needed because Plaintiffs seek only to enforce the order this Court issued in this matter that is properly before the Court under 28 U.S.C. § 1581(i)(1)(C) and (D). *Id.* at 3-5. A finding that sovereign immunity bars enforcement in situations like this, where courts have retained jurisdiction over a

settlement agreement, would prevent parties to a settlement with the government from enforcing that agreement if the government should break its terms. *Id.*

The government cited two new cases at argument; both are inapposite. *Yancheng* concerned attorneys' fees claims arising from contempt proceedings against the government. *Yancheng Baolong Biochemical Prods. Co. v. United States*, 406 F.3d 1377, 1379 (Fed. Cir. 2005). Because the plaintiff did not seek fees under the Equal Access to Justice Act (EAJA), which waives sovereign immunity for attorneys' fees claims against the government, and the court found no other statutory waiver, it denied an attorneys' fees award. *Id.* at 1382-83; *see also M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1184 (Fed. Cir. 1993) (finding sovereign immunity does not bar the court from sanctioning the U.S. government for discovery abuses, as that would leave a court "helpless to preclude" such behavior after government consented to suit). In *Mavashev*, the plaintiff asked for the release of the government's lien against plaintiff's property. *Mavashev v. U.S. Att'y's Off. for E. Dist. of N.Y.*, No. 19-CV-01754, 2019 WL 4087857, at *4 (E.D.N.Y. Aug. 28, 2019). The district court noted that the settlement agreement, which resolved forfeiture claims in an unrelated criminal case, "did not mention" the lien at issue, and that plaintiff's money damages claims belonged in the Court of Federal Claims. *Id.* at *2, 4 (concluding that the Tucker Act provided the relevant waiver of sovereign immunity).

Plaintiffs here do not seek attorneys' fees or other monetary damages. They seek only enforcement of the Court's order, which expressly retained jurisdiction over

terms of the settlement—import bans for fisheries denied a comparability finding—

that Defendants have flouted.  *See* Pls.' Submission at 1-2.

### 4. The NFI Agreement is not a court order enjoining enforcement of a comparability finding as contemplated by the NRDC Agreement.

For the reasons Plaintiffs describe in their recent filings, the NFI Agreement

is not a "court order enjoining enforcement of a comparability finding" as

contemplated under paragraph 3 of the NRDC Agreement.  *See* Pls. Mot. to Enforce

(Dkt. 40) at 9-11; Pls. Rep. at 6-9.

### 5. The NRDC Agreement was executed with sufficient authority at DOJ to now be enforced.

As explained by Plaintiffs in recent filings, the NRDC Agreement was duly

executed by Defendants, and as such is valid and enforceable.  *See* Pls. Mot. to Enforce

at 5-6; Pls. Rep. at 11-14.

Respectfully submitted,

*/s/ Christina S. Marshall*

Christina S. Marshall
cmarshall@andersonkreiger.com
Mina S. Makarious
mina@andersonkreiger.com
Sean M. Grammel
sgrammel@andersonkreiger.com
Marissa C. Grenon Gutierrez
mgrenongutierrez@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6500
Fax: 617-621-6660

*Counsel for Natural Resources Defense*
*Council, Center for Biological Diversity and*
*Animal Welfare Institute*

*/s/ Sarah Uhlemann*

Sarah Uhlemann
Center for Biological Diversity
120 State Avenue NE #268
Olympia, WA 98501
(206) 327-2344
suhlemann@biologicaldiversity.org

*Counsel for Center for Biological Diversity*
*and Animal Welfare Institute*

*/s/ Zak Smith*

Stephen Zak Smith
Natural Resources Defense Council
544 East Main Street Unit B
Bozeman, MT 59715
(406) 556-9300
zsmith@nrdc.org

*Counsel for Natural Resources Defense*
*Council*

9

## Certificate of Compliance with Word Limit

I certify that the above document contains <u>1957</u> words, not including the caption, certificates of counsel, and counsel's signature block, in accordance with the 2,000 word limit set in the Court's March 6, 2026 Docket Notation.

*/s/ Christina S. Marshall*

## Certificate of Service

I hereby certify under penalty of perjury that on this day of March <u>20</u>, 2026, a copy of the foregoing document was filed electronically. Service upon Defendants' counsel was thus effected by operation of the Court's CM/ECF system.

*/s/ Christina S. Marshall*

10