**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> HOWARD LUTNICK, et al., <br><br> Defendants, <br><br> NATIONAL FISHERIES INSTITUTE INC., et al. <br><br> Defendant-Intervenors | Case No. 1:24-cv-00148 <br><br><br> Before: Judge Gary S. Katzmann |

**NATIONAL FISHERIES INSTITUTE, ET AL.'S POST-ARGUMENT SUBMISSION**

The National Fisheries Institute; Restaurant Law Center; Phillips Foods, Inc.; Heron Point Seafood, LLC; Newport International of Tierra Verde, Inc.; 3Fish, Inc.; Handy Seafood Inc.; Shaw's Southern Belle Frozen Foods, Inc.; Supreme Crab & Seafood, Inc.; Cebu Pacific LLC; Byrd International Inc.; and Crustacea Seafood Company, Inc. (collectively, "Intervenor-Defendants" or "NFI") respectfully file this post-argument submission pursuant to the Court's Order dated March 6, 2026 (ECF 58).

## I.     BACKGROUND

The Marine Mammal Protection Act of 1972, 16 U.S.C. § 1361 *et seq.*, together with its implementing regulations at 50 C.F.R. § 216.24, requires the National Marine Fisheries Service ("NMFS") to review a harvesting nation's comparability finding ("CF") application and determine

whether that nation's regulatory program is "comparable in effectiveness" to the U.S. program in reducing marine mammal bycatch, as specified in § 216.24(h)(6)(iii). Specifically, "[n]o later than November 30th of the year when the exemption period or comparability finding is to expire, the Assistant Administrator shall publish in the Federal Register, by harvesting nation, a notice of the harvesting nations and fisheries for which it has issued or denied a comparability finding and the specific fish and fish products that as a result are subject to import prohibitions. . . " § 216.24(h)(8)(i).

The regulations then provide that with respect to a harvesting nation that has received a CF denial, "the Assistant Administrator, in cooperation with the Secretaries of the Treasury and Homeland Security, shall identify and prohibit the importation of fish and fish products into the United States from the harvesting nation caught or harvested in that fishery." § 216.24(h)(9)(i). "Any such import prohibition shall become effective 30 days after the of publication of the Federal Register notice referenced in paragraph (h)(8)(i)." *Id.*

In August 2016, NMFS published a final rule, 81 Fed. Reg. 54,390 (Aug. 15, 2016) ("Final Rule"), implementing the fish and fish product import provisions in section 1371(a)(2) of the MMPA. The Final Rule established a five-year exemption period before imports would be subject to any trade restrictions. This exemption period and the date on which comparability findings applications were due was extended three times. *See* 85 Fed. Reg. 69,515 (Nov. 3, 2020); 87 Fed. Reg. 63,955 (Oct 21, 2022); 88 Fed. Reg. 80,193 (Nov. 17, 2023).

## II.    *LUTNICK* AGREEMENT

On September 8, 2024, Plaintiffs filed a Complaint (ECF 1) alleging Defendants violated the MMPA and Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, for delaying the effective date of the Final Rule.

On January 15, 2025, the parties entered into a stipulated settlement agreement ("The *Lutnick* Agreement") and filed a stipulation of dismissal the next day. ECF 29. The *Lutnick* Agreement required NMFS to implement the Final Rule in accordance with a defined four-phase schedule. Under the *Lutnick* Agreement, NMFS agreed to issue final CFs for all harvesting nations and submit such findings to the Federal Register on or before September 1, 2025 ("Phase 3") and "on January 1, 2026, identify and prohibit the importation of fish and fish products into the United States from all harvesting nations or fisheries for which NMFS has denied a comparability finding" ("Phase 4"). This agreement effectively modified the regulatory schedule, which requires CFs to be published in the Federal Register "[n]o later than November 30th of the year when the exemption period or comparability finding is to expire," 50 C.F.R. § 216.24(h)(8)(i), and for the corresponding importation ban to become effective 30 days thereafter. § 216.24(h)(9)(i).

## III.    COMPARABILITY FINDING REVIEW

NMFS initiated its review of the CF applications, and ultimately, on September 2, 2025, published a notice in the Federal Register issuing CFs for 89 nations, denying CFs for 9 nations, and issuing CFs for a subset of 34 nations' fisheries. 90 Fed. Reg. 42,395 (Sept 2, 2025). The CF denials had direct and immediate impact on NFI's members, many of whom have decades of investment in supply chains that depend on access to foreign fisheries and who work with the relevant nations to implement and verify compliance with sustainability standards via the Crab Council's Fisheries Improvement Projects.

## IV.    NFI'S CHALLENGE

In a separate action, Defendant-Intervenors filed a complaint challenging the September 2, 2025, CF denials pertaining to blue swimming crab ("BSC") fisheries. Complaint, ECF 1, Case No. 1:25-cv-0223-JAL (Ct. Int'l Trade). As alleged in the Complaint, the CFs, while intended to

comply with the deadlines set forth in the *Lutnick* Agreement, violated the MMPA and constituted arbitrary and capricious decision-making within the meaning of the APA. *See id.* For example, when faced with a CF denial, the regulations provide that a harvesting nation "may re-apply for a comparability finding ***at any time***." § 216.24(h)(9)(ii)(B) (emphasis added). However, the notice directly violates this provision, by restricting reapplication to "any time after January 1, 2026." 90 Fed. Reg. at 42,398. Another significant error is that, in denying a CF for the Philippines' BSC pot/trap and gillnet fisheries, NMFS treated the mere presence of Irrawaddy dolphins in certain coastal regions as evidence of high bycatch risk. NMFS failed to distinguish between the dolphins' broader geographic range and the specific areas where the BSC pot/trap fisheries actually operate—primarily shallow coastal waters that fall outside the species' typical habitat.

After Intervenor-Defendants demonstrated the procedural and substantive flaws with the CF denials, including the errors detailed above, as well as the immediate, irreparable harm that was occurring because of the challenged agency determinations, the parties entered into a settlement agreement on October 30, 2025. ECF No. 37, Case No. 1:25-cv-0223-JAL ("*NFI* Agreement"). Pursuant to the *NFI* Agreement, Defendants agreed to reconsider its CF denials for five (5) BCS fisheries in Indonesia, Vietnam, the Philippines, and Sri Lanka, and stay the January 1, 2026, effective date of the import ban while reconsideration was underway. NFMS has no statutory, regulatory, or contractual requirement to impose an import ban based on an ***unlawful*** CF review and determination. Yet, Plaintiffs seek to shield such unlawful CFs from judicial review and to perpetuate the harm to NFI's members.

Plaintiffs' primary argument is that § 216.24(h)(9)(ii)(A) provides that importation bans "shall ***remain*** in effect until" NMFS issues a CF for that fishery (emphasis added). However, this provision is inapplicable because as of the date of the *NFI* Agreement, the importation bans had

4

not yet been implemented. The CF determination had been made under § 216.24(h)(8), but the import ban had not yet been made effective under § 216.24(h)(9). The purpose of the "shall remain in effect until" provision is to maintain the status quo while NMFS undertakes reconsideration. Here, imposing an importation ban based upon an ***unlawful*** CF denial would disrupt the status quo and unnecessarily cause drastic irreparable harm to Defendant-Intervenors. It would also render judicial review meaningless if the Court was unable to rectify the harm from an arbitrary and capricious agency action.

## V.  PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT

On December 12, 2025, Plaintiffs filed a Motion to Enforce [the *Lutnick*] Settlement Agreement (ECF 40), arguing that the *NFI* Agreement, and NMFS' stay of the importation ban for the five (5) BCS fisheries violated Defendants' obligations under the *Lutnick* Agreement. The *Lutnick* Agreement entitles Plaintiffs to a process, not a substantive outcome. Accordingly, nothing in the *Lutnick* Agreement insulates NMFS' CF determinations (each of which are final agency actions) from judicial review. Requiring the import bans to become effective while reconsideration is underway in this specific scenario deprives affected parties of meaningful interim relief for which they are entitled under the APA and deprives the agency of its Congressionally delegated discretion. NMFS, consistent with its authority to reconsider CF denials set forth at § 216.24(h)(8)(vii), entered into the *NFI* Agreement and the court issued an order incorporating the terms of the agreement. Requiring immediate implementation of import bans for the five (5) BCS fisheries would force Defendants to breach the *NFI* Agreement, resulting in a violation of the court's order.

## VI.   CONCLUSION

Defendant-Intervenors reiterate, as they have in oral argument and prior briefing, that they share Plaintiffs' core objective: ensuring that the MMPA is implemented lawfully and in a manner that supports a durable, credible system for motivating foreign fisheries to achieve marine mammal protections comparable to those required in the United States. That objective can only be met if NMFS adheres to the statutory and regulatory framework as written and applies import bans based on the Act's clear, legally defined standards. Imposing premature bans grounded in unlawful comparability finding denials would undermine the Act's purpose by eroding foreign governments' confidence in the integrity of NMFS's review process and by inflicting unnecessary disruption on the domestic BCS industry.

Respectfully submitted,

Dated: March 20, 2026

*/s/ Ashley Akers*
Ashley Akers
Rafe Petersen
Maggie Pahl
HOLLAND & KNIGHT LLP
800 17th Street N.W., Suite 1100
Washington, D.C. 20006
Tele: 202-441-5870
Ashley.Akers@hklaw.com
Rafe.Petersen@hklaw.com
Maggie.Pahl@hklaw.com

*Attorneys for Intervenor-Defendants*

**CERTIFICATE OF SERVICE**

I, Ashley Akers, one of the attorneys for Intervenor-Defendants certify that the foregoing document was filed electronically with the Court's Case Management/Electronic Case Filing (CM/ECF) system on March 20, 2026. The Court and/or Clerk of the Court may serve and give notice to counsel by CM/ECF electronic transmission.

/s/ Ashley Akers
Ashley Akers

*Attorney for Intervenor-Defendants*