IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |  |
|---|---|---|
| | ) | |
| NATURAL RESOURCES DEFENSE COUNSEL, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 1:24-cv-00148 |
| HOWARD LUTNICK, et al., | ) ) | |
| Defendants, | ) ) ) | |

**DEFENDANTS' POST-ARGUMENT BRIEF**

**INTRODUCTION**

The Court should deny NRDC's motion to enforce the settlement agreement. As a threshold matter, the Court lacks jurisdiction to award the remedy of specific performance of the agreement against the government because NRDC has identified no waiver of sovereign immunity permitting such an order. In its briefs and at oral argument, NRDC has pointed only to the Court's jurisdiction to hear the underlying dispute and its ancillary jurisdiction over the settlement agreement. But a grant of jurisdiction to hear a case, plus a "specific reservation of enforcement jurisdiction" over a settlement agreement resolving the case, does not add up to "a waiver of sovereign immunity in the [trial] court for a breach of" that settlement agreement. *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1055 (D.C. Cir. 2014). In other words, "whether ancillary jurisdiction exists" has "no impact whatsoever on the issue of sovereign immunity or its waiver." *Presidential Gardens Assocs. v. United States ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 140 (2d Cir. 1999). NRDC's theory that ancillary jurisdiction establishes a waiver of sovereign immunity sufficient to order specific performance of a contract is plainly incorrect.

Nor could the Court impose specific performance of the settlement agreement by asserting its inherent authority to enforce the order adopting the agreement. NRDC repeatedly framed its own motion as requesting enforcement of the contract between the parties—not any order. Reaching outside the parties' framing of the issues is particularly inadvisable when, as here, there is a risk of conflicting orders issued by coordinate courts. Regardless, the same result would follow under the Court's inherent authority: A waiver of sovereign immunity is still required to order the requested relief against the government, and "the government's submission to the jurisdiction of the court alone is not sufficient to supply a waiver of sovereign immunity" for such relief. *Yancheng Baolong Biochemical Prods. Co. v. United States*, 406 F.3d 1377, 1383 (Fed. Cir. 2005).[1] NRDC's newest authority *undercuts* them because it, too, turned on the presence of a waiver of sovereign immunity for the relief ordered. *M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1184 (Fed. Cir. 1993) (cited at ECF 60 at 7).

Even if the court had jurisdiction to award NRDC's requested remedy, the government has not breached the settlement agreement, which allows the government to comply with any court order enjoining the enforcement of a comparability finding. The NFI order is such an order. For the same reasons, the government has not violated the order adopting the agreement.

## ARGUMENT

I.    <u>Plaintiffs Still Have Not Identified A Waiver of Sovereign Immunity</u>

The Court should deny Plaintiffs' motion because it lacks jurisdiction to enter a remedy for the supposed breach of the settlement agreement that Plaintiffs claim to have identified. No waiver of sovereign immunity permits Plaintiffs' request for specific performance and a declaratory judgment against the United States based on a claimed breach of contract. ECF 47 at

---

[1] The government first cited this case during oral argument. Tr. 29.

8-11; ECF 52 at 1-6; *VanDesande v. United States*, 673 F.3d 1342, 1351 (Fed. Cir. 2012) ("[A] settlement agreement, even one embodied in a decree, is a contract within the meaning of the Tucker Act.") (quotation marks omitted)).

NRDC identifies no meaningful difference between this case and the appellate decisions agreeing that ancillary jurisdiction does not overcome sovereign immunity. *Franklin-Mason*, 742 F.3d 1051; *Presidential Gardens*, 175 F.3d 132; *see* Tr. 12-15. NRDC suggests these cases should be disregarded because they involved requests for damages (although *Presidential Gardens* was not so limited, *see* Tr. 31). But the relevant holding of each decision is that ancillary jurisdiction under *Kokkonen* cannot itself supply or expand a waiver of sovereign immunity. *Franklin-Mason*, 742 F.3d at 1054-55; *Presidential Gardens*, 175 F.3d at 140. That holding has nothing to do with whether the plaintiffs in each case pressed a "claim for damages" or sought enforcement in a separately filed action, Tr. 13, and it squarely applies in this case.

NRDC's reliance on *Hendrickson v. United States* is likewise unpersuasive. 2014 WL 2112575 (W.D.N.Y. May 20, 2014), reversed, 791 F.3d 354 (2d Cir. 2015). As another district court more recently explained, *Hendrickson* was reversed because the district court erred on an antecedent question. *Mavashev v. United States Attorney's Office*, 2019 WL 4087857, at *3 (E.D.N.Y. Aug. 28, 2019).[2] Further, an attempt to enforce a previous settlement agreement "amount[ed] to a claim for breach of contract seeking relief in the form of specific performance," which—under *Presidential Gardens*, and contrary to *Hendrickson*'s reasoning—required a separate waiver of sovereign immunity, which only Congress could furnish. *Id.*; *see F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) (collecting cases); *Minnesota v. United States,* 305 U.S. 382,

---

[2] The government first cited this case during oral argument. Tr. 30-31.

388 (1939) ("[I]t rests with Congress to determine not only whether the United States may be sued, but in what courts the suit may be brought.").[3]

Reframing Plaintiffs' request as seeking enforcement of the Court's order adopting the parties' settlement agreement (rather than enforcing the settlement agreement) (*cf.* Tr. 15-17) cannot avoid the absence of a waiver of sovereign immunity, for two reasons.

*First*, even if a distinction existed between enforcing a settlement agreement and enforcing an order adopting a settlement agreement, NRDC requested the former, not the latter. NRDC's briefs have been clear that it seeks enforcement of the settlement agreement. It titled its motion "Motion to Enforce Settlement Agreement." ECF 40 at 1. It requested in its introduction that the "Court find Defendants … in violation of the settlement agreement." ECF 40 at 2. It cited standards for contract interpretation and enforcement of settlement agreements as governing its motion. ECF 40 at 8. And it returned to the same request in its conclusion, asking "that this Court declare Defendants to be in violation of the *Lutnick* agreement and enter an order compelling Defendants to comply with the Agreement." ECF 40 at 11; *see* ECF 40-1 at 2 (proposed order, seeking "to enforce the settlement agreement" by "ORDER[ING]" the government "to comply with the *Lutnick* Agreement"). Its reply brief likewise could not have been clearer, from its very first words. ECF 50 at 1 ("Plaintiffs seek to enforce the terms of a settlement agreement.").

---

[3] NRDC's position (ECF 50 at 2-5; ECF 54 at 3-7; Tr. 12-16) that the underlying MMPA lawsuit furnishes the waiver of sovereign immunity is unpersuasive and, if right, would have startling implications. NRDC has cited to no applicable precedent in support of the remarkably novel assertion that a dismissed lawsuit can spring back to life to provide a waiver of sovereign immunity for a motion seeking new relief—an order requiring implementation of five specific import bans—that its complaint did not request and the Court could not have ordered even if it had. And if NRDC were right, there would be no basis to distinguish between the relief it seeks and any other kind of relief, such as damages, that also stretches beyond what a complaint could have sought under a limited waiver of sovereign immunity.

Courts must be cautious when departing from the parties' arguments and requests. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation," so parties "are responsible for advancing the facts and argument entitling them to relief."). Enforcement of court orders is no exception to that principle. *Cf.* Fed. R. Civ. P. 11, Advisory Committee's Note (1993 Amendment) ("The power of the court to act on its own initiative is retained, but with the condition that this be done through a show cause order."). Caution before adopting a theory NRDC did not raise is doubly appropriate here, where NRDC seeks an order from this Court that would require the government to disobey another court order. "Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders." *Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986); *Bergh v. State of Wash.*, 535 F.2d 505, 507 (9th Cir. 1976) (conflicting injunctions from "two federal courts" whose "decisions are reviewed by the same Court of Appeals" are "rarely, if ever, justified."). The Court should not issue an order that conflicts with another court's order on a theory NRDC has not briefed in its motion to this Court.

*Second*, even if enforcing settlement agreements were different from enforcing orders adopting settlement agreements, and even if NRDC had moved to enforce the order, the Court's inherent powers to enforce its own orders would not supersede the sovereign immunity of the United States. To begin, inherent powers are not without limitations. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) ("[T]he exercise of the inherent power of lower federal courts can be limited by statute and rule, for these courts were created by act of Congress." (citation omitted)); *Target Corp. v. United States*, 134 F.4th 1307, 1315 (Fed. Cir. 2025) ("[I]t is not the CIT's role to use inherent powers to override limits set by Congress's carefully crafted statutory scheme."). One limit on inherent powers is sovereign immunity. "[M]ost circuits faced

with" the argument that a "court's inherent authority to sanction simply trumps the government's sovereign immunity" have rejected that argument, instead concluding "that the government's sovereign immunity wins when it comes head-to-head with a lower court's inherent authority." *United States v. Droganes*, 728 F.3d 580, 590 (6th Cir. 2013). Most relevant here, the Federal Circuit holds that "the government's submission to the jurisdiction of the court alone is not sufficient to supply a waiver of sovereign immunity for the sanctions the court s[eeks] to impose." *Yancheng*, 406 F.3d at 1383. The lower courts' inherent authority therefore presents no exception to the established principle that "only Congress can grant waivers of sovereign immunity." *Pacrim Pizza Co. v. Pirie*, 304 F.3d 1291, 1294 (Fed. Cir. 2002). And here, there has been no congressional waiver of sovereign immunity for NRDC's requested relief.

II. The NFI Order Is Permitted Under the Plain Language of the Settlement Agreement and the Court's Order Adopting The Agreement

Even if the court had jurisdiction to award the remedy NRDC seeks, the government has not breached the NRDC settlement agreement—and, for the same reasons, has not violated any court order. The settlement agreement, and thus the court's order adopting it, allow the government to comply with any court order enjoining the enforcement of a comparability finding. ECF 47 at 11-16; ECF 48 at 11-13; ECF 52 at 6-9. The NFI order is such an order. ECF 47 at 12-15; ECF 52 at 6-8. NRDC presumes that requiring implementation of the import bans at issue will effectuate compliance with the MMPA, but that would be true only if NFI is wrong that those import bans were unlawfully issued. Paragraph 3 exists precisely because of the prospect of challenges like NFI's.

Perhaps NRDC wishes it had negotiated for additional language to the exception in paragraph 3, such as limiting the exception to orders entered "after a full [court] hearing," Tr. 21, and over the government's objections, *see* ECF 50 at 7-8. But the parties' agreement reflects no

6

such term. Nor, of course, would the government have agreed to a term prohibiting it from complying with certain court orders. ECF 52 at 9. We are also aware of no precedent that would allow this Court to prohibit the government from complying with future judicial orders, as Plaintiffs claim the Court did by adopting the parties' settlement agreement.

If the Court did interpret paragraph 3 like NRDC, as forbidding the government from settling future litigation, that would create a new problem. The government would not be bound by such a term because no official had actual authority to agree to that extraordinary term. ECF 47 at 16-18.

In sum, the Government did not breach the Settlement Agreement, either by complying with the NFI Order or by entering the NFI settlement agreement.

## CONCLUSION

We respectfully request that the Court deny the Motion.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

/S/ BRENNA E. JENNY
BRENNA E. JENNY
Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

AGATHA KOPROWSKI
Trial Attorney
U.S. Department of Justice
Civil Division
P.O. Box 480, Ben Franklin
Station Washington, D.C.
20044
Tel: (202) 507-6081
Email:
agatha.koprowski@usdoj.gov

OF COUNSEL:
MARK HODOR
Office of General Counsel
National Oceanic & Atmospheric Admin.
Civil Division

DANIEL PAISLEY
Office of General Counsel
U.S. Department of the Treasury

ZACHARY SIMMONS
Office of the Chief Counsel
U.S. Customs & Border Protection

March 20, 2026                    *Attorneys for Defendants*

8

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this Post-Argument Brief contains 2,000 words, excluding any materials excluded from those Procedures' requirements, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Brenna E. Jenny

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this March 20, 2026, a copy of the foregoing "Defendant's Post Argument Brief" was filed electronically. Service upon plaintiffs' counsel was thus effected by operation of the court's CM/ECF function.

/s/ Brenna E. Jenny