Slip Op. 26-97

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **NATURAL RESOURCES DEFENSE COUNCIL, INC.; CENTER FOR BIOLOGICAL DIVERSITY; and ANIMAL WELFARE INSTITUTE,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**HOWARD LUTNICK, in his official capacity as Secretary of Commerce; UNITED STATES DEPARTMENT OF COMMERCE; EUGENIO PIÑEIRO SOLER, in his official capacity as Assistant Administrator of the National Marine Fisheries Service; NATIONAL MARINE FISHERIES SERVICE; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; UNITED STATES DEPARTMENT OF THE TREASURY; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,**<br><br>**Defendants,**<br><br>**and**<br><br>**NATIONAL FISHERIES INSTITUTE, INC.; RESTAURANT LAW CENTER; PHILLIPS FOODS, INC.; HERON POINT SEAFOOD, LLC; NEWPORT INT'L OF TIERRA VERDE, INC.; 3FISH, INC.; HANDY SEAFOOD INC.; SHAW'S SOUTHERN BELLE FROZEN FOODS, INC.; SUPREME CRAB & SEAFOOD, INC.; CEBU PACIFIC LLC; BYRD INT'L INC.; AND CRUSTACEA SEAFOOD CO., INC.,**<br><br>**Defendant-Intervenors.** | **Before: Judge Gary S. Katzmann**<br>**Court No. 24-00148** |

**OPINION AND ORDER**

[ Plaintiffs' motion to enforce the settlement agreement is denied as moot. ]

Dated: August 19, 2026

Sean M. Grammel, Anderson & Kreiger LLP, of Boston, MA, argued for Plaintiffs Natural Resources Defense Council, Inc.; Center for Biological Diversity, and Animal Welfare Institute. On the briefs were Christina S. Marshall, Mina S. Makarious, and Marissa C. Grenon Gutierrez, Anderson & Kreiger LLP, of Boston, MA; Sarah Uhlemann, Center for Biological Diversity, of Olympia, WA; and Stephen Zak Smith, Natural Resources Defense Council, of Bozeman, MT.

Brenna E. Jenny, Deputy Assistant Attorney General, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendants Howard Lutnick, in his official capacity as Secretary of Commerce; United States Department of Commerce; Eugenio Piñeiro Soler, in his official capacity as Assistant Administrator of The National Marine Fisheries Service; National Marine Fisheries Service; Scott Bessent, in his official capacity as Secretary of The Treasury; United States Department of The Treasury, Kristi Noem, in her official capacity as Secretary of Homeland Security, and United States Department of Homeland Security.[1] Also on the briefs were Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, and Agatha Koprowski, Trial Attorney. Of counsel on the briefs were Mark Hodor, Office of General Counsel, National Oceanic & Atmospheric Administration; Daniel Paisley, Office of General Counsel, U.S. Department of the Treasury; and Zachary Simmons, Office of the Chief Counsel, U.S. Customs & Border Protection.

Ashley Akers, Holland & Knight, LLP, of Washington, D.C., argued for Defendant-Intervenors National Fisheries Institute, Inc.; Restaurant Law Center; Phillips Foods, Inc.; Heron Point Seafood, LLC; Newport Int'l of Tierra Verde, Inc.; 3Fish, Inc.; Handy Seafood Inc.; Shaw's Southern Belle Frozen Foods, Inc.; Supreme Crab & Seafood, Inc.; Cebu Pacific LLC; Byrd Int'l Inc.; and Crustacea Seafood Co., Inc. Also on the briefs were Rafe Petersen, Kamran Mohiuddin, and Maggie Pahl.

Katzmann, Judge: The court returns to the Marine Mammal Protection Act ("MMPA") and to a stipulated settlement agreement for which the court has retained jurisdiction.

In 1972, Congress enacted the MMPA, Pub. L. No. 92-522, 86 Stat. 1027 (codified as amended at 16 U.S.C. § 1361 et seq.), to protect marine mammal species that "are, or may be, in danger of extinction or depletion as a result of man's activities" from "diminish[ing] below their optimum sustainable population." 16 U.S.C. § 1361(1)–(2). In recent years, the MMPA has been

[1] Per USCIT Rule 25(d), named officials have been substituted to reflect the current officeholders.

the basis for litigation and adjudication in this court for actions involving the vaquita, the world's smallest porpoise on the verge of extinction, see Nat. Res. Def. Council, Inc. v. Ross, 44 CIT __, __, 456 F. Supp. 3d 1292, 1295 (2020) (and opinions noted therein); see also Ctr. for Bio. Diversity v. Haaland, 47 CIT __, __, 639 F. Supp. 3d 1355, 1363 (2023), and the Māui dolphin, one of the world's smallest dolphins also on the verge of extinction, see, e.g., Sea Shepherd N. Z. v. United States, 48 CIT __, 723 F. Supp. 3d 1374 (2024) (and opinions noted therein); Māui & Hector's Dolphin Defs. NZ Inc. v. Nat'l Marine Fisheries Serv., 49 CIT __, __, 799 F. Supp. 3d 1327, 1350 (2025).

Although invoked in recent litigation, the MMPA's Import Provisions—intended to reduce bycatch associated with international commercial fishing operations—had, until recently, yet to be fully implemented since the MMPA's 1972 enactment. See Nat'l Res. Defense Council, Inc. v. Lutnick, 49 CIT __, __, 774 F. Supp. 3d 1348, 1351 (2025). Plaintiffs Natural Resource Defense Council ("NRDC"), Center for Biological Diversity, and Animal Welfare Institute (collectively "Plaintiffs") originally brought a challenge alleging that Defendants comprising various United States Departments and constituent agency and respective officials (collectively "the Government") failed to implement the MMPA's Import Provisions. See Compl., Aug. 8, 2024, ECF No. 1.

Spurred by the litigation and a settlement agreement in this case, the Import Provisions, 16 U.S.C. § 1371(a)(2), have been implemented for the first time since the MMPA's enactment. See Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Act—Notification of Comparability Findings and Implementation of Import Restrictions; Certification of Admissibility for Certain Fish Products, 90 Fed. Reg. 42395, 42396 (Dep't Com. Sep. 2, 2025) ("2025 Implementation of Import Provisions"). Since the beginning of this case, the

Government has issued comparability findings for all harvesting nations and fisheries seeking to export fish and fish products to the United States (135 nations covering approximately 2,500 fisheries) and banned the importation of commercial fish or products from fish that have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of U.S. standards.[2] See id.; Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Action—Notification of Comparability Findings, 91 Fed. Reg. 25867, 25867–68 (Dep't Com. May 12, 2026) ("2026 Implementation of Import Provisions").

Following the Government's subsequent issuance of comparability findings and implementation of related import bans, all parties now agree that no live controversy remains in this case. See Second Joint Status Report at 3, June 16, 2026, ECF No. 66. Accordingly, the court denies as moot Plaintiffs' motion to enforce the settlement agreement in this case. See Mot. to Enforce Settlement Agreement, Dec. 12, 2025, ECF No. 40 ("Pls.' Br."); see also Stipulation of Dismissal at Attach. A, Jan. 16, 2025, ECF No. 29 ("NRDC Agreement").

## LEGAL BACKGROUND

Given the seriousness of the interests at stake, the court pauses to briefly recount the history of the MMPA and this litigation.

### *I. The Marine Mammal Protection Act*

As noted, in response to the threat that human activities pose to marine mammals, Congress

---

[2] Some of NMFS's comparability findings under the MMPA are the subject of challenges in various sessions of this court. See, e.g., Māui & Hector's Dolphin Defs. NZ Inc. v. Nat'l Marine Fisheries Serv., 50 CIT __, __, 2026 WL 2018678, at *1 (July 13, 2026) (denying Defendants' motion to dismiss and Plaintiff's motion for a preliminary injunction to enjoin the comparability findings for New Zealand fisheries that pose risk to Māui dolphins); Compl., Ctr. for Biol. Diversity v. Nat'l Marine Fisheries Serv., No. 26-02998 (U.S. Ct. Int'l Trade filed May 21, 2026), May 21, 2026, ECF No. 6 (challenging comparability findings for fisheries in Argentina, Ecuador, India, Norway, Taiwan, Tunisia, the United Kingdom, and Vanuatu).

enacted MMPA in 1972 to prevent species and populations of marine mammals from diminishing beyond the point at which they "cease to be a significant functioning element" in their ecosystems. 16 U.S.C. § 1361(2). In doing so, Congress noted that "marine mammals have proven themselves to be resources of great international significance, esthetic and recreational as well as economic," and found "that they should be protected and encouraged to develop to the greatest extent feasible commensurate with sound policies of resource management." Id. § 1361(6).

Emphasizing the MMPA's overarching purpose, the Import Provisions state that "it shall be the immediate goal that the incidental kill or incidental serious injury of marine mammals permitted in the course of commercial fishing operations be reduced to insignificant levels approaching a zero mortality and serious injury rate." Id. § 1371(a)(2). To achieve this goal, Congress created a "moratorium on the taking[3] and importation of marine mammals and marine mammal products," id. § 1371(a), and set specific standards governing and restricting the incidental kill or incidental serious injury of marine mammals, id. § 1387. This moratorium extends to fisheries outside the United States through the MMPA's Import Provisions, which state that "[t]he Secretary of the Treasury [("the Secretary")] shall ban the importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards." Id. § 1371(a)(2). Additionally, no fish or products from which fish have been caught may be imported into the United States "if such fish was caught in a manner . . . proscribed for persons subject to the jurisdiction of the United States, whether or not any marine mammals were in fact taken incident to the catching of fish." Id. § 1372(c)(3). To ensure compliance with this mandate, the "Secretary . . . shall insist on reasonable proof from the government" of any

[3] The MMPA defines to "take" as "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13).

importing nation "of the effects on ocean mammals of the commercial fishing technology in use for such fish or fish products exported from such nation to the United States." Id. § 1371(a)(2)(A). In short, the MMPA aims to protect marine mammals by setting forth standards applicable to both domestic commercial fisheries and to foreign fisheries that wish to export their products to the United States. See id. §§ 1371(a)(2), 1372(c)(3).

***II. The Final Import Rule***

Decades after the passage of the MMPA, the National Marine Fisheries Service ("NMFS")[4] issued an advanced notice of proposed rulemaking to implement the Import Provisions in 2010 in response to a petition from Plaintiff Center for Biological Diversity, see Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Act, 75 Fed. Reg. 22731 (Dep't Com. Apr. 30, 2010), but did not proceed further. Four years later, and in response to a settlement agreement in a different case, NMFS promulgated regulations guiding implementation of the Import Provisions. See Fish and Fish Product Import Provisions of the Marine Mammal Protection Act, 81 Fed. Reg. 54390 (Dep't Com. Aug. 15, 2016) ("Final Import Rule"); 50 C.F.R. § 216.24 (2022); see also Am. Settlement Agreement & Stipulation of Dismissal, Ctr. for Biol. Diversity v. Pritzker, No. 14-00157 (U.S. Ct. Int'l Trade filed July 2, 2014), Aug. 3, 2016, ECF No. 29.

Under the Final Import Rule, NMFS must create and publish a list of foreign fisheries by "identify[ing] harvesting nations with commercial fishing operations that export fish and fish products to the United States and classify[ing] those fisheries based on their frequency of marine mammal interactions . . . ." Final Import Rule, 81 Fed. Reg. at 54391. A harvesting nation must

[4] The National Marine Fisheries Service is an office of the National Oceanic and Atmospheric Administration ("NOAA") within the Department of Commerce. See About Us, https://www.usa.gov/agencies/noaa-fisheries (last visited Aug. 17, 2026).

apply for and receive "a comparability finding for its fisheries to export fish and fish products to the United States." Id. "To receive a comparability finding . . . the harvesting nation must demonstrate that it has prohibited the intentional mortality or serious injury of marine mammals in the course of commercial fishing operations in the fishery . . . ." Id. Each "harvesting nation must also demonstrate that it has adopted and implemented" regulations governing commercial fishing operations in its export fisheries that are "comparable in effectiveness to the U.S. regulatory program." Id. The Government must, according to the Final Import Rule, notify each harvesting nation of any fisheries for which NMFS is denying a comparability finding and publish a corresponding notice in the Federal Register, see id. at 54393, and prohibit the importation of fish and fish products into the United States from fisheries without comparability findings, see id. at 54394.

The Final Import Rule included a "one-time only" five-year exemption period that was subsequently extended an additional four years, and would have, as a result, concluded on December 31, 2025. See id. at 54391; Modification of Deadlines Under the Fish & Fish Product Import Provisions of the Marine Mammal Protection Act, 85 Fed. Reg. 69515 (Dep't Com. Nov. 3, 2020); Modification of Deadlines Under the Fish & Fish Product Import Provisions of the Marine Mammal Protection Act, 87 Fed. Reg. 63955 (Dep't Com. Oct. 21, 2022); Modification of Deadlines Under the Fish and Fish Product Import Provisions of the Marine Mammal Protection Act, 88 Fed. Reg. 80193 (Dep't Com. Nov. 17, 2023).

## FACTUAL BACKGROUND

The present case began on August 8, 2024, when Plaintiffs filed a civil complaint alleging that the Government failed to implement the MMPA's Import Provisions and the Final Import Rule. Compl. ¶¶ 16–19. In their Complaint, Plaintiffs represented that, globally, "[m]ore than 650,000 marine mammals are killed or seriously injured annually when fishing gear hooks, entangles, or

traps them." Id. ¶ 1. Plaintiffs originally alleged that the Government violated three provisions of the MMPA, id. ¶¶ 134, 140, 146 (citing 16 U.S.C. §§1371(a)(2), 1372(c)(3), 1371(a)(2)(A)), and one provision of the Administrative Procedure Act ("APA"), id. ¶¶ 155–59 (citing 5 U.S.C. §553(b)–(d)), by failing to take certain actions to combat the threat to marine mammals posed by commercial fishing operations worldwide. Plaintiffs requested that the court require the Government to implement the MMPA Import Provisions and Final Import Rule and declare that Defendants violated the APA by failing to provide notice and an opportunity for comment in extending the exemption period. Id. at 52–53.

On January 16, 2025, before the Government filed a responsive pleading, the parties filed a joint stipulation of dismissal that provided for dismissal of the action pursuant to USCIT Rule 41 in accordance with a settlement agreement. Stipulation of Dismissal, Jan. 16, 2025, ECF No. 29; see also Corrected Stipulation of Dismissal, Feb. 7, 2025, ECF No. 37-1; NRDC Agreement. The NRDC Agreement provided that the Government agreed to implement the Final Import Rule in accordance with a four-phase schedule of agency actions to be undertaken between January 2025 and January 2026. NRDC Agreement ¶ 1. As relevant here, the parties agreed that under Phase 3, "[p]ursuant to 50 C.F.R. § 216.24(h)(8)(i), on or before September 1, 2025, NMFS [would] issue final comparability findings for all harvesting nations and submit such findings to the Federal Register for publication." Id. ¶ 1(c). Under Phase 4 of the agreement, the parties agreed that "[p]ursuant to 50 C.F.R. § 216.24(h)(9), on January 1, 2026, [the Government] [would] identify and prohibit the importation of fish and fish products into the United States from all harvesting nations or fisheries for which NMFS has denied a comparability finding." Id. ¶ 1(d). The parties further stipulated that the court would "retain jurisdiction to oversee compliance with the non-monetary terms of the [NRDC] Agreement and to resolve any motions to modify such

terms." NRDC Agreement ¶ 7; see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994). The court subsequently issued an opinion noting that the case was "dismissed by operation of the parties' filings" and retaining limited jurisdiction in accordance with the terms of the NRDC Agreement. Nat'l Res. Def. Council, 774 F. Supp. 3d at 1352; see also id. at 1357 n.7 (indicating that "[t]his retention of jurisdiction is limited").

On September 2, 2025, and in accordance with Phase 3 of the NRDC Agreement, NMFS published final determinations denying comparability findings for a number of fisheries including, as relevant here, swimming crab fisheries in Vietnam, the Philippines, Indonesia, and Sri Lanka. 2025 Implementation of Import Provisions, 90 Fed. Reg. at 42397. In denying those comparability findings, NMFS found that those fisheries lacked a marine mammal bycatch program comparable to that of the United States. Id.

In October 2025, a different group of parties including the National Fisheries Institute, (collectively "NFI")[5] brought a separate challenge to NMFS's denial of comparability findings for swimming crab fisheries in Vietnam, the Philippines, Indonesia, and Sri Lanka. Compl., Nat'l Fisheries Inst., Inc. v. United States, No. 25-00223 (U.S. Ct. Int'l Trade filed Oct. 9, 2025) ("NFI"), Oct. 9, 2025, ECF No. 2. Under Phase 4 of the NRDC Agreement, NMFS's denial of comparability findings for those fisheries would have led to an import ban on January 1, 2026. See NRDC Agreement ¶ 1(d). NFI and the Government ultimately reached a settlement agreement wherein the Government agreed to stay the January 1, 2026, effective date of the import ban and undertake a reconsideration of the comparability findings for the relevant swimming crab fisheries. See Joint

[5] The full list of plaintiffs in NFI includes National Fisheries Institute; Restaurant Law Center; Phillips Foods, Inc.; Heron Point Seafood, LLC; Newport International of Tierra Verde, Inc.; 3Fish, Inc.; Handy Seafood Inc.; Shaw's Southern Belle Frozen Foods, Inc.; Supreme Crab & Seafood, Inc.; Cebu Pacific LLC; Byrd International Inc.; and Crustacea Seafood Company, Inc. See Compl., Nat'l Fisheries Inst., Inc. v. United States, No. 25-00223 (U.S. Ct. Int'l Trade filed Oct. 9, 2025), Oct. 9, 2025, ECF No. 2.

Stipulation of Dismissal ¶¶ 1, 3–4, NFI, Oct. 30, 2025, ECF No. 37 ("NFI Agreement").

**PROCEDURAL HISTORY**

On December 12, 2025, Plaintiffs filed a motion to enforce the terms of the NRDC Agreement and compel the Government to prohibit the importation of fish and fish products into the United States from the relevant swimming crab fisheries. See Pls.' Br. According to Plaintiffs, the Government "by way of [the NFI Agreement] . . . [sought] to further delay [its] implementation of the Final Import Rule and renege on [its] obligations under the [NRDC Agreement]." Id. at 3. The plaintiffs in the NFI case, listed supra note 5, filed a motion to intervene. See Mot. of Nat'l Fisheries Inst., et al., to Intervene as Inter.-Defs., Dec. 23, 2025, ECF No. 42. Plaintiffs here filed a response brief, noting that they did "not oppose NFI's motion to intervene," but responded to some of the assertions therein. See Pls.' Resp. to Mot. of Nat'l Fisheries Inst., et al., to Intervene as Inter.-Defs. at 2, Dec. 29, 2025, ECF No. 44. The court subsequently granted NFI's motion to intervene. See Order, Dec. 30, 2025, ECF No. 45.

On January 2, 2026, both the Government and NFI filed responses to Plaintiffs' motion to enforce. See Defs.' Resp. in Opp'n to Pls.' Mot. to Enforce Settlement Agreement, Jan. 2, 2026, ECF No. 47 ("Gov't Br."); Nat'l Fisheries Inst., et al.'s Resp. in Opp'n to Pls.' Mot. to Enforce Settlement Agreement, Jan. 2, 2026, ECF No. 48. Plaintiffs filed a reply later that month. See Reply in Supp. of Mot. to Enforce Settlement Agreement, Jan. 20, 2026, ECF No. 50.

The court issued questions to the parties, see Letter re: Questions in Nat. Res. Def. Council, Inc. v. Lutnick, Jan. 30, 2026, ECF No. 51, to which the parties provided written responses, see Defs.' Resps. to Letter Order Dated Jan. 30, 2025., Feb. 13, 2026, ECF No. 52; Nat'l Fisheries Inst., et al.'s Resp. to the Letter Order Dated Jan. 30, 2026, Feb. 13, 2026, ECF No. 53; Pls.' Submission Pursuant to Jan. 30, 2026 Order, Feb. 13, 2026, ECF No. 54. Pursuant to 28 U.S.C. § 256(a) and Rule 77(c) of the Rules of this court, oral argument was heard at the U.S. District

Court for the District of Massachusetts as scheduled on March 6, 2026. See Order, Feb. 25, 2026, ECF No. 56. As directed by the court, the parties filed supplemental briefs following oral argument. See Pls.' Post-Arg. Statement, Mar. 20, 2026, ECF No. 60; Nat'l Fisheries Inst., et al.'s Post-Arg. Submission, Mar. 20, 2026, ECF No. 61; Defs.' Post-Arg. Br., Mar. 20, 2026, ECF No. 62.

**DISCUSSION**

Recall that under the NRDC Agreement, the parties agreed that the Government would implement the Final Import Rule by, among other things: (1) issuing final comparability findings for all harvesting nations by September 1, 2025, and (2) prohibiting the importation of fish and fish products into the United States from all harvesting nations or fisheries for which NMFS had denied a comparability finding by January 1, 2026. NRDC Agreement ¶ 1(c), (d). In their motion to enforce the settlement agreement, Plaintiffs argued that "[t]he [NFI Agreement] violates [the Government's] obligations under the [NRDC Agreement]" because "it allows importation of fish and fish products from . . . [certain fisheries denied comparability findings] to continue beyond January 1, 2026, by staying the ban's implementation." Pls.' Br. at 8 (citing NFI Agreement ¶ 1). Under the NRDC Agreement, the parties provided for two circumstances in which the Government can obtain relief from its obligations to ban imports: "NMFS may [(1)] reconsider a comparability finding in accordance with 50 C.F.R. § 216.24(h)(8)(vii), or [(2)] comply with a court order enjoining the enforcement of a comparability finding." NRDC Agreement ¶ 3. According to Plaintiffs, the first circumstance does not apply here because "[t]he regulations expressly require that, during any reconsideration, an import ban shall 'remain in effect' until NMFS is able to make a positive finding; a ban cannot be lifted while NMFS engages in reconsideration." Pls.' Br. at 9 (quoting 50 C.F.R. § 216.24(h)(9)(ii)(A)). Plaintiffs also argued that the second circumstance does not apply because the dismissal order in NFI "intended to retain the court['s] jurisdiction to enforce

contractual compliance, [and is] not [a] 'court order[] enjoining' [the Government]." Id. at 10 (emphasis in original).

The Government responded that the NFI Agreement is a court order because "the function of the [court's order of dismissal in NFI] is to enjoin[] the enforcement of a comparability finding." Gov't Br. at 13 (internal quotation marks omitted). Additionally, the Government argued that "[t]his [c]ourt does not have jurisdiction to enforce the terms of the [NRDC Agreement] because [P]laintiffs have not identified a waiver of sovereign immunity," id. at 8, and that "no [such waiver] permits this [c]ourt to entertain [P]laintiffs' request for specific performance and a declaratory judgment against the United States based on a claimed breach of contract," id. at 9 (citing Glidden Co. v. Zdonak, 370 U.S. 530, 557 (1962) and Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997)). The Government asserted that the original waiver of sovereign immunity that permitted Plaintiffs to file this action is contained in 28 U.S.C. § 1581, and that "§ 1581 does not explicitly waive the sovereign immunity of the United States for a breach of contract claim." Id.

During the pendency of the court's consideration of Plaintiffs' motion to enforce, NMFS issued comparability findings for the relevant swimming crab fisheries in accordance with the NFI Agreement. See 2026 Implementation of Import Provisions, 91 Fed. Reg. at 25887. NMFS determined that the relevant swimming crab fisheries in Vietnam, Indonesia, and Sri Lanka "are comparable in effectiveness to the U.S. regulatory program, and determined that the relevant swimming crab fisheries in the Philippines . . . remain not comparable in effectiveness to the U.S. regulatory program." Id. Upon announcing the comparability findings, NMFS stated that "[f]ish and fish products harvested in the relevant swimming crab fisheries in the Philippines . . . may no longer be imported into the United States as of June 11, 2026." Id.

At the request of the court, see Order, June 12, 2026, ECF No. 65, the parties filed a joint

status report confirming that "the import prohibitions on the [relevant] Philippine swimming crab fisheries went into effect as of June 11, 2026." Second Joint Status Report at 3; see also U.S. Customs and Border Prot., CSMS # 68914006 – Nat. Marine Fisheries Serv. Restricts Imports from the Philippines Blue Swimming Crab Fisheries under the Marine Mammal Protection Act, Cargo Systems Messaging Service (June 11, 2026 10:12 ET), https://content.govdelivery.com/accounts/USDHSCBP/bulletins/41b8b56. All Parties now "agree that the [Government's actions] have rendered the Plaintiffs' Motion to Enforce the Settlement Agreement moot and that no issues remain before this [c]ourt for adjudication." Second Joint Status Report at 3.

Under the doctrine of mootness, "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during the litigation, the action can no longer proceed and must be dismissed as moot." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 72 (2013) (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477–78 (1990). "Mootness is a jurisdictional question because the [c]ourt 'is not empowered to decide moot questions or abstract propositions[.]' " Rice, 404 U.S. at 246 (quoting United States v. Alaska S.S. Co., 253 U.S. 113, 116 (1920)). A court's "lack of jurisdiction to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." Liner v. Jafco. Inc., 375 U.S. 301, 306 n.3 (1964); see also Genesis Healthcare, 569 U.S. at 71–72.

In light of NMFS's comparability findings issued on May 12, 2026, and the implementation of the related import ban on the relevant Philippine fisheries on June 11, 2026, the court concludes

that no live controversy remains between the parties and that the issues raised in Plaintiffs' motion to enforce are moot. Having found the case moot, the court need not examine other threshold jurisdictional issues like sovereign immunity nor any other issues raised in the Plaintiff's motion to enforce the NRDC Agreement. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 436 (2007) ("If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground."). Even as this case comes to an end, the work of carrying out the MMPA continues, as do challenges to specific comparability findings. See, e.g., Māui & Hector's Dolphin Defs., 2026 WL 2018678; Ctr. for Biol. Diversity, No. 26-02998 (U.S. Ct. Int'l Trade filed May 21, 2026).

**CONCLUSION**

For the reasons stated above, Plaintiffs' Motion to Enforce Settlement Agreement, Dec. 12, 2025, ECF No. 40, is denied as moot and this case is dismissed without prejudice.

**SO ORDERED.**

*/s/ Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: August 19, 2026
New York, New York